**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JONATHAN MICHEL, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) | Civil Action No. |
| v. ) ) | CLASS ACTION COMPLAINT |
| YALE UNIVERSITY, ) ) | AND DEMAND FOR JURY TRIAL |
| Defendant. ) | |

Plaintiff Jonathan Michel ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Yale University ("Yale" or "Defendant"), and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, and says:

## I.  NATURE OF THE CASE

**1.** This is a class action brought on behalf of all people who paid tuition and fees, either directly or through a third party paying on their behalf, for in-person undergraduate or graduate programs for the Spring 2020 academic semester at Yale, and who have been unable to receive the benefit of the education for which they paid, and/or the services for which their fees were paid, due to Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic.

**2.** While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, Defendant has failed to apportion the burden in an equitable manner or consistent with its obligations as an educational institution. Defendant has retained all tuition,

fees, and related payments for the Spring 2020 semester, however, all or substantially all classes have been exclusively held online since on or about March 23, 2020.

3. As a result of the closure of Defendant's facilities, Plaintiff has not received the educational services, access to facilities, and/or related opportunities for which Plaintiff and the putative class contracted and paid. Defendant has nonetheless retained the full tuition, fees and other payments made by Plaintiff and the putative class.

4. Prior to the Spring 2020 semester, Defendant offered online education and typically charged far less for such services as compared to in-person instruction. This is due to the inability of online classes to replicate the full academic opportunities and experiences of in-person instruction. Remote learning options cannot replace the comprehensive educational experience promised by Defendant. Access to facilities, materials, and faculty, and the opportunity for on campus living, school events, collaborative learning, dialogue, feedback and critique are essential to the in-person educational experience. Plaintiff and the putative class contracted and paid for the full experience of academic life on Defendant's campus and remote online learning cannot provide the same value as in-person education.

5. As a result, Defendant has financially damaged Plaintiff and the putative class members. Plaintiff brings this suit because Plaintiff and the class members did not receive the full value of the services for which they paid. They have lost the benefit of their bargain and/or suffered out-of-pocket loss and are entitled to recover compensatory damages, trebling where permitted, and attorneys' fees and costs.

6. Defendant is not entitled, by either contract or equitable principles, to pass the entire cost of its COVID-19 related closure to its students and their families. Plaintiff and the putative class are entitled to a partial refund of the tuition, fees, and other related payments for in-person

educational services, access to facilities, and/or related opportunities that Defendant did not provide.

7. Plaintiff seeks, for himself and the putative class members, a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of online classes and the amount of time in the Spring 2020 semester when Defendant ceased in-person classes, campus services and access to campus facilities.

## II.   JURISDICTION AND VENUE

8. The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district.

10. The Court has personal jurisdiction over Defendant because Defendant is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because Defendant conducts substantial business in this district.

## III.   PARTIES

11. Plaintiff Jonathan Michel is a citizen and resident of the State of Ohio. Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at Defendant Yale University. The Defendant charged the Plaintiff $27,750 in tuition for the Spring 2020 semester.

12. Defendant Yale University is a private Ivy League educational institution that offers programs at fourteen constituent schools. Defendant had a total enrollment of approximately

13,433 students at the start of the Fall 2019 semester, with 13,303 of those considered full-time students. As of 2019, Defendant reportedly had an endowment of $30.31 billion.

13. Defendant was eligible to receive federal stimulus funding under the CARES Act, which provides for approximately $14 billion for colleges and universities based on enrollment numbers in order to mitigate the financial impact of the COVID-19 crisis on both institutions and students. On or about April 22, 2020, Defendant announced it would not apply for CARES Act funding.

## IV. FACTUAL ALLEGATIONS

### A. Closure of Campus and Suspension of In-Person Education

14. Plaintiff and Class members are individuals who paid the cost of tuition, mandatory fees and other related costs, either directly or through a third party paying on their behalf, to attend undergraduate or graduate programs during the Spring 2020 semester at Yale.

15. Plaintiff and Class members entered into a contract with Defendant whereby payment of tuition, fees and other related costs would be made, and Defendant would provide in-person instruction and access to physical resources and school facilities such as libraries, laboratories, and classrooms.

16. Approximate tuition costs and fees charged by Yale for undergraduate students to attend the 2019-2020 academic year totaled $75,925, broken down as follows:

- Tuition & Fees: $55,000
- Room: $9,400
- Board: $7,200
- Books and Supplies: $3,700
- Activity Fee: $125

17. Yale also has a number of graduate and professional schools including the School of Art, School of Architecture, Law School, Divinity School, and School of Medicine. Upon information and belief, the average tuition and fees for graduate school at Yale for 2019-2020 was $43,300.53.

18. On March 10, 2020, Yale announced it was moving classes online until at least April 5, 2020 and asked students away on spring break not to return to campus.

19. Subsequently, Defendant effectively closed its campus and moved all or substantially all classes online.

20. While this step to close campus and end in-person classes was necessitated by circumstances, it effectively breached or terminated the contract Yale had with each and every student and tuition provider, who paid for the opportunity to participate fully in the academic life on the Yale campus.

21. Classes that continued were only offered in an online format, with no in-person instruction. Even classes for students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences) only had access to online education options.

22. As a result of the closure of Defendant's campuses and facilities, Defendant has failed to deliver the educational services, facilities, access and/or opportunities for which Plaintiff and the putative class contracted and paid, either directly or through a third-party on their behalf.

23. Defendant maintains that its contract with students and tuition providers remains in full effect and that it is continuing to uphold its side of the agreement. Defendant refuses to refund tuition and related expenses, purportedly on its provision of online classes.

24. In so doing, Defendant is attempting to replace the irreplaceable – on-campus life

at an elite university – with "virtual learning" via online classes, and is attempting to pass off this substitute educational experience as the same as or just as good as fully participation in the university's academic life.

25. Plaintiff and members of the Class did not choose to attend and/or provide tuition for an online institution of higher learning, but instead chose to attend Defendant's institution and enroll on an in-person basis.

**B.     Inferiority of Online Educational Experience**

26. At least one academic study found that "[o]nline courses do less to promote academic success than do in person courses." The study found that:

   a) Taking a course online reduced student achievement in that course by .44 points on the traditional four-point grading scale, a full one-third of a standard deviation;

   b) Specifically, students taking the in-person course earned roughly a B- (2.8 GPA) versus a C (2.4 GPA) for students taking an online version of the same course;

   c) Taking a course online also reduces future grades by 0.42 points for courses taken in the same subject area in the following semester;

   d) Taking an online course reduced the probability of the student remaining enrolled in the university a year later by over ten percentage points.

Eric P. Bettinger *et al., Virtual Classrooms: How Online College Courses Affect Student Success*, AMERICAN ECONOMIC REVIEW, Vol. 107, No. 9, p. 2857.

27. The move to online only classes deprived students of the opportunity to benefit from a wide variety of academic and student events, on-campus entertainment, facilities, and

athletic programs, which provided considerable value to Plaintiff and the Class members.

28. The online learning options Defendant offered for the Spring 2020 semester, though consistent with safety measures, cannot provide the academic and collegiate experience Defendant itself extolls as its signatures.

**C.   Lower Tuition for Online Education**

29. In-person education is worth more than online education.

30. Accordingly, the tuition and fees for in-person instruction at Yale are higher than tuition and fees for its own online classes and for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

   a) Face to face interaction with professors, mentors, and peers;

   b) Access to facilities such as libraries, laboratories, computer labs, and study rooms;

   c) Student governance and student unions;

   d) Extra-curricular activities, groups, intramural sports, etc.;

   e) Student art, cultures, and other activities;

   f) Social development and independence;

   g) Hands on learning and experimentation;

   h) Networking and mentorship opportunities.

31. The fact that Yale students paid a higher price for an in-person education than they would have paid for an online education is illustrated by the vast price difference in Yale's in-

person, on-campus programs versus Yale's own online learning program.

32. For example, upon information and belief, Yale's cost for their Women's Leadership program through the School of Management was approximately $ 7,000 for the in-person, on-campus experience, while it charged $4,950 for the live, online equivalent. Furthermore, the online equivalent of the program that did not offer live virtual sessions and discussion was only $2,800.

**D.   Damages**

33. Through this lawsuit Plaintiff seeks, for himself and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for the diminished value of online learning. Plaintiff seeks return of these amounts on behalf of himself and the Class as defined below.

34. Plaintiff also seeks damages relating to Defendant's passing off an online, "virtual" college experience as similar in kind to full immersion in the academic life of a college campus.

## V.   CLASS ACTION ALLEGATIONS

35. Plaintiff seeks to represent a class defined as:

> All students who paid Yale Spring 2020 semester tuition, fees, and/or room and board, either directly or through a third party paying on their behalf, for in-person educational services and use of campus facilities that Yale did not provide, and whose tuition and fees have not been refunded (the "Class").

Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or

directors, the judge assigned to this action, and any member of the judge's immediate family.

36. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

37. **Numerosity.** The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff at this time, the true number of Class members is known by Defendant and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

38. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

  a) whether Defendant accepted money from Class members in exchange for the promise to provide services;

  b) whether Defendant provided the services for which Class members contracted;

  c) whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide;

  d) whether Defendant is liable to Plaintiff and the Class for unjust enrichment.

39. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the

Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

**40.**     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

**41.**     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

**42.**     In the alternative, the Class may also be certified because:

    a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of

        conduct for the Defendant; and/or

b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c)    Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach of Contract

43.    Plaintiff restates, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complain as if fully set forth herein.

44.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

45.    Through the admission agreement and payment of tuition and fees, Plaintiff and each member of the Class entered into a binding contract with Defendant.

46.    As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide in-person education services, including in-person instruction and access to on-campus resources, for the full duration of the Spring 2020 semester.

47.    Plaintiff and Class members fulfilled their end of the bargain when they paid monies due for Spring 2020 semester tuition, fees and related expenses.

48.    Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above but has retained monies paid by Plaintiff and the

Class for their Spring 2020 semester tuition, fees and related expenses.

49. Plaintiff and members of the Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

50. As a direct and proximate result of Defendant's breach, Plaintiff and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver.

## COUNT II
## Unjust Enrichment

51. Plaintiff restates, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complain as if fully set forth herein.

52. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant, and in the alternative to Count I.

53. Plaintiff and members of the Class conferred a benefit on Defendant in the form of monies paid for Spring 2020 semester tuition, fees and related expenses in exchange for certain service and promises. Tuition for the Spring 2020 semester was intended to cover in-person educational services from January through May 2020.

54. Defendant voluntarily accepted and retained this benefit by accepting payment.

55. Defendant has retained this benefit, even though it ceased providing the full education, experience, and services for which the tuition and fees were collected.

56. The online education services Defendant substituted for the in-person education for which Plaintiff and class members paid has a substantially lesser value, but Defendant has nonetheless retained full payment.

**57.** It would be unjust and inequitable for Defendant to retain benefits in excess of the services it provided, and Defendant should be required to disgorge any tuition, fees and related expenses that exceed the value of online education.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C. For actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

D. For prejudgment interest on all amounts awarded;

E. For an order of restitution and all other forms of equitable monetary relief;

F. For injunctive relief as pleaded or as the Court may deem proper; and

G. For an order awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit; and

H. All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: July 29, 2020                              Respectfully submitted,

                                                  JONATHAN MICHEL, *on behalf of himself
                                                  and all others similarly situated.*


                                                  /s/__Sarah Poriss

                                                  Sarah Poriss, Esq.
                                                  777 Farmington Avenue
                                                  West Hartford, CT 06119
                                                  T: 860-233-0336
                                                  F: 866-424-4880
                                                  E: sarahporiss@prodigy.net
                                                  ct24372


                                                  James A. Francis*
                                                  John Soumilas*
                                                  David A. Searles*
                                                  Edward H. Skipton*
                                                  **FRANCIS MAILMAN SOUMILAS, P.C.**
                                                  1600 Market Street, Suite 2510
                                                  Philadelphia, PA 19103
                                                  T: (215) 735-8600
                                                  F: (215) 940-8000
                                                  jfrancis@consumerlawfirm.com
                                                  jsoumilas@consumerlawfirm.com
                                                  dsearles@consumerlawfirm.com
                                                  eskipton@consumerlawfirm.com

                                                  Yvette Golan*
                                                  **THE GOLAN FIRM**
                                                  2000 M Street, NW, Suite #750-A
                                                  Washington, D.C. 20036
                                                  T: (866) 298-4150
                                                  F: (928) 441-8250
                                                  ygolan@tgfirm.com

                                                  *\*pro hac vice* forthcoming

                                                  *Attorneys for Plaintiff*