UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JONATHAN MICHEL, | : | CASE NO.: 3:20-cv-01080-JCH |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | SEPTEMBER 25, 2020 |
| | : | |
| YALE UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

1

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

   I. The COVID Emergency and the Shift to Online Education ............................ 3

   II. Plaintiff's Suit ............................................................................................... 6

LEGAL STANDARD ............................................................................................. 7

ARGUMENT .......................................................................................................... 7

   I.    Plaintiff's Claims for Purportedly Inferior Education Are Not Cognizable. ........... 7

      A.  Connecticut law bars Plaintiff's challenges to the quality of Yale's instruction. . 7

      B.  None of the exceptions to Gupta apply. ................................................ 13

         1.    Plaintiff does not allege breach of a specific contractual promise. ............. 14

         2.    Plaintiff does not allege that Yale's online program amounted to a fundamental failure of the education program ............................... 16

         3.    Plaintiff does not allege that Yale acted in bad faith or that its decision was arbitrary and capricious. ................................................. 18

   II.   Plaintiff's Breach of Contract Claim Fails for Additional Reasons. ..................... 18

   III.  Plaintiff's Unjust Enrichment Claim Fails for Additional Reasons. ..................... 19

CONCLUSION ...................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................7

*Barneby v. New England Sch. of Montessori, LLC*,
    No. AANCV156019330S, 2016 WL 3768928 (Conn. Super. Ct. June 9, 2016) ...................11

*Bolmer v. Kocet*,
    6 Conn. App. 595 (1986) ...........................................................................................20

*Brodsky v. Mead Sch. For Human Dev.*,
    No. DNX05CV970156788S, 1999 WL 391580 (Conn. Super. Ct. June 4,
    1999) ........................................................................................................................11

*Cencor, Inc. v. Tolman*,
    868 P.2d 396 (Colo.1994).........................................................................................14

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).......................................................................................3

*Craine v. Trinity Coll.*,
    259 Conn. 625 (2002) ...........................................................................................8, 15

*Cullen v. Univ. of Bridgeport*,
    No. CV020396010, 2003 WL 23112678 (Conn. Super. Ct. Dec. 10, 2003)...............10, 11, 17

*Faigel v. Fairfield University*,
    75 Conn. App. 37 (2003) ...............................................................................10, 11, 14, 15

*Finn v. Barney*,
    471 F. App'x 30 (2d Cir. 2012) ...................................................................................3

*Fletcher v. Mead Sch. For Human Dev.*,
    No. X05CV 960152138S, 1999 WL 391583 (Conn. Super. Ct. June 4, 1999)......................11

*Grutter v. Bollinger*,
    539 U.S. 306 (2003).....................................................................................................8

*Gupta v. New Britain Gen. Hosp.*,
    239 Conn. 574 (1996) ..................................................................................... *passim*

*Harris v. Shea*,
    No. CV010085838S, 2002 WL 31939113 (Conn Super. Ct. Dec. 24, 2002).........................20

i

*Hesse v. Godiva Chocolatier, Inc.*,
    No. 19-CV-972 (AJN), 2020 WL 2793014 (S.D.N.Y. May 29, 2020) ..................................3

*Hope Acad. v. Friel*,
    No. CV030081183S, 2004 WL 1888909 (Conn. Super. Ct. July 22, 2004)..........................14

*Hull v. Yale University*,
    No. CV990586316S, 2003 WL 21299710 (Conn. Super. Ct. May 21, 2003).........................10

*Keller v. Beckenstein*,
    117 Conn. App. 550 (2009) ....................................................................................................19

*Kloth-Zanard v. Amridge Univ.*,
    No. 3:09CV606 JBA, 2012 WL 2397161 (D. Conn. June 12, 2012) ...................10, 11, 14, 17

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014)......................................................................................................7

*Legnos v. Flow Int'l Corp.*,
    No. KNLCV116010786S, 2014 WL 5099279 (Conn. Super. Sept. 8, 2014).........................18

*Little v. Yale University*,
    92 Conn. App. 232 (2005) ................................................................................................10, 13

*Madej v. Yale Univ.*,
    No. 3:20-CV-133 (JCH), 2020 WL 1614230 (D. Conn. Mar. 31, 2020) ...............8, 10, 14, 15

*Marjanovic v. Naugatuck Valley Women's Health Specialists, P.C.*,
    No. UWYCV146022762S, 2015 WL 3519101 (Conn. Super. Ct. May 7,
    2015) ......................................................................................................................................19

*McNeil v. Yale University*,
    436 F. Supp. 3d 489 (D. Conn 2020)................................................................................10, 15

*Meaney v. Conn. Hosp. Ass'n, Inc.*,
    250 Conn. 500 (1999) ............................................................................................................20

*Moss v. Wayne State Univ.*,
    No. 286034, 2009 WL 4344193 (Mich. Ct. App. Dec. 1, 2009) ...........................................21

*Neidig v. Heilig*,
    2007 WL 4215479 (Conn. Super. Nov. 7, 2007)....................................................................19

*Paynter v. New York University*,
    319 N.Y.S.2d 893 (N.Y. App. Term 1971)............................................................................12

*Regents of Univ. of Cal. v. Bakke*,
    438 U.S. 265 (1978)........................................................................................................1, 8, 9

ii

*Roe v. Loyola Univ. New Orleans*,
No. 07-cv-1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007)............................12, 13, 15, 16

*Ross v. Creighton Univ.*,
957 F.2d 410 (7th Cir. 1992) ...............................................................................................17

*Soyak v. Town of New Fairfield, Ct.*,
No. 3:07 CV 893 (CFD), 2008 WL 3992713 (D. Conn. Aug. 21, 2008) ..................................3

*Tankoos v. Mead Sch. For Human Dev.*,
No. X05CV 950145853S, 1999 WL 391350 (Conn. Super. Ct. June 4, 1999)...........10, 11, 17

*U.S. Bank Nat'l Ass'n v. Eichten*,
184 Conn. App. 727 (2018) ...................................................................................................18

*Vogel v. Maimonides Acad. of W. Conn., Inc.*,
58 Conn. App. 624 (2000) .......................................................................................................2

*Wickstrom v. N. Idaho Coll.*,
111 Idaho 450 (1986).............................................................................................................17

*Wilson v. GMAC Mortgage Corp.*,
No. CV 950553012S, 1996 WL 409338 (Conn. Super. June 27, 1996).................................19

**Other Authorities**

Conn. Exec. Order No. 7C (Mar. 15, 2020).................................................................................5

Conn. Exec. Order No. 7D (Mar. 16, 2020) ................................................................................5

Conn. Exec. Order No. 7H (Mar. 20, 2020) ................................................................................5

*Coronavirus Update: A message from Dr. Paul Genecin* (Jan. 26, 2020),
https://covid19.yale.edu/community-messages/coronavirus-update-message-
dr-paul-genecin ......................................................................................................................3

*COVID-19 Information*, https://covid19.yale.edu/community-messages.......................................3

*COVID-19 Update: Travel, Yale Health Guidance, and University Planning &
Response* (Mar. 2, 2020), https://covid19.yale.edu/community-
messages/covid-19-update-travel-yale-health-guidance-and-university-
planning-response ...................................................................................................................3

*COVID-19 – Moving courses online and other significant updates* (Mar. 10,
2020), https://covid19.yale.edu/community-messages/covid-19-moving-
courses-online-and-other-significant-updates......................................................................4, 5

*COVID-19 Update – First Confirmed Yale COVID-19 Case; Extending Online Instruction to End of Spring Semester; Campus and Staffing Considerations* (Mar. 14, 2020), https://covid19.yale.edu/university-announcements-about-covid-19/covid-19-update-first-confirmed-yale-covid-19-case-extending ............................5

*Yale adjusts to COVID-19, marshals resources to meet needs*, Yale News (March 16, 2020), https://news.yale.edu/2020/03/16/yale-adjusts-covid-19-marshals-resources-meet-needs ..............................................................................................5

*New Haven, Hartford, Hamden and Bridgeport Mayors Sign Emergency Order Prohibiting Gatherings of More than Ten Individuals* (Mar. 19, 2020), https://www.newhavenct.gov/civicax/inc/blobfetch.aspx?BlobID=36622 .............................6

New Haven Emergency Order No. 4 (Mar. 19, 2020) ..................................................6

*Proc. on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak* (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ ........................................................................................................6

Fed. R. Civ. Pro. 12(b)(6) .............................................................................7

## INTRODUCTION

When the coronavirus pandemic struck in early 2020, it wrought seismic changes in nearly every aspect of American life. The disease spread quickly across the world and our nation, killing thousands and sickening millions more. As states across the nation scrambled to issue stay-at-home orders, Yale University took action to ensure that it continued to fulfill its mission to safely educate its students. By mid-March, in the wake of Governor Lamont's declaration of a state of emergency, Yale made the difficult but well-considered decision to ask students not to return to campus after spring break, refund remaining room and board, and transition classes to online instruction for the remainder of the Spring 2020 semester.

Plaintiff Jonathan Michel, an undergraduate student at Yale, concedes that Yale made the right decision to move classes online. Yet he brings this putative class action claiming that, in his view, the education he received for the remaining days of the Spring 2020 semester was of lesser quality, and therefore should have cost less, than an in-person education. A long line of Connecticut precedent bars Plaintiff's claims, and this Court should reject his invitation to second-guess Yale's decisions about how best to safely and effectively educate its students during a once-in-a-lifetime crisis.

Connecticut courts—and courts around the country—have consistently rejected claims that an educational institution "breached its agreement by failing to provide an effective education." *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 590 (1996) (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992) and collecting cases). There are both constitutional and prudential reasons for this rule. First, a university has a First Amendment right "to determine for itself on academic grounds . . . what may be taught [and] how it shall be taught." *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 312 (1978). That means colleges have wide latitude to determine not only what material is taught, but also how education is delivered.

1

Second, and equally important, courts are "ill equipped" to weigh the relative merits of these pedagogical decisions or to judge the value of one "method of teaching" over another. *Gupta*, 239 Conn. at 590. For these reasons, beginning with the Connecticut Supreme Court's seminal decision in *Gupta v. New Britain General Hospital*, Connecticut has followed "the vast majority of states" in refusing to hear such claims. *Vogel v. Maimonides Acad. of W. Conn., Inc.*, 58 Conn. App. 624, 629 (2000). Both of Plaintiff's claims rest on the theory that Yale's online courses were inferior to its in-person courses. That theory is not cognizable under *Gupta*, and his allegations do not fit into any of the narrow exceptions to that rule.

Even apart from the *Gupta* rule, the Court should dismiss both the breach of contract claim and the unjust enrichment claim for ordinary pleading failures. Plaintiff has not alleged the breach of any contract provision specifically requiring in-person instruction. Instead, he alleges only that he paid for "the full experience of academic life on Defendant's campus," Compl. ¶ 4, and then makes the conclusory assertion that this amounted to a promise by Yale to provide in-person instruction, *id.* at ¶ 46. That does not amount to a plausible claim for breach of contract. Likewise, the unjust enrichment claim fails because the complaint lacks any plausible allegation that Yale improperly withheld funds. Yale provided an education and granted credit accordingly. Plaintiff does not allege (and could not allege) that Yale did not incur the costs of providing the education. To the contrary, having already incurred the traditional costs of providing education, Yale was forced to incur the additional costs needed to continue its educational operations during the pandemic. Yale was not "enriched," and its retention of the tuition paid was in no way "unjust."

# BACKGROUND[1]

## I.        The COVID Emergency and the Shift to Online Education

As a global university, Yale began tracking the COVID-19 outbreak before it had

emerged as an international pandemic. Shortly after its Spring semester started,[2] and throughout

January and February, Yale monitored the outbreak and provided frequent updates to the

University community.[3] On March 2, before its Spring Break, Yale sent another update,

explaining that it was "continuing to monitor the spread of COVID-19" and was "consulting with

the Connecticut Department of Public Health and experts from the Yale School of Public Health

and School of Medicine to update the university's existing pandemic response plan."[4]

On March 10, 2020, in response to the COVID-19 outbreak, Connecticut Governor Ned

Lamont declared a public health emergency and civil preparedness emergency throughout the

State of Connecticut.[5] He further ordered municipalities, local health officials, and local

---

[1] The allegations in the Complaint are taken as true for this motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). While the allegations of the Complaint, standing alone, make clear that this case does not present a viable cause of action, the Court may also take judicial notice of publicly available documents or webpages of the parties. *See Soyak v. Town of New Fairfield, Ct.*, No. 3:07 CV 893 (CFD), 2008 WL 3992713, at *1 (D. Conn. Aug. 21, 2008) (collecting cases); *Hesse v. Godiva Chocolatier, Inc.*, No. 19-CV-972 (AJN), 2020 WL 2793014, at *3 (S.D.N.Y. May 29, 2020); *see also Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (affirming district court taking judicial notice of webpages and media reports). The complaint relies on various pages of Yale's website, and Yale asks this Court to take judicial notice of them. Yale also asks the Court to take judicial notice of the COVID-19 executive orders issued by the Governor of Connecticut and emergency orders issued by the Mayor of New Haven.

[2] *See, e.g., Coronavirus Update: A message from Dr. Paul Genecin* (Jan. 26, 2020), https://covid19.yale.edu/community-messages/coronavirus-update-message-dr-paul-genecin.

[3] *See COVID-19 Information*, https://covid19.yale.edu/community-messages.

[4] *See COVID-19 Update: Travel, Yale Health Guidance, and University Planning & Response* (Mar. 2, 2020), https://covid19.yale.edu/community-messages/covid-19-update-travel-yale-health-guidance-and-university-planning-response.

[5] *Declaration of Public Health and Civil Preparedness Emergencies* (Mar. 10, 2020), https://portal.ct.gov/-/media/Office-of-the-Governor/News/20200310-declaration-of-civil-preparedness-and-public-health-emergency.pdf.

education officials "to follow previously issued guidance and apply relevant principles of risk management to decisions about whether to cancel, modify, or postpone large gatherings, public events, or travel."[6] Governor Lamont advised that orders about additional measures to protect public health and safety would follow.[7]

That same day, Yale announced that, based on the expert advice of medical and public health professionals and guidance from state and federal agencies, in-person classes would temporarily shift to online instruction to protect the health of students, faculty, and staff. Compl. ¶ 18.[8] Because most of its students were on spring recess at that time, Yale asked students to "remain at home after spring recess. For undergraduates who are on campus now, please make every effort to return home as soon as possible, and no later than Sunday, March 15."[9] Personnel across Yale began mobilizing to help undergraduates travel home.

Yale also explained that it was mounting an intensive effort to train faculty for online instruction. For traditional academic courses, Yale announced that "[a]ll faculty members and graduate student teaching assistants received information from the Poorvu Center for Teaching and Learning describing how to convert their courses to online instruction and to obtain assistance with the transition."[10] For research, Yale announced that

> While the health of Yale's faculty, staff, and students is our top priority, the university also remains committed to its mission of research and education. Faculty members and graduate and professional students are asked to carry out their teaching responsibilities online. Research groups have been asked to

---

[6] *Id.*

[7] *Id.*

[8] *COVID-19 – Moving courses online and other significant updates* (Mar. 10, 2020), https://covid19.yale.edu/community-messages/covid-19-moving-courses-online-and-other-significant-updates.

[9] *Id.*

[10] *Id.*

make contingency plans to maintain research continuity, which may involve faculty, staff, and students continuing to work and study in labs, machine shops, offices, and other campus facilities. The university will maintain central services to support research and teaching.[11]

Key staff remained on campus to facilitate and support the transition to online teaching and learning activities.[12] For example, Yale library staff remained on campus and were "hard at work helping to supply students and faculty with digital texts and tools relating to their coursework and research."[13]

Four days later, Yale had its first confirmed COVID-19 case, and announced that classes would move online for the rest of the semester.[14] By the end of that week, Governor Lamont had directed Connecticut to close public schools, Conn. Exec. Order No. 7C (Mar. 15, 2020), restricted the size of large social and recreational gatherings, Conn. Exec. Order No. 7D (Mar. 16, 2020), and ordered all non-essential businesses and not-for-profit entities "[to] employ, to the maximum extent possible, any telecommuting or work from home procedures" for at least a month. Conn. Exec. Order No. 7H (Mar. 20, 2020). Similarly, New Haven Mayor Justin Elicker

---

[11] *Id.*

[12] *See* https://news.yale.edu/2020/03/16/yale-adjusts-covid-19-marshals-resources-meet-needs.

[13] *Id.*

[14] *COVID-19 Update – First Confirmed Yale COVID-19 Case; Extending Online Instruction to End of Spring Semester; Campus and Staffing Considerations* (Mar. 14, 2020) https://covid19.yale.edu/university-announcements-about-covid-19/covid-19-update-first-confirmed-yale-covid-19-case-extending.

issued orders limiting social gatherings to no more than ten people for the next two months,[15] and the federal government also declared a national emergency.[16]

## II.      Plaintiff's Suit

Plaintiff alleges that he was an undergraduate student enrolled at Yale during the Spring 2020 semester. Compl. ¶ 11. While Plaintiff acknowledges that moving to online instruction was "necessitated by the circumstances," *id. at* ¶ 20, was "consistent with safety measures," *id.* at ¶ 28, and still permitted students to continue their academic instruction through live online classes, *id.* at ¶ 21, Plaintiff alleges that Yale nevertheless breached its purported contractual obligations (Count I) and was unjustly enriched (Count II).

Plaintiff seeks to bring a class action on behalf of all Yale undergraduate, graduate, and professional students who paid tuition or fees for the Spring 2020 semester, arguing that "[t]he online education services Defendant substituted for in-person education . . . ha[ve] a substantially lesser value." Compl. ¶ 56. Plaintiff seeks a refund of the "pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for the diminished value of online learning." *Id.* ¶¶ 33–34. He does not deny that Yale reimbursed him for room and board charges for the period after the spring recess.

---

[15] New Haven Emergency Order No. 4 (Mar. 19, 2020). *See New Haven, Hartford, Hamden and Bridgeport Mayors Sign Emergency Order Prohibiting Gatherings of More than Ten Individuals* (Mar. 19, 2020), https://www.newhavenct.gov/civicax/inc/blobfetch.aspx?BlobID=36622.

[16] See Proc. on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In reviewing the sufficiency of a complaint, [courts] accept only its factual allegations, and the reasonable inferences that can be drawn therefrom, as true." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *id.* (quoting *Iqbal*, 556 U.S. at 678), or "to accept as true allegations that are wholly conclusory," *id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Plaintiff alleges that Yale's decision to move classes online during the global pandemic breached its contract with students and unjustly enriched Yale. Those claims fail at the outset because Connecticut law does not permit second-guessing how a university teaches its courses. The claims also fail because Plaintiff has not alleged any contractual promise that courses would be taught in-person and does not plausibly allege that Yale retained any undue benefit. The Court should thus dismiss the Complaint.

### I.   Plaintiff's Claims for Purportedly Inferior Education Are Not Cognizable.

#### A.   Connecticut law bars Plaintiff's challenges to the quality of Yale's instruction.

Plaintiff's claims are barred by the Connecticut Supreme Court's decision in *Gupta*, 239 Conn. at 591, which declined to recognize claims sounding in "educational malpractice," or

closely related breach of contract claims for "inadequate educational services." As this Court

recently noted, under *Gupta* and its progeny, when a plaintiff challenges a university's academic

decisions, a court "must defer to [the] academic judgment" of the institution, and "be careful not

to substitute its judgment improperly for the academic judgment of the school." *Madej v. Yale

Univ.,* No. 3:20-CV-133 (JCH), 2020 WL 1614230, at *8 (D. Conn. Mar. 31, 2020).

Plaintiff's Complaint asks this Court to make the very judgments that *Gupta* prohibits

and that this Court cautioned against in *Madej*. The gist of his theory is that Yale's "educational

experience" after the pandemic was not "the same or just as good as" it was before the pandemic.

Compl. ¶ 24. Because this theory necessarily calls on this Court to weigh Yale's considered

academic judgment about how best to educate its students during a once-in-a-lifetime pandemic,

*Gupta* bars Plaintiff's claims as a matter of law.

The rationale for the *Gupta* rule is twofold. First, as the U.S. Supreme Court has

recognized, academic freedom gives a university the right "to make its own judgment as to

education." *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003) (citations omitted). This freedom

includes the right "to determine for itself on academic grounds . . . what may be taught [and]

how it shall be taught." *Bakke*, 438 U.S. at 312 (quoting *Sweezy v. New Hampshire*, 354 U.S.

234, 263 (1957) (Frankfurter, J., concurring in the result)). As the Connecticut Supreme Court

has observed, "[t]his academic freedom is rooted in the first amendment," and "prevents courts

from substituting their judgment for the judgment of the school." *Craine v. Trinity Coll.*, 259

Conn. 625, 646 (2002).

Second, there are compelling prudential reasons for the rule. As the Connecticut Supreme

Court explained in *Gupta*, 239 Conn. at 590, courts are "ill-equipped" to review the "soundness

of [an educational institution's] method of teaching." Claims like Plaintiff's "require[] [courts]

8

… not merely to make judgments as to the validity of broad educational policies . . . but, more importantly, to sit in review of the day-to-day implementation of these policies." *Id.* (internal citations omitted). Courts therefore reject claims that force them to "defin[e] what constitutes a reasonable educational program and . . . decid[e] whether that standard has been breached." *Id*. at 591.

Plaintiff asks the Court to intrude into academic affairs in exactly the manner *Gupta* prohibits. *See Gupta*, 239 Conn. at 590. He invites the Court to compare the value of a pre-pandemic "full academic experience" of in-person instruction at Yale to the value of a mid-pandemic "substitute educational experience" of online learning. Compl. ¶ 24. By their nature, his claims require the Court to weigh the pedagogical merits of online instruction against in-person instruction—which could vary from class to class—and judge the educational effectiveness of Yale's delivery of online instruction during the global pandemic. This would require the Court to "evaluate the course of instruction," "review the soundness of the method of teaching," and make a host of decisions about the day-to-day educational effectiveness of Yale's professors. *Gupta*, 239 Conn. at 590; *see also Bakke*, 438 U.S. at 312. Connecticut law prohibits such evaluation and requires dismissal of the Complaint in its entirety.

The *Gupta* rule applies regardless of how a plaintiff styles the causes of action, and thus bars both Plaintiff's contract claim and his unjust enrichment claim. As to contract claims, the Connecticut Supreme Court has held that "[t]he jurisprudential considerations that shed doubt on the viability of the tort of educational malpractice also inform our analysis of a ***contract*** claim based on inadequate educational services." *Gupta*, 239 Conn. at 591 (emphasis in original). "Where the essence of the complaint is that [an educational institution] breached its agreement by failing to provide an effective education, the court is . . . asked to evaluate the course of

instruction [and] called upon to review the soundness of the method of teaching that has been adopted by [that] educational institution." *Id.* at 590 (quoting *Ross*, 957 F.2d at 416). Because such a claim "in reality . . . raise[s] questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students," it must be answered with reference to standards of duty associated with the law of torts. *Id.* (citation and internal quotations omitted). The difficulty is the same whether the claim is styled as negligence (educational malpractice) or as a "breach of contract claim [based on] inadequate [educational services]." *Id.* at 592. Either way, judicial interference is inappropriate. *Id.*

Put simply, no breach of contract arises simply because a plaintiff subjectively feels "that the education was not good enough." *Hull v. Yale University*, No. CV990586316S, 2003 WL 21299710 at *3 (Conn. Super. Ct. May 21, 2003) (quoting *Gupta*, 239 Conn. at 593). Accordingly, applying *Gupta*, courts regularly reject breach of contract claims against universities alleging failure to provide adequate educational services. *See Madej*, 2020 WL 1614230, at *8–*13; *McNeil v. Yale University*, 436 F. Supp. 3d 489, 531–34 (D. Conn 2020); *Kloth-Zanard v. Amridge Univ.*, No. 3:09CV606 JBA, 2012 WL 2397161 at *3–*4, *7 (D. Conn. June 12, 2012); *Little v. Yale University*, 92 Conn. App. 232 (2005); *Faigel v. Fairfield University*, 75 Conn. App. 37, 43 (2003); *Cullen v. Univ. of Bridgeport*, No. CV020396010, 2003 WL 23112678 at *3-*4 (Conn. Super. Ct. Dec. 10, 2003); *Hull*, 2003 WL 21299710 at *3–*5.

Courts also apply the *Gupta* rule if the plaintiffs call their claim "unjust enrichment." For example, in *Tankoos v. Mead Sch. For Human Dev.*, No. X05CV 950145853S, 1999 WL 391350, at *9 (Conn. Super. Ct. June 4, 1999), the court relied on *Gupta* to strike an unjust enrichment claim seeking a refund of tuition due to allegedly inadequate education because the

"[i]nquiry into whether the defendant was unjustly enriched by receipt of the plaintiffs' tuition payments requires an examination of the quality and value of services provided in return." Therefore, the court held, the *Gupta* rule barred the plaintiffs from attempting to "disguise their impermissible claims sounding in negligence and breach of contract as an unjust enrichment claim." *Id.*; *accord Brodsky v. Mead Sch. For Human Dev.*, No. DNX05CV970156788S, 1999 WL 391580, at *10–11 (Conn. Super. Ct. June 4, 1999) (same); *Fletcher v. Mead Sch. For Human Dev.*, No. X05CV 960152138S, 1999 WL 391583, at *10 (Conn. Super. Ct. June 4, 1999) (same). Similarly, in *Barneby v. New England Sch. of Montessori, LLC*, No. AANCV156019330S, 2016 WL 3768928, at *3 (Conn. Super. Ct. June 9, 2016), the court held that an unjust enrichment count, brought with a breach of contract claim alleging that a nursery school provided inadequate educational programming, "must be stricken based on the holding and reasoning of *Gupta*."

Courts have applied these principles in a broad range of factual contexts. For example, they have dismissed challenges to the adequacy of an institution's educational services, *Gupta*, 239 Conn. at 590 (claim that medical residency program was not designed to provide adequate training in accordance with established standards), challenges to other subjective aspects of an educational program's methodology, *Cullen*, 2003 WL 23112678, at *3 (claim that university provided inadequate professors, administrators and courses), challenges to how a school awards credit, *Faigel*, 75 Conn. App. at 41 (claim that college should have given credit for foreign coursework), and challenges to the adequacy of online instruction, *Kloth-Zanard*, 2012 WL 2397161 at *1-*5 (claiming inadequate assistance in clinical placement opportunities). As these and other cases illustrate, the *Gupta* rule applies broadly, whenever the gist of a plaintiff's claim calls on the court "to evaluate the course of instruction [and] . . . review the soundness of the

11

method of teaching that has been adopted by [that] educational institution." *Gupta*, 239 Conn. at 590.

The prudential considerations underlying *Gupta* are particularly relevant here, where the educational decisions attacked in the Complaint were made during an unprecedented emergency, when public health advice and the legal and regulatory environment were shifting on a weekly, and even daily, basis. Based in part on well-established principles of judicial non-interference in academic affairs, courts in other jurisdictions have dismissed tuition-reimbursement claims against universities forced to close due to protests or natural disasters. For example, in *Paynter v. New York University*, 319 N.Y.S.2d 893 (N.Y. App. Term 1971), New York University had to close campus temporarily due to antiwar protests following the Kent State massacre. A student's father demanded a partial refund of tuition, but after the trial court awarded a refund, the appellate court reversed, ordering that the case be dismissed. *Paynter* explained that "[p]rivate colleges and universities are governed on the principle of self-regulation, free to a large degree, from judicial restraints, and they have inherent authority to maintain order on their campuses." *Id.* at 894 (citation omitted). Among other things, the court emphasized that "the s*ervices rendered by the university cannot be measured by the time spent in a classroom*." *Id.* (emphasis added). The court noted that the student still received an education and credit, and graduation was not delayed.

Similarly, in *Roe v. Loyola Univ. New Orleans*, No. 07-cv-1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007), the court declined to reimburse tuition when Loyola University Law School had to cancel classes for the Fall 2005 semester due to Hurricane Katrina. The school arranged for students to attend classes at other law schools and receive full credit towards their Loyola degree. *Id.* at *1. Plaintiff attended classes at Southern Methodist University law school

for the Fall semester of 2005, received credit for attending classes there, and remained on pace to graduate from Loyola on time. Plaintiff still sued, seeking reimbursement of his tuition payments to Loyola, which had a higher tuition than SMU. The court dismissed the claim, reasoning that "by attending classes during the Fall 2005 semester at SMU, *plaintiff received the benefit of the emergency policy made possible* by Loyola." *Id.* at *2 (emphasis added).

Like the claims in the cases cited above, the Court should decline to hear Plaintiff's claims, which call on the Court to make judgments about the relative value of Yale's methods of educating its students. Plaintiff contends that "online classes" cannot "replicate the full academic opportunities and experiences of in-person instruction" or "the same value as in-person education." Compl. ¶ 4. He claims that online instruction cannot "replace the irreplaceable—on-campus life at an elite university" and that this is not a substitute for "full[] participation in the university's academic life." *Id.* ¶ 24. Plaintiff does not, however, assert that he did not receive a Yale education, and indeed admits that the transition to online learning was "necessitated" by the pandemic. *Id.* ¶ 20. Under *Gupta*, this Court should reject Plaintiff's call to second guess educational decisions that Plaintiff acknowledges were necessary to safeguard the welfare of students during this pandemic.

### B.  None of the exceptions to *Gupta* apply.

Connecticut courts have recognized three limited exceptions to the *Gupta* rule against claims attacking educational programs. First, courts can consider a contract claim where the plaintiff alleges that an "educational institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program." *Little*, 92 Conn. App. at 236. Second, courts can hear a contract claim if the plaintiff alleges that "the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field." *Id.* Third, courts can hear a contract claim if the plaintiff alleges that the

institution acted "arbitrarily, capriciously, or in bad faith," in a "substantial departure from academic norm." *Gupta*, 239 Conn. at 595. Plaintiff's allegations fit none of these exceptions.

### 1.  Plaintiff does not allege breach of a specific contractual promise.

Plaintiff has not alleged that Yale breached a specific contractual promise to provide in-person instruction or pro rata reimbursement if classes moved to remote learning. Courts will dismiss a breach of contract claim that challenges a university's academic judgment unless the plaintiff identifies: (1) "a *specific* contractual promise"; that is (2) "distinct from any overall obligation to offer a reasonable program." *Gupta*, 239 Conn. at 593 (emphasis added). As to the first requirement, a promise is a "*specific* contractual promise" only if it is "precise and based on specific contractual terms or provisions." *Kloth-Zanard,* 2012 WL 2397161, at *4. The plaintiff must identify a breach of a promise to "provide *specifically promised* educational services"; "[g]eneral or vague promises do not suffice." *Hope Acad. v. Friel*, No. CV030081183S, 2004 WL 1888909, at *2 (Conn. Super. Ct. July 22, 2004) (emphasis in original). The "specific contractual promise" must be narrow enough that a factfinder could determine whether it has been violated. *Madej*, 2020 WL 1614230, at *10.[17] As to the second requirement, a promise is "distinct from any overall obligation to offer a reasonable program" where it is "a special promise … outside the purview of normal educational expectations." *Faigel*, 75 Conn. App. at 38 (describing this as an "exacting standard").

---

[17] This rule exists because "[c]ontract claims that in fact attack the general quality of educational experiences provided to students have generally been rejected. . . . Such claims in reality raise questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students—questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts." *Cencor, Inc. v. Tolman*, 868 P.2d 396, 398-99 (Colo. 1994) (cited by *Gupta*, 239 Conn. at 590).

Case law distinguishes between a potentially actionable "specific contractual promise" by an educational institution and a non-cognizable attack on educational policy choices. In *Gupta*, the court found that the plaintiff had adequately alleged a specific contractual promise that the residency program "'is, and will continue to be, properly accredited by all necessary accrediting authorities.'" *Gupta*, 239 Conn. at 593 (dismissing for failure to show breach of that promise). Similarly, in *Craine v. Trinity College*, 259 Conn. at 632, the court identified a sufficiently specific promise where a faculty manual stated that a "negative [tenure] decision [would] be based on failure to meet the standards of improvement . . . specified in the last letter of reappointment," and the plaintiff provided evidence of a concrete standard of improvement—"the quantity of publications"—which had allegedly been met, *id.* at 656–60.

By contrast, several courts have given examples of promises that are too general. In *Faigel,* 75 Conn. App. at 42, a foreign student's allegations that Fairfield University promised that it would give her "many credits" for her studies abroad was "too imprecise to qualify for consideration as a 'specific contractual promise.'" In *McNeil v. Yale Univ.*, 436 F. Supp. 3d at 532, the court declined to hear plaintiffs' claim that Yale had breached a promise to "eradicate sexual misconduct at the University" because the promise was too general and unenforceable. Likewise, in *Madej*, 2020 WL 1614230, at *11, Yale had made clear its "steadfast commitment to [its] international students" and that international students are "welcome and respected on [its] campus," but under *Gupta*, those promises were too general to support an international student's breach of contract claim related to his involuntary academic withdrawal from school. And in *Roe v. Loyola*, the court rejected a breach of contract claim arising from Loyola Law School's closure of campus following Hurricane Katrina because the plaintiff "pointed to no provision of the

student bulletin or Handbook that would entitle him to a free semester of law school" or to attend school in New Orleans. 2007 WL 4219174 at *2.

Plaintiff has alleged no specific terms of a contract between Yale and Plaintiff, much less any specific promises that classes would be offered on-campus and in-person regardless of the health risks and regardless of public health emergency orders issued by state and city officials. The Complaint alleges broadly that the University promised to "provide in-person instruction and access to physical resources and school facilities such as libraries, laboratories, and classrooms" in exchange for tuition. Compl. ¶ 15. But Plaintiff does not allege any specific provision in any document or statement by the University either making that promise or linking it to tuition payments. Plaintiff describes no materials from which such a promise might have arisen other than an admission agreement, *see id*. ¶ 45, and the Complaint fails to quote or even paraphrase any portion of that agreement that supposedly creates an enforceable promise to provide live, in-person instruction in a physical classroom regardless of health consequences. The Complaint thus fails to satisfy *Iqbal*'s plausibility standard.

## 2. Plaintiff does not allege that Yale's online program amounted to a fundamental failure of the education program.

Plaintiff has not—and could not—allege that Yale's transition to online learning was a "fundamental failure of the educational program" that would justify allowing his breach of contract claim to go forward. To fit within this exception to the *Gupta* rule, the plaintiff must allege that "the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field." *Gupta*, 239 Conn. at 592. The "alleged fundamental failure of the educational program must be *objectively* measurable. A claim that invites inquiry into *subjective* aspects of a program, such as quality or methodology

implicates the policy considerations the court discussed in *Gupta*." *Tankoos*, 1999 WL 391350, at *5 (emphasis added).

Examples of objective criteria include a failure to provide the requisite "days/hours to complete a prescribed course of study," *Wickstrom v. N. Idaho Coll.*, 111 Idaho 450, 452 n.1 (1986) (cited by *Gupta*, 239 Conn. at 592), or "effectively cut[ting] [the plaintiff] off from *any* participation in and benefit from the University's academic program there." *Ross*, 957 F.2d at 417 (claiming that a member of basketball team graduated college with a fourth-grade reading level); *see also Kloth-Zanard*, 2012 WL 2397161, at *4 (citing *Ross*). By contrast, a breach of contract claim cannot hinge on "subjective nuances of the teacher-student relationship (i.e. methodology of teaching and other matters usually raised under the rubric, 'educational malpractice.')" *Wickstrom*, 111 Idaho at 452 n.1; *see also Tankoos*, 1999 WL 391350, at *4 (quoting *Wickstrom* with approval). In other words, the plaintiff must do more than allege he is unhappy with the quality of the courses, clinical experience, and professors—he must allege that "it was impossible to obtain a degree." *Cullen*, 2003 WL 23112678, at *1.

Plaintiff's allegations fall well short of that standard. He does not—and cannot—allege that Yale gave inadequate time of instruction, prevented students from accessing classes, or made it impossible to earn credits or degrees. He does not allege that Yale failed to grant credits or prevented students from graduating because courses were taught remotely. His Complaint instead focuses on purely subjective metrics—alleging that Yale's online courses are not as good as its in-person courses, that his experience was subjectively less valuable because he could not access campus, and that his education was diminished from the lack of peer interaction. *See, e.g.,* Compl. ¶¶ 1–7. These come nowhere near the "fundamental failures" recognized as an exception to the ordinary *Gupta* rule.

### 3.   Plaintiff does not allege that Yale acted in bad faith or that its decision was arbitrary and capricious.

Plaintiff also has not alleged that Yale acted in bad faith or that the decision to move classes online was arbitrary and capricious. In *Gupta*, the Connecticut Supreme Court considered such a claim, warning that, even though courts must defer to academic judgments,

> [e]ducational discretion is, nonetheless, not limitless. The plaintiff properly observes that, in exercising its professional judgment, an educational institution does not have license to act arbitrarily, capriciously, or in bad faith.

*Gupta*, 239 Conn. at 595 (citations omitted).

Here, however, Plaintiff pleads the opposite. He admits that Yale's decision to close campus and transition to online instruction was "necessitated by the circumstances," Compl. ¶ 20, and was "consistent with safety measures," *id.* at ¶ 28. As Plaintiff recognizes, Yale had to transition to online learning to safeguard the health of the Yale community, and it did so in a well-considered, deliberate manner, while ensuring that students could have a meaningful educational experience, earn credits, and graduate on time. That is the opposite of arbitrary and capricious behavior, or bad faith.

## II.      Plaintiff's Breach of Contract Claim Fails for Additional Reasons.

This Court does not need to go beyond the *Gupta* doctrine to dismiss the Complaint in its entirety. But even without that doctrine, Plaintiff's claims would fail under standard breach of contract principles. "The elements of a breach of contract action are: [[1]] the formation of an agreement, [[2]] performance by one party, [[3]] breach of the agreement by the other party and [[4]] damages." *U.S. Bank Nat'l Ass'n v. Eichten*, 184 Conn. App. 727, 761 (2018) (internal quotation marks omitted). But "[a] breach of contract action cannot be maintained when the plaintiff cannot identify any contract provision violated by the defendant's actions." *Legnos v. Flow Int'l Corp.*, No. KNLCV116010786S, 2014 WL 5099279, at *4 (Conn. Super. Sept. 8, 2014)

(granting summary judgment); *Keller v. Beckenstein*, 117 Conn. App. 550, 560-61 (2009) (affirming summary judgment where plaintiffs "cannot identify any contractual provision breached by the defendants' conduct"). Connecticut courts regularly strike contract claims when a plaintiff cannot identify the specific provision that the defendant allegedly breached.[18] As noted above, Plaintiff's bare allegations that he contracted for the general academic experience of in-person instruction on the Yale campus is a far cry from the specificity needed to maintain a breach of contract claim.

### III.      Plaintiff's Unjust Enrichment Claim Fails for Additional Reasons.

Plaintiff's unjust enrichment claim also fails for other reasons.

First, a plaintiff cannot maintain a claim for unjust enrichment if there is an enforceable contract. *See Marjanovic v. Naugatuck Valley Women's Health Specialists, P.C.*, No. UWYCV146022762S, 2015 WL 3519101, at *5 (Conn. Super. Ct. May 7, 2015) (striking an unjust enrichment claim when the plaintiff incorporated a breach of contract claim by reference into the unjust enrichment claim). "Where … there is an enforceable express or implied in fact

---

[18] *See, e.g., Schivano v. Bank of New York Co.*, Superior Court, judicial district of Danbury, No. CV-12-5009097-S (April 1, 2013, Doherty, J.) (striking breach of contract claim where "the plaintiff failed to specifically identify which provisions of the contracts the defendants breached"); *Brantley v. Residential Makeover, LLC*, Superior Court, judicial district of New Haven, No. CV-10-5033289-S (July 25, 2012, Fischer, J.) (granting motion to strike breach of contract counterclaim because "the defendants . . . failed to point to any specific promise that was alleged to have been breached by the defendant"); *Neidig v. Heilig*, 2007 WL 4215479, at *2 (Conn. Super. Nov. 7, 2007) (striking breach of contract claim based on plaintiff's failure to identify any violated terms of contract and "mere conclusion of law"); *Wilson v. GMAC Mortgage Corp.*, No. CV 950553012S, 1996 WL 409338, at *1-2 (Conn. Super. June 27, 1996) (striking breach of contract claim failing to identify contract at issue); *see also Visconti v. Pepper Partners Ltd. Partnership*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, No. X06-CV-99-0170072-S (May 14, 2002, McWeeney, J.) (granting motion for summary judgment where "amended complaint asserts a breach of contract claim but does not articulate the specific provision of the sales contract, note or mortgage which was allegedly breached").

contract that regulates the relations of the part[ies] . . . there is no room for quasi-contract."
*Harris v. Shea*, No. CV010085838S, 2002 WL 31939113, at *3 (Conn Super. Ct. Dec. 24, 2002),
aff'd, 79 Conn. App. 840 (Conn. App. Ct. 2003). Plaintiff here alleges an enforceable contract,
Compl. ¶¶ 13, 45, and even incorporates by reference the allegations about the contract into the
unjust enrichment claim. *Id.* ¶ 51.

Second, Plaintiff has failed to plausibly allege unjust enrichment. To make out an unjust
enrichment claim under Connecticut law, a plaintiff must allege that (1) the defendant benefited,
(2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of
payment was to the plaintiff's detriment. *Bolmer v. Kocet*, 6 Conn. App. 595, 612–13 (1986).
Courts evaluating such claims must determine whether "under a given set of circumstances, [it]
is just or unjust, equitable or inequitable, conscionable or unconscionable, [and thus,] it becomes
necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances
and the conduct of the parties and apply this standard." *Meaney v. Conn. Hosp. Ass'n, Inc*., 250
Conn. 500, 511–12, (1999). Plaintiff does not satisfy these requirements. The Complaint includes
little more than threadbare recitals of the elements of an unjust enrichment claim. Compl. ¶¶ 51–
57. It provides no supporting allegations that Yale *inequitably* retained the cost of tuition or fees
paid by students, many of whom receive substantial financial aid. He has not alleged—and could
not—that his tuition and fees were used for anything except furthering the educational goals of
the University. He does not allege that it cost Yale less to transition to virtual learning during a
pandemic than it would have cost to complete the semester traditionally, in the absence of a
pandemic, or even that his tuition covered the full cost Yale incurred to provide his education.
And Plaintiff does not dispute that he received credit towards his degree, or that he continued to
receive instruction. Where, as here, a plaintiff has "gained a general benefit from the university's

expenditures, which included spending in areas that would directly benefit students," an unjust

enrichment claim must be dismissed. *Moss v. Wayne State Univ.*, No. 286034, 2009 WL

4344193, at *2 (Mich. Ct. App. Dec. 1, 2009) (rejecting plaintiff's argument that university was

unjustly enriched when it failed to refund a "contingency fee" it charged to protect against state

budget shortfalls that did not materialize, where students benefited from the expenditure of the

money collected through that fee).

Yale responded to a global pandemic as any educational institution should: doing

everything possible to maintain the health and safety of students, staff, and faculty—while

continuing to provide a quality education that allowed students to meet course and degree

requirements. Under the circumstances, any claim of inequity rings hollow.

## CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed.


Dated: September 25, 2020                                   Respectfully submitted,

                                                           /s/    *Jonathan M. Freiman*
                                                           Jonathan M. Freiman (ct24248)
                                                           Kim Rinehart (ct24427)
                                                           Benjamin M. Daniels (ct29713)
                                                           WIGGIN AND DANA LLP
                                                           P.O. Box 1832
                                                           New Haven, CT 06508-1832
                                                           Phone: (203) 498-4400
                                                           Fax:    (203) 782-2889
                                                           jfreiman@wiggin.com
                                                           krinehart@wiggin.com
                                                           bdaniels@wiggin.com

490\290\4815-4356-9868.v2                                  *Attorneys for Defendant Yale University*