## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JONATHAN MICHEL, on behalf of himself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 3:20-cv-01080-JCH** |
| **v.** | ) ) | **CLASS ACTION AMENDED** |
| **YALE UNIVERSITY,** | ) ) ) | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **Defendant.** | ) ) | |

Plaintiff Jonathan Michel ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Yale University ("Yale" or "Defendant"), and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, and says:

## I.      NATURE OF THE CASE

1.      Yale is one of the most prestigious private universities in the country, providing higher education in the arts, sciences, environment, architecture, engineering, drama, business, law, medicine, nursing, and ministry, among other disciplines. Plaintiff is a student at Yale.

2.      On March 10, 2020, Yale announced that it was canceling in-person classes due to the pandemic of the Coronavirus Disease 2019 ("COVID-19").

3.      Plaintiff does not dispute that Yale's decision to cease in-person instruction was warranted. Plaintiff asks merely to be refunded the money he spent for services that were not provided.

4.      For the Spring 2020 semester, undergraduate students paid approximately $27,750 in tuition alone.  For the 2019-2020 academic year, tuition, fees, room and board and other expenses were calculated at approximately $72,100.

5.      Prior to its March 2020 announcement that it would cease in-person instruction and effectively close the campus for the rest of the Spring 2020 semester, Yale permitted online education for only some courses in only some schools, and typically charged far less in tuition.

6.      After the school was effectively closed on March 10, 2020 and classes migrated online, students like Plaintiff were forced to forego approximately five weeks of promised in-class instruction.

7.      Though Yale could no longer provide the remaining classroom/direct faculty instruction after shuttering the university in early March, Yale still demanded that students pay the full tuition price.

8.      While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, Yale has failed to apportion the burden in an equitable manner or consistent with its obligations as an educational institution.

9.      Yale is not entitled, by either contract or equitable principles, to pass the entire cost of its COVID-19 related closure to its students and their families. Plaintiff and the putative Class are entitled to a partial refund of the tuition, fees, and other related payments for in-person educational services, access to facilities, and/or related opportunities for which they paid that Yale did not provide.

10.     Yale charges far less in tuition for online courses.

11.     Yale's deeply discounted online course tuition reflects the inability of online classes to replicate the full academic opportunities and experiences of in-person instruction.

Remote learning options cannot replace the comprehensive educational experience promised by Yale. Access to facilities, materials, laboratories, faculty, student collaboration, and the opportunity for on-campus living, school events, dialogue, feedback and critique are essential to the educational experience.

12.     Plaintiff and the putative Class contracted and paid for an education, not course credits. They paid for the robust education and full experience of academic life on Yale's campus; remote online learning cannot provide the same value as in-person education.

13.     As a result, Yale has financially damaged Plaintiff and the putative Class members. Plaintiff brings this suit because Plaintiff and the Class members did not receive the full value of the services for which they paid. They lost the benefit of their bargain and/or suffered out-of-pocket loss. They are entitled to recover compensatory damages, trebling where permitted, and attorneys' fees and costs.

14.     Plaintiff seeks, for himself and the putative Class members, a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of online classes and the amount of time in the Spring 2020 and following semesters when Yale ceased in-person classes, campus services and access to campus facilities, continuing through to such time as Yale reinstates in-person classes.

## II.  JURISDICTION AND VENUE

15.     The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

**16.**     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Yale is headquartered in this district.

**17.**     The Court has personal jurisdiction over Yale because Yale is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because Yale conducts substantial business in this district.

### III.     PARTIES

**18.**     Plaintiff Jonathan Michel is a citizen and resident of the State of Ohio. Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at Yale, and is enrolled as a full-time student for the Fall 2020 academic semester at Yale.

**19.**     Defendant Yale University is a private Ivy League educational institution that offers programs at fourteen constituent schools. Defendant had a total enrollment of approximately 13,609 students at the start of the Fall 2019 semester. As of June 2020, Defendant reportedly had an endowment of $31.2 billion.

**20.**     Defendant was eligible to receive federal stimulus funding under the CARES Act, which provides for approximately $14 billion for colleges and universities based on enrollment numbers in order to mitigate the financial impact of the COVID-19 crisis on both institutions and students. On or about April 22, 2020, Defendant announced it would not apply for CARES Act funding.

## IV.   FACTUAL ALLEGATIONS

**A.   Contract Terms**

**21.**   Plaintiff and Class members entered into an express or implied contract with Yale whereby, in exchange for the payment of tuition, fees and other related costs, Yale would provide an agreed-upon number of classes through in-person instruction (as it had historically provided) and access to physical resources and school facilities such as libraries, laboratories, and classrooms.[1]

**22.**   For each class taken, Yale promised to provide the education specified in the course catalog and course syllabus, including the time and physical location of the in-person instruction. An example of such a promise is below:[2]

---

[1]   Tuition rates can be found at
https://oir.yale.edu/sites/default/files/w082_tuits_u_ay1920.pdf (last viewed 9/22/2020).

[2]   Yale University Course Search, Anthropology 040, *available at*
https://courses.yale.edu/?srcdb=202001&subject=ANTH (last viewed 10/13/2020).



23.     Yale prohibits changes in course formats unless they are pre-reviewed by the Course of Study Committee. As Yale promises:[3]

> An existing course that undergoes a significant change must be reviewed by the Course of Study Committee. All other course changes are reviewed by the University Registrar's Office before they are published in Yale Course Search. All changes are submitted using the same CIM form used to submit new course proposals.
>
> The Course of Study Committee must review an existing course if:
>
> The course format changes. For example, a course that was originally approved by the CSC with a lecture format (with a standard lecture time pattern and required work appropriate for a lecture course) that is changing to

---

[3]     Proposals for New Courses and for Changes in Existing Courses, Handbook for Instructors of Undergraduates in Yale College 2020-2021, *available at* http://catalog.yale.edu/handbook-instructors-undergraduates-yale-college/courses/proposals-new-changes-existing/ (last viewed 9/22/2020). *See also* Proposals for New Courses and for Changes in Existing Courses, Handbook for Instructors of Undergraduates in Yale College 2019-2020, *available at* http://web.archive.org/web/20191221132940/http://catalog.yale.edu/handbook-instructors-undergraduates-yale-college/courses/proposals-new-changes-existing/.

a seminar course (with limited enrollment, a standard seminar meeting time, and a different pattern of work expected of the students) must be resubmitted to the committee. Conversely, a seminar becoming a lecture course must also be resubmitted.

24.    Yale also promised its students an in-person instruction. As Yale's Faculty Handbook states:

- "Faculty members are expected to remain on campus and to teach during all semesters when not on an approved leave."[4]

- "Members of the teaching or research faculty are expected to meet their professional and institutional commitments at Yale on a regular basis throughout the academic year. For full-time teaching faculty this includes being on campus most days of the work week, except for holidays and recess time, in order to be available to advise students …"[5]

- "All teaching faculty must remain on campus during reading and examination periods."[6]

25.    Besides the in-class instruction, Yale also promises a singular experience for undergraduates through its residential housing system or "colleges."[7]

- "The Residential College housing system is at the heart of the Yale experience."

- "Before arriving on campus, each first-year student is randomly assigned to one of fourteen residential colleges, giving Yalies a built-in community from the moment they arrive."

- "Each close-knit community, housed in stunning buildings centered on a green courtyard, serves as a microcosm of Yale's diverse student

---

[4]    Yale University Faculty Handbook at 128, *available at* https://provost.yale.edu/sites/default/files/files/Faculty%20Handbook_8-22-19.pdf (last viewed 9/22/2020).

[5]    *Id.* at 160.

[6]    *Id.*

[7]    Yale Residential Colleges, *available at* https://admissions.yale.edu/residential-colleges?_ga=2.122352719.515148827.1599573288-535388142.1599573287 (last viewed 10/13/2020).

population, while preserving the intimacy of a smaller college experience."

- "Now more than 75 years old, Yale's residential college system is perhaps the most distinctive feature of undergraduate life at Yale. It provides a built-in, tight-knit family for students from the moment they arrive, blending diversity, camaraderie, and pride for one's residential community."

- "Far more than just dormitories, Yale's residential colleges serve as a home away from home for students. Each college has its own library, gym, dining hall, and activity spaces – from movie theatres and recording studios to basketball courts and printing presses – all housed in distinctive, stunning buildings that center around grassy courtyards."

- "The colleges provide an exceptional opportunity to meet and learn from students with different interests – people students might not otherwise encounter in their courses or extracurricular activities. Many students form their closest and most enduring friendships through their college, though students can choose to engage in residential college life as much as they like."

- "The colleges also bring together faculty and students to form an integrated support system. Each college hosts guest speakers, fellowships, and cultural events. With programs of formal advising, seminars, and activities that encourage students' extracurricular interests, the colleges create a dynamic bridge between academic and social life."

26.     In the event of a pandemic, Yale contractually promised to provide students a refund if warranted by the circumstances, a promise which must be performed and interpreted in good faith. For example,[8] as Yale promised:

> Temporary Suspension of University Operations. In the unlikely event that public health or other significant safety or security concerns cause the University temporarily to suspend University programs and operations, the University will make arrangements for appropriate refunds, consistent with the principles enunciated in these Regulations, as may in its judgment be warranted in light of all the circumstances of the suspension and consistent with applicable law and regulations. The decision to suspend programs shall be made at the discretion and judgment of the University.

---

[8]     Yale College Undergraduate Regulations 2019-2020, ¶ 14, *available at* http://web.archive.org/web/20200312104256/http://catalog.yale.edu:80/undergraduate-regulations/regulations/financial-services/ (webpage as of March 12, 2020).

**27.**     Plaintiff accepted Yale's offer.

**28.**     Plaintiff paid Yale the amounts it requested for tuition and fees.

**29.**     Plaintiff substantially performed his contractual obligations.  Yale did not.

**B.     Closure of Campus and Suspension of In-Person Education**

**30.**     On March 10, 2020, while students were on spring recess, Yale announced it was moving classes online until at least April 5, 2020 and asked students away on spring break not to return to campus.  Yale subsequently moved all or substantially all classes online for the Spring 2020 semester and effectively closed the campus to students for the remainder of the semester.

**31.**     Though all in-person instruction effectively ended on March 10, 2020, some classes were taught in an online format beginning soon afterward. Even students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences), Yale provided either no instruction or only remote, online instruction.

**32.**     As a result of the closure of Yale's campuses and facilities, Yale has failed to deliver the educational services, facilities, access and/or opportunities for which Plaintiff and the putative Class contracted and paid, either directly or through a third-party on their behalf.

**33.**     On July 1, 2020, Yale announced that substantially all of its Fall 2020 classes would be taught online, and that on-campus life would be drastically reduced with the vast majority of faculty and staff continuing to work remotely into the foreseeable future.

**34.**     With Fall 2020 classes beginning August 31, 2020, Yale's July announcement did not give students the time needed to make alternative arrangements (such as applying to another program).

**35.**     Though Plaintiff and members of the Class paid Yale tuition in exchange for a full semester of in-person education, Yale ceased to provide the in-person education it promised, and

thus has failed to uphold its side of the agreement. Nonetheless, Yale insists that students uphold their side of the agreement, and refuses to refund tuition and related expenses.

36.     In so doing, Yale is attempting to replace the irreplaceable – on-campus life at an elite university – with "virtual learning" via online classes, and is attempting to pass off this substitute educational experience as the same as or just as good as full participation in the university's academic life.

37.     Plaintiff and members of the Class paid Yale tuition in reliance on its promise of teaching a certain number of courses in an in-person course format and with in-person facility access. Plaintiff did not choose to attend and/or pay tuition for an online institution of higher learning, but instead chose to attend Yale's institution and enroll on an in-person basis.

**B.     Inferiority of Online Educational Experience**

38.     At least one academic study found that "[o]nline courses do less to promote academic success than do in person courses." The study found that:

   a)     Taking a course online reduced student achievement in that course by .44 points on the traditional four-point grading scale, a full one-third of a standard deviation;

   b)     Specifically, students taking the in-person course earned roughly a B- (2.8 GPA) versus a C (2.4 GPA) for students taking an online version of the same course;

   c)     Taking a course online also reduces future grades by 0.42 points for courses taken in the same subject area in the following semester;

   d)     Taking an online course reduced the probability of the student remaining enrolled in the university a year later by over ten percentage points.

Eric P. Bettinger *et al., Virtual Classrooms: How Online College Courses Affect Student Success*, AMERICAN ECONOMIC REVIEW, Vol. 107, No. 9, p. 2857.

39.     Yale's move to online-only classes deprived students of the opportunity to benefit from a wide variety of academic and student events, on-campus entertainment, facilities, and athletic programs, which provided considerable value to Plaintiff and the Class members.

40.     The significance of in-person learning and interaction with faculty as the lifeblood of the campus and university experience is evident in the emphasis it is given in the Yale Faculty Handbook, discussed above.

41.     Yale further emphasizes the importance of in-person education through other school policies. For example, Yale permits students to transfer credits from other institutions, so long as the courses were not for online courses.[9]

42.     The online learning options Yale provided following its March 2020 COVID-19 announcement, though consistent with safety measures, cannot provide the academic and collegiate experience Yale itself extolls as its signatures.

**C.     Lower Tuition for Online Education**

43.     In-person education is worth more than online education.

44.     Accordingly, the tuition and fees for in-person instruction at Yale are higher than tuition and fees for online classes at Yale and other online institutions. Tuition and fees for in-person instruction cover not just the academic instruction, but the full academic experience which includes but is not limited to:

   a)     Face to face interaction with professors, mentors, and peers;

---

[9]     Yale College Programs of Study 2020-2021, Credit from Other Universities, *available at* http://catalog.yale.edu/ycps/academic-regulations/credit-from-other-universities/ (last viewed 9/22/2020).

b)  Access to facilities such as libraries, laboratories, computer labs, and study rooms;

c)  Student governance and student unions;

d)  Extra-curricular activities, groups, intramural sports, etc.;

e)  Student art, cultures, and other activities;

f)  Social development and independence;

g)  Hands-on learning and experimentation; and

h)  Networking and mentorship opportunities.

45. The fact that Yale students paid a higher price for an in-person education than they would have paid for an online education is illustrated by the vast price difference Yale charges for its in-person, on-campus programs versus its online learning programs.

46. For example, for its in-person, on-campus Women's Leadership program through the School of Management, Yale charged students $7,000. Yale charged only $4,950 for the live, online version of the same program, and only $2,800 for the non-live, online version of the same program.

47. As another example, Yale offers Introduction to Psychology to its undergraduate students,[10] for approximately $5,550-$6,937.[11]

---

[10] Yale Course Catalog, Spring 2020 Semester for Psychology 101, *available at* https://courses.yale.edu/?srcdb=202001&subject=PSYC (last viewed 10/13/2020).

[11] Yale charged undergraduate students $27,750 for tuition in the Spring 2020 semester. "A student in Yale College normally takes four or five term courses, or their equivalent, for each of eight terms." Yale College Programs of Study, *available at* http://catalog.yale.edu/ycps/academic-regulations/course-credits-course-loads/ (last viewed 10/13/2020).



48.    Yale also offers the same course, Introduction to Psychology, taught by the same professor, online for free.[12]

---

[12]    Yale, Introduction to Psychology, *available at* https://www.coursera.org/learn/introduction-psychology (last viewed 10/13/2020).



## D.    Damages

49.     Through this lawsuit Plaintiff seeks, for himself and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for the diminished value of online learning, as well as for each subsequent semester, continuing until Yale resumes in-person classes. Plaintiff seeks return of these amounts on behalf of himself and the Class as defined below.

50.     Plaintiff also seeks damages relating to Yale's passing off an online, "virtual" college experience as similar in kind to full immersion in the academic life of a college campus.

## V.    **CLASS ACTION ALLEGATIONS**

**51.**    Plaintiff seeks to represent a Class defined as:

> Any person who paid or caused to be paid tuition and/or fees to attend
> Yale University when classes and/or coursework were limited in whole or
> in part to online attendance as a result of or in connection with COVID-19
> (the "Class").

Specifically excluded from the Class are Yale, Yale's officers, directors, trustees and agents, the

judge assigned to this action, and any member of the judge's immediate family.

**52.**    Subject to additional information obtained through further investigation and

discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or

amended complaint.

**53.    Numerosity.** The members of the Class are geographically dispersed throughout

the United States and are so numerous that individual joinder is impracticable. Upon information

and belief, Plaintiff reasonably estimates that there are thousands of members in the Class.

Although the precise number of Class members is unknown to Plaintiff at this time, the true

number of Class members is known by Defendant and may be determined through discovery.

Class members may be notified of the pendency of this action by mail and/or publication through

the distribution records of Defendant and third-party retailers and vendors.

**54.    Existence and predominance of common questions of law and fact.** Common

questions of law and fact exist as to all members of the Class and predominate over any questions

affecting only individual Class members. These common legal and factual questions include, but

are not limited to, the following:

a)    whether Yale accepted money from Class members in exchange for the
promise to provide services;

b)    whether Yale provided the services for which Class members contracted;

    c)       whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Yale did not provide;

    d)       whether Yale is liable to Plaintiff and the Class for unjust enrichment.

55.    **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

56.    **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

57.    **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

58.     In the alternative, the Class may also be certified because:

    a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant; and/or

    b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    c)    Yale has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## <u>COUNT I</u>
### Breach of Contract

59.     Plaintiff restates, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

60.     Plaintiff brings this claim individually and on behalf of the members of the Class against Yale.

61.     Through its student and faculty policies, course catalog, course schedule, admission agreement and payment of tuition and fees, Plaintiff and each member of the Class entered into a binding contract with Yale.

62.     As part of the contract, and in exchange for the aforementioned consideration, Yale promised to provide in-person education services, including in-person instruction and

access to on-campus resources, for the full duration of the Spring 2020 semester, and continuing into the 2020-2021 academic year.

63.    Plaintiff and Class members fulfilled their end of the bargain when they paid monies due for tuition, fees and related expenses.

64.    Yale has failed to provide the contracted-for services and has otherwise not performed under the contract as set forth above. Yale has retained monies paid by Plaintiff and the Class and refuses to issue tuition adjustments or any other type of refund or reimbursement.

65.    Plaintiff and members of the Class have suffered damage as a direct and proximate result of Yale's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

66.    As a direct and proximate result of Yale's breach, Plaintiff and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Yale for services that Yale has failed to deliver.

## COUNT II
### Unjust Enrichment

67.    Plaintiff restates, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

68.    Plaintiff brings this claim individually and on behalf of the members of the Class against Yale, and in the alternative to Count I.

69.    Plaintiff and members of the Class conferred a benefit on Yale in the form of monies paid for tuition, fees and related expenses in exchange for certain service and promises. This tuition was intended to cover in-person educational services for the academic semester.

70.    Yale benefited, voluntarily accepting and retaining the monies Plaintiff and

members of the Class paid.

71.     Plaintiff and members of the Class did not pay for course credits. Plaintiff and members of the Class paid for the services Yale promised, which they did not receive.

72.     Yale unfairly and inequitably retained the tuition and fees paid by Plaintiff and the members of the Class, and failed to provide the services for which the tuition and fees were collected.

73.     The online education services Yale substituted for the in-person education for which Plaintiff and Class members paid has a substantially lesser value, but Yale has nonetheless retained full payment.

74.     Yale customarily offers online courses for free.

75.     It would be unjust and inequitable for Yale to retain benefits in excess of the services it provided, and Yale should be required to disgorge any tuition, fees and related expenses that exceed the value of online education.

**COUNT III**
**Connecticut Unfair Trade Practices Act ("CUTPA")**
**Conn. Gen. Stat. Ann. § 42-110a *et seq.***

76.     Plaintiff restates, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

77.     Plaintiff brings this claim individually and on behalf of the members of the Class against Yale.

78.     Yale is a person in the conduct of trade and commerce as defined by Conn. Gen. Stat. Ann. § 42-110a, as it is an entity that sells services.

79.     Yale violated Conn. Gen. Stat. Ann. § 42-110b by falsely representing and passing off to Plaintiff and Class members that online education has the same value as in-person

education.

**80.**     Yale intended that Plaintiff and Class members rely on its misrepresentation as to the quality of its online classes as a substitute for in-person education.

**81.**     Yale's representations as to the quality and value of its online classes as compared to in-person education had the tendency to mislead.

**82.**     Plaintiff and Class members are, accordingly, entitled to actual damages, costs, and attorney's fees.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.     For actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

D.     For prejudgment interest on all amounts awarded;

E.     For an order of restitution and all other forms of equitable monetary relief, including disgorgement;

F.     For injunctive and declaratory relief as pleaded or as the Court may deem proper; and

G.     For an order awarding Plaintiff and the Class reasonable attorneys' fees and

expenses and costs of suit; and

H.     All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: October 16, 2020                    Respectfully submitted,

                                           JONATHAN MICHEL, *on behalf of himself and all others similarly situated.*

                            By:     */s/James A. Francis*
                                           James A. Francis (*pro hac vice*)
                                           John Soumilas (*pro hac vice*)
                                           David A. Searles  (*pro hac vice*)
                                           Edward H. Skipton (*pro hac vice*)
                                           **FRANCIS MAILMAN SOUMILAS, P.C.**
                                           1600 Market Street, Suite 2510
                                           Philadelphia, PA 19103
                                           T: (215) 735-8600
                                           F: (215) 940-8000
                                           jfrancis@consumerlawfirm.com
                                           jsoumilas@consumerlawfirm.com
                                           dsearles@consumerlawfirm.com
                                           eskipton@consumerlawfirm.com

                                           Yvette Golan (*pro hac vice*)
                                           **THE GOLAN FIRM**
                                           2000 M Street, NW, Suite #750-A
                                           Washington, D.C. 20036
                                           T: (866) 298-4150
                                           F: (928) 441-8250
                                           ygolan@tgfirm.com

                                           *Attorneys for Plaintiff*