IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JONATHAN MICHEL, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>YALE UNIVERSITY,<br><br>       Defendant. | Case No. 3:20-cv-01080-JCH |

**PLAINTIFF'S OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................................................ii

INTRODUCTION.............................................................................................................. 1

SUMMARY OF ALLEGED FACTS....................................................................................1

LEGAL STANDARD.........................................................................................................2

ARGUMENT.....................................................................................................................3

I. Plaintiff's Claims Challenge Yale's Billing Decisions, Not its Academic Decisions.................3

    A. Plaintiff does not challenge Yale's decision to move classes online..............................3

    B. Plaintiff's claims are specifically permitted by *Gupta*.....................................................7

II. Plaintiff Alleged Yale Breached Their Contract........................................................... 12

III. Plaintiff Adequately Pleads an Unjust Enrichment Claim..........................................12

IV. Plaintiff Adequately Pleads a CUTPA Claim.............................................................15

    A. Educational services are within "trade or commerce" under CUTPA........................15

    B. Plaintiff alleged a material and deceptive representation............................................17

V. Yale's Challenge to Plaintiff's Class Definition Fails................................................. 18

    A. Challenges to Plaintiff's class definition should be addressed at the
        certification stage, not the pleading stage.............................................................. 18

    B. Plaintiff alleges contractual promises made to graduate students...............................19

    C. Fall 2020 and Beyond............................................................................................. 21

CONCLUSION.................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson News, L.L.C. v. American Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012)................................................................23, 24

*Banerjee v. Roberts*,
  641 F. Supp. 1093 (D. Conn. 1986)....................................................... 10

*Barneby v. New England Sch. of Montessori, LLC*,
  2016 WL 3768928 (Conn. Super. Ct. June 9, 2016)..............................4, 5

*Bokanoski v. Lepage Bakeries Park St., LLC*,
  2016 WL 11547577 (D. Conn. Jun. 29, 2016).........................................13

*Boland v. Catalano*,
  202 Conn. 333 (1987)............................................................................. 11

*Brodsky v. Mead Sch. Sch. For Human Dev.*,
  1999 WL 391580 (Conn. Super. Ct. June 4, 1999).................................4

*CenCor, Inc. v. Tolman*,
  868 P.2d 396 (Colo.1994)....................................................................... 8

*Craine v. Trinity Coll.*,
  259 Conn. 625 (2002)............................................................................. 4

*Cross v. University of Toledo*,
  2020 WL 4726814 (2020) (Ohio Ct. Cl. Jul, 8, 2020).................7, 11, 14

*Cullen v. Univ. of Bridgeport*,
  2003 WL 23112678 (Conn. Super. Ct. Dec. 10, 2003)........................... 3

*DeLeo v. Equale & Cirone, LLP*,
  180 Conn. App. 744 (Conn. App. 2018)..............................................22, 23

*Doe v. Julia Day Nursery, Inc.*,
  1998 WL 813474 (Conn. Super. Ct. Nov. 16, 1998)............................. 16

*Doe v. Quinnipiac Univ.*,
  404 F. Supp. 3d 643 (D. Conn. 2019).................................................... 8

*Erickson v. Pardus*,
  551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)......................2, 21

*Faigel v. Fairfield Univ.*,
   75 Conn. App. 37 (2003).............................................................................4

*Family Wireless #1, LLC v. Automotive Technologies, Inc.*,
   2016 WL 183475 (D. Conn., Jan. 12, 2016).........................................13

*Fletcher v. Mead Sch. for Human Dev.*,
   1999 WL 391583 (Conn. Super. Ct. June 4, 1999)................................4

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019)....................................................................21

*Franco v. Mediplex Constr., Inc.*,
   1999 WL 185179 (Conn. Super. Ct. Mar. 22, 1999)..............................16

*Fulton v. Goord*,
   591 F.3d 37 (2d Cir. 2009)....................................................................19

*Garland v. Western Michigan Univ.*,
   2020 Mich. Ct. Cl. LEXIS 7 (Mich. Ct. Cl. Sept. 15, 2020).............7, 15

*Garland v. Western Michigan Univ.*,
   1:20-cv-03208-JMF (Mich. Ct. Cl. Oct. 16, 2020)................................11

*Gupta v. New Britain General Hospital*,
   239 Conn. 574 (1996)...........................................................3, 5, 7, 8, 15

*Haynes v. Yale-New Haven Hospital*
   243 Conn. 17 (1997)...................................................................15, 16, 17

*Hendricks v. JPMorgan Chase Bank, N.A.*,
   2008 WL 5191819 (D. Conn. Nov. 21, 2008)..................................18, 19

*Hull v. Yale Univ. Inc.*,
   2003 WL 21299710 (Conn. Super. Ct. May 21, 2003)...........................4

*Ikuno v. Yip*,
   912 F.2d 306 (9th Cir.1990)..................................................................16

*Ironshore Indem., Inc. v. Corle Bldg. Sys., Inc.*,
   2013 WL 3866890 (D. Conn. July 24, 2013)........................................21

*Jaramillo v. Morris*,
   750 P.2d 1301 (Wash. App. Div. 3 1988)..............................................17

*Johnson v. Schmitz*,
   119 F. Supp. 2d 90 (D. Conn. 2000)...................................................4, 8

*Kloth-Zanard v. Amridge Univ.*,
    2012 WL 2397161 (D. Conn. June 25, 2012)...........................................................................4

*Lass v. Bank of America*,
    695 F.3d 129 (1st Cir. 2012)....................................................................................12

*In re Lexi Dev. Co., Inc.*,
    453 B.R. 440 (Bankr. S.D. Fla. 2011)......................................................................23

*Little v. Yale Univ.*,
    92 Conn. App. 232 (2005)..........................................................................................4

*Livolsi v. City of New Castle, Pa.*,
    501 F. Supp. 1146 (W.D. Pa. 1980)........................................................................23

*Madej v. Yale Univ.*,
    2020 WL 1614230 (D. Conn. Mar. 31, 2020)...........................................................4

*McDermott v. Ohio State Univ.*,
    2020 Ohio Misc. LEXIS 127 (Ohio Ct. Cl. Aug. 24, 2020).........................7, 11, 13

*McNeil v. Yale Univ.*,
    436 F. Supp. 3d 489 (D. Conn. 2020).........................................................................4

*Mellowitz v. Ball State University*,
    2020 WL 5524659 (Ind. Super. Ct., Marion Cty. Aug. 14, 2020)............................7

*Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*,
    311 Conn. 282 (2014).............................................................................................. 12

*Milanov v. Univ. of Michigan*,
    2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. Jul. 27, 2020).........................7, 11, 15

*Mirkin v. XOOM Energy, LLC*,
    931 F.3d 173 (2d Cir. 2019).................................................................................2, 19

*Moss v. Wayne State Univ.*,
    2009 WL 4344193 (Mich. Ct. App. Dec. 1, 2009)................................................. 15

*Munn v. Hotchkiss School*,
    326 Conn. 540 (2017)............................................................................................. 21

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*,
    102 F.3d 660 (2d Cir. 1996)....................................................................................12

*O'Toole v. Northrop Grumman Corp.*,
    499 F.3d 1218 (10th Cir. 2007)............................................................................. 21

*Optima Media Group Ltd. v. Bloomberg L.P.*,
    383 F. Supp. 3d 135 (S.D.N.Y. 2019)....................................................................23

*Osberg v. Yale Univ.*,
    2009 WL 659072 (Conn. Super. Ct. Feb. 11, 2009)........................................ 16, 17

*Paynter v. New York Univ.*,
    319 N.Y.S.2d 893 (App. Term 1971).................................................................. 4, 6

*Pollock v. Panjabi*,
    47 Conn. Supp. 179 (Conn. Super. 2000)......................................................... 16, 17

*Roe v. Loyola Univ. New Orleans*,
    2007 WL 4219174 (E.D. La. Nov. 26, 2007)........................................................ 6

*Rosado v. Barry Univ. Inc.*,
    2020 WL 6438684 (S.D. Fla. Oct. 30, 2020)..............................................*passim*

*Ross v. Creighton Univ.*,
    957 F.2d 410 (7th Cir.1992)............................................................................. 7, 8

*Salerno v. Fla. S. Coll.*,
    --- F. Supp. 3d ---, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020)....................7, 9, 10, 11, 14

*Smith v. Ohio State Univ.*,
    2020 WL 5694224 (Ohio Ct. Cl. Sept. 9, 2020)........................................... 7, 11, 13

*T.D. Bank, N.A. v. Nutmeg Investments, LLC*,
    2010 WL 4277552 (Conn. Super. Sept. 29, 2010)...............................................23

*Tankoos v. Mead Sch. for Human Dev.*,
    1999 WL 391350 (Conn. Super. Ct. June 4, 1999)................................................4

*Waitt v. Kent State Univ.*,
    2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020)............................................ 7, 11

*Wightwood Sch. v. Fritz*,
    1999 WL 240727 (Conn. Super. Ct. Apr. 9, 1999)...............................................4

*Worth Const. Co., Inc. v. Dept. of Pub. Works*,
    139 Conn. App. 65 (2012)...........................................................................22-23

*Zahn v. Ohio University*,
    Case No. 2020-00371JD (Ohio Ct. Cl., Oct. 19, 2020)................................. 7, 11, 15

*Zumbrun v. Univ. of S. Cal.*,
    25 Cal. App. 3d 1 (1972)...................................................................................8

## STATUTES & FEDERAL RULES

Conn. Gen. Stat. § 42-110a ................................................................................. 15

Fed. R. Civ. P. 8 .............................................................................................. 21

Fed. R. Civ. P. 12 ........................................................................................ 1, 12

Fed. R. Civ. P. 23 ............................................................................................ 18

## OTHER AUTHORITIES

Restatement (Second) of Contracts (1981) ..................................................... 11, 22

## INTRODUCTION

This case does not question the rationale or justification behind Yale's decision to move classes online in light of the COVID-19 pandemic. The Amended Complaint makes this clear: "Plaintiff does not dispute that Yale's decision to cease in-person instruction was warranted" by the COVID-19 pandemic. Plaintiff's Amended Complaint, ECF 37, at ¶ 3.

This case is instead about Yale's billing decisions, and whether the amounts it charged students was fair and lawful given its move to online classes. It is about whether Yale can reap the full financial benefits of an agreement for only partial performance. "Plaintiff asks merely to be refunded the money he spent for services that were not provided." Am. Compl. at ¶ 3. By charging and keeping money for services no longer offered, Plaintiff alleges Yale breached its contracts, was unjustly enriched, and violated Connecticut's consumer protection law.

Rather than confront Plaintiff's actual allegations, Yale ignores them and attempts to contort them into something they are not. Yale then claims the facts are other than what Plaintiff alleges. Rule 12 forecloses Yale's approach to look beyond the actual pleadings.

As many other courts considering similar claims against universities have held, claims such as Plaintiff's are cognizable and should be heard.

## SUMMARY OF ALLEGED FACTS

College is often one of the largest and most life-altering investments a person makes, requiring years of hard work, planning, and saving. Plaintiff Jonathan Michel spent years of his life preparing for Yale University, one of the most prestigious schools in the country. Am. Compl. at ¶ 1. Although he could have paid far less for an online program, he paid top-dollar for education on Yale's famed campus. *Id*. at ¶¶ 4, 18.

Like other students, Plaintiff selected Yale courses from a catalog, which described the courses and provided the day, time, and location of in-person lectures. Am. Compl. at ¶ 22.

Changes to course formats are prohibited unless reviewed first by the Course of Study Committee. *Id.* at ¶ 23. His faculty were to teach on campus, *id.* at ¶ 24, and his educational experience was inextricably tied to the in-person nature of Yale's educational system. *See id.* at ¶¶ 5, 11-12, 24-25, 32, 36-37, 39-41, 44.

Recognizing that a pandemic would greatly impact its students, Yale promised that appropriate refunds would be issued if public health concerns led Yale to suspend its operations or programs. Am. Compl. at ¶ 26.

Halfway through the Spring 2020 semester, Yale canceled all in-person classes due to the COVID-19 pandemic. Am. Compl. at ¶ 6. In July 2020, Yale informed its students that the Fall 2020 semester would also be online. *Id.* at ¶ 33. By then, students had already relied on Yale's promises of in-person education, and lacked the time to make alternate plans. *Id.* at ¶ 34.

Though Yale changed its side of the contract, altering what services it would provide students, Yale continues to demand students pay under the original deal. Am. Compl. at ¶¶ 7, 35, 64. Plaintiff, a Yale student, sues Yale for its refusal to make appropriate reductions to tuition, as it promised. *Id.* at ¶¶ 14, 49.

## **LEGAL STANDARD**

In ruling on a motion to dismiss, a court is to "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor." *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173, 176 (2d Cir. 2019). The motion must be denied if the plaintiff alleges "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (alteration in original).

<u>**ARGUMENT**</u>

I.    **Plaintiff's Claims Challenge Yale's Billing Decisions, Not its Academic Decisions**

    A.    **Plaintiff does not challenge Yale's decision to move classes online.**

Yale spends the first thirteen pages of its brief arguing that Plaintiff cannot challenge its decision to move classes online, claiming that Connecticut bars claims for "educational malpractice." Def. Mtn. to Dismiss at 8-21, ECF 41 ("Br.").[1]    Yale's opening argument is a classic straw man fallacy.

Plaintiff does not challenge Yale's decision to move classes online. Indeed, Yale's transfer to online courses was likely warranted. Am. Compl. at ¶¶ 3, 42. *See also* Br. at 21. And Plaintiff agrees – "Yale made academic judgments about how best to educate its students during the pandemic . . . . *Gupta* precludes second-guessing those decisions." Br. at 13.

Plaintiff instead challenges Yale's decision to charge full tuition. "Plaintiff asks merely to be refunded the money he spent for services that were not provided." Am. Compl. at ¶ 3. Here, unlike in *Gupta* and its progeny, Plaintiff does not challenge Yale's academic decisions. He instead challenges its billing decisions, or whether the amounts it charged students was contractually appropriate or lawful.

In all the cases Yale cites, *see* Br. at 9-12, the plaintiffs claimed that the school should have provided better courses or assistance,[2] should have awarded course credits for foreign

---

[1]    Throughout its brief, Yale misreads Plaintiff's case as challenging its decision to move classes online. *See, e.g.,* Br. at 13 ("Yale made academic judgments about how best to educate its students . . . . *Gupta* precludes second-guessing those decisions"); *id.* at 20 ("Plaintiff has not – and could not – allege that Yale's transition to online learning was a 'fundamental failure...'"); *id.* at 21 (arguing Plaintiff has not alleged that Yale acted in bad faith in moving classes online). *See also id.* at 14 (arguing Plaintiff has not alleged a promise that Yale would provide in-person classes regardless of the health risks).

[2]    *Gupta v. New Britain General Hospital*, 239 Conn. 574, 589-90 (1996) (affirming summary judgment to school in student's suit alleging the school failed to provide appropriate training and wrongfully discharged him); *Cullen v. Univ. of Bridgeport*, No. CV020396010, 2003 WL 23112678, at *3 (Conn. Super. Ct. Dec. 10, 2003) (granting school summary judgment where "[t]he plaintiff merely alleges in his complaint, and reiterates

classes,[3] should not have canceled classes,[4] should have given them tenure,[5] or should have permitted them to continue their enrollment.[6] Plaintiff makes no such claims here.

Nor does Plaintiff impermissibly label a malpractice claim as a breach of contract claim. Take, for example, Yale's promise to issue refunds as appropriate if a public health concern causes it to suspend operations. Am. Compl. at ¶ 26 (quoting policy). Contrary to Yale's misstatement of his suit, *see* Br. at 21, Plaintiff does not claim that Yale acted in bad faith in moving classes online, and thus he should be given a refund. Instead, Plaintiff claims that Yale's decision to not provide some discount or refund was in bad faith. Am. Compl. at ¶¶ 26, 29, 35,

---

in his deposition, that he was unhappy with the quality of the courses, clinical experience, and professors"); *Kloth-Zanard v. Amridge Univ.*, No. 3:09CV606 JBA, 2012 WL 2397161, at *2 (D. Conn. June 25, 2012) (granting school summary judgment in suit claiming inadequate assistance in clinical placement opportunities); *Tankoos v. Mead Sch. for Human Dev.*, No. X05CV 950145853S, 1999 WL 391350, at *1 (Conn. Super. Ct. June 4, 1999) (dismissing unjust enrichment claim in suit alleging school provided inadequate support for student's learning disability and taught objectionable courses); *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 503 (D. Conn. 2020) (dismissing suit alleging Yale failed to sufficiently promote gender equality and eliminate sexual misconduct); *Hull v. Yale Univ. Inc.*, No. CV990586316S, 2003 WL 21299710, at *2 (Conn. Super. Ct. May 21, 2003) (granting summary judgment to school in suit alleging "interruptions in supervision and advisorship hindered [student's] performance and prevented her from successfully completing her research"); *Barneby v. New England Sch. of Montessori, LLC*, No. AANCV156019330S, 2016 WL 3768928, at *3 (Conn. Super. Ct. June 9, 2016) (dismissing claim that school failed to provide "quality educational opportunities" and was a "glorified daycare"); *Fletcher v. Mead Sch. for Human Dev.*, No. X05CV 960152138S, 1999 WL 391583, at *2 (Conn. Super. Ct. June 4, 1999) (dismissing suit alleging school failed to adequately teach math and reading); *Wightwood Sch. v. Fritz,* No. 410060, 1999 WL 240727, at *2 (Conn. Super. Ct. Apr. 9, 1999) (denying motion to reconsider dismissal of suit alleging school was "deliberately *incompetent* or were *so negligent and carelessly administered* that they utterly failed to educate") (quoting allegations, emphasis in original); *Johnson v. Schmitz*, 119 F. Supp. 2d 90, 104-105 (D. Conn. 2000) (dismissing claim alleging Yale withheld research grants and laboratory access, and inadequately investigated student's accusation that professors misappropriated his dissertation).

[3]     *Faigel v. Fairfield Univ.*, 75 Conn. App. 37, 41 (2003) (granting school summary judgment on student's claim that it should have given her credit for coursework completed in Russia).

[4]     *Paynter v. New York Univ.*, 319 N.Y.S.2d 893, 894 (App. Term 1971) (per curiam) ("the court erred . . . in concluding that the University was unjustified in suspending classes" due to anti-war protests).

[5]     *Craine v. Trinity Coll.*, 259 Conn. 625, 647 (2002) (affirming judgment notwithstanding verdict for school in discrimination suit arising from professor's denial of tenure).

[6]     *Madej v. Yale Univ.*, No. 3:20-CV-133 (JCH), 2020 WL 1614230, at *8 (D. Conn. Mar. 31, 2020) (declining to enjoin Yale from dismissing student for his failure to earn more than two credits in a term, but noting that to the extent student's action rests on Yale's failure to provide notice, "the principle that courts must defer to educational institution's academic judgment does not apply"); *Little v. Yale Univ.*, 92 Conn. App. 232 (2005) (affirming summary judgment for school in suit alleging Yale wrongfully dismissed student); *Brodsky v. Mead Sch. Sch. For Human Dev.*, No. DNX05CV970156788S, 1999 WL 391580, at *2 (Conn. Super. Ct. June 4, 1999) (dismissing suit challenging school's refusal to allow student to return following behavioral problems).

64.

One of the cases Yale cites is particularly instructive. In *Barneby*, the Connecticut court dismissed parents' claim that the school was a "glorified daycare," but refused to dismiss the parents' promissory estoppel claim that they relied on the school's promise of a refund. *Barneby v. New England Sch. of Montessori, LLC*, No. AANCV156019330S, 2016 WL 3768928, at *3 (Conn. Super. Ct. June 9, 2016). "This third count does not contest the educational services of the school. This count concerns the defendant's promise to refund the plaintiffs' payments and the plaintiffs' detrimental reliance on this promise. The court rejects the defendant's arguments that this claim is precluded by *Gupta* . . ." *Id.*

Plaintiff does claim that online classes have less value than online classes. Am. Compl. at ¶¶ 43-48. To answer Yale's question, Br. at 12, yes, a Zoom lecture on Jane Eyre is worth less than an in-person lecture on Jane Eyre. Am. Compl. at ¶¶ 43-48 (alleging lower tuition rates for online courses). Even Yale agrees. Before the pandemic, Yale charged $2,800 for the asynchronous online Women's Leadership program, and charged 2.5 times that—$7,000—for the in-person program. *Id.* at ¶ 46.

But Plaintiff does not claim that his online classes were inadequate. Here, Yale confuses educational *value* with educational *adequacy*. *See, e.g.,* Br. at 8 (concluding that, because "Plaintiff alleges that Yale switched to an inferior method of instruction," Plaintiff claims "inadequate educational services"). Though Yale charges far less for its online Women's Leadership program, its online course is not educationally inadequate. It simply does not command the in-person tuition rate. The same applies here. Plaintiff claims not that Yale's online courses are educationally inadequate, but that they are not what Plaintiff paid for. Am. Compl. at ¶ 37. *See also Rosado v. Barry Univ. Inc.*, No. 1:20-CV-21813-JEM, 2020 WL 6438684, at *4

(S.D. Fla. Oct. 30, 2020) (denying motion to dismiss COVID-19 tuition suit, providing analogy of "purchasing a Cadillac at full price and receiving an Oldsmobile").

As Yale misreads Plaintiff's complaint, Yale also misreads *Paynter* and *Roe*. Br. at 12. In *Paynter,* the plaintiff claimed that the school was unjustified for suspending classes for one day due to anti-war protests. *Paynter v. New York Univ.*, 319 N.Y.S.2d 893, 894 (App. Term 1971) (per curiam). The *Paynter* court rejected the claim for a refund not because it was impermissible, but because the suspension was for only one day. "The *insubstantial* change made in the schedule of classes does not permit a recovery of tuition." *Id.* (emphasis added). As to "the time spent in a classroom . . . the college may make *minor* changes in this regard." *Id.* (emphasis added).

And Yale just gets the facts wrong in *Roe*. When Hurricane Katrina left Loyola unable to provide classes during the fall semester, Loyola allowed students to attend another school for course credits. *Roe v. Loyola Univ. New Orleans*, No. CIV.A. 07-1828, 2007 WL 4219174, at *1 (E.D. La. Nov. 26, 2007). The plaintiff agreed to pay Loyola for SMU courses, so he had no claim for breach of contract entitling him to a free semester of law school. *Id.* at *2. And because he was getting higher-priced SMU courses for Loyola's *lower*[7] tuition cost, Loyola was not unjustly enriched. *Id.* at *3.

Here, unlike *Roe*, Yale seeks dismissal at the pleading stage, not summary judgment.[8] And here, unlike *Roe*, the educational substitute Yale provided students was *less* expensive, not more. Am. Compl. at ¶¶ 46-48.

Given that courts overwhelmingly hold COVID-19 tuition suits do not claim educational malpractice, Yale may wish Plaintiff brought a different claim, but "[a] trial court's role, however,

---

[7] Yale incorrectly asserts that Loyola's tuition was higher than SMU's. Br. at 12.

[8] Yale incorrectly asserts that *Roe* dismissed the claims. Br. at 12.

generally does not include recasting a party's pleadings." *Cross v. University of Toledo*, 2020 WL 4726814, at *3 (Ohio Ct. Cl. Jul. 8, 2020) (denying motion to dismiss, holding similar COVID-19 tuition claim does not allege educational malpractice); *Zahn v. Ohio University*, Case No. 2020-00371JD at 3 (Ohio Ct. Cl., Oct. 19, 2020) (same)**;** *Waitt v. Kent State Univ.,* 2020 WL 5894543, at *1 (Ohio Ct. Cl. Sept. 28, 2020) (same); *McDermott v. The Ohio State Univ.*, Case No. 2020-00286JD, 2020 Ohio Misc. LEXIS 127, at *5 (Ct. Cl. Ohio, Aug. 24, 2020) (same; "The mere mention of possible consequences to plaintiff's educational or professional future does not render plaintiff's well-pleaded unjust enrichment claim a claim for educational malpractice."); *Smith v. Ohio State Univ.*, 2020 WL 569422 127, at 4, at *3 (Ohio Ct. Cl. Sept. 9, 2020) (same); *Milanov v. Univ. of Michigan*, No. 20-000054-MK, 2020 Mich. Ct. Cl. LEXIS 1, at *8-9 (Mich. Ct. Cl. Jul. 27, 2020); *Salerno v. Fla. S. Coll.*, No. 8:20-CV-1494-30SPF, --- F. Supp. 3d ---, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020) (same, reasoning plaintiff's claim "is not about the College's decision to move to online learning. This case is simply about an alleged promise to provide in-person learning that was allegedly breached."); *Garland v. Western Michigan Univ.*, 2020 Mich. Ct. Cl. LEXIS 7 (Mich. Ct. Cl. Sept. 15, 2020) (same); *Mellowitz v. Ball State University*, No. 49D14-2005-PL-015026, 2020 WL 5524659, at *1 (Ind. Super. Ct., Marion Cty. Aug. 14, 2020) (same).

  **B. Plaintiff's claims are specifically permitted by *Gupta*.**

  *Gupta* explicitly allows claims against an educational institution for breach of a specific contractual promise, *Gupta*, 239 Conn. at 592-93 – precisely what Plaintiff has alleged here.

  "[T]he basic legal relation between a student and a private university or college is contractual in nature." *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir.1992) (reversing dismissal of student's breach of contract claim); *accord Johnson*, 119 F. Supp. 2d at 93 (applying Connecticut law, denying motion to dismiss student's breach of contract claim); *Zumbrun*

7

*v. Univ. of S. Cal.,* 25 Cal. App. 3d 1, 9 (1972) (collecting cases); *CenCor, Inc. v. Tolman*, 868 P.2d 396, 398 (Colo.1994). "The catalogues, bulletins, circulars, and regulations of the institution" available to the student "become a part of the contract." *Ross*, 957 F.2d at 416 (quoting *Zumbrun*, 25 Cal.App.3d at 10); *Johnson*, 119 F. Supp. 2d at 93; *CenCor, Inc.,* 868 P.2d at 398.

"[W]hether [the University]'s policies created an enforceable contract with Plaintiff must be determined by a factfinder." *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 671 (D. Conn. 2019) (applying Connecticut law, denying summary judgment to university on student's breach of contract claim arising from alleged procedural unfairness in disciplinary proceeding)

"Because a student bases his or her decision to attend a college or university, in significant part, on the documents received concerning core matters, such as faculty, curriculum, requirements, costs, facilities and special programs, application of contract principles based on these documents and other express or implied promises, consistent with the limitations expressed in *Gupta*[], appears sound." *Johnson*, 119 F. Supp. 2d at 93 (long-form citation omitted).

***Promise to Issue Appropriate Refunds in Event of Pandemic***.[9] Plaintiff alleges that Yale promised to provide students a refund if warranted by a pandemic, a promise which it must perform in good faith. Am. Compl. at ¶ 26. For example, Yale promised:

> In the unlikely event that public health … concerns cause the University temporarily to suspend University programs and operations, the University will make arrangements for appropriate refunds, consistent with the principles enunciated in these Regulations, as may in its judgment be warranted …

*Id.* at ¶ 26 (quoting Yale College Undergraduate Regulations 2019-2020). Yale breached that promise and refused to issue refunds. *Id.* at ¶¶ 29, 35, 64.

---

[9]     Yale also argues that it never promised to provide in-person, on-campus education in the event of a pandemic. Br. at p. 14. Of course not, and Plaintiff has not alleged otherwise.

Yale first argues that "it did not suspend operations," and so its duty to issue good faith refunds was not triggered. Br. at 15. Plaintiff alleged otherwise; it ceased in-person instruction and closed its campus. Am. Compl. at ¶¶ 6, 30-31. By denying appropriate refunds because of its provision of inferior substitute services, Yale has breached its promise. *Id.* at ¶¶ 7, 35, 64.

Yale then insists that it denied refunds in good faith, Br. at 16, improperly testing a factual theory in a motion to dismiss. In support, Yale argues that its move online was warranted by the pandemic. *Id.* Again, Plaintiff does not dispute this, Am. Compl. at ¶ 3, and Yale misses the point. Yale's promise recognizes that refunds may be appropriate even if a pandemic justifiably caused the school to temporarily cease its services. *Id.* at ¶ 26. Refusing to exercise its discretion because closure was justified is a breach of its promise to provide refunds as appropriate.

Yale then argues that its decision to not issue refunds was consistent with the Regulations, reasoning that the Regulations do not provide a refund if a student withdraws after midterm. Br. at 16. Yale in effect claims that it need not provide refunds under the above-quoted provision unless *another* provision of the Regulations would require it. This, too, is a breach of its promise to issue appropriate refunds, and presents a triable jury question.

***Course Catalog***. Plaintiff alleges that Yale promised to provide the in-person courses described in the course catalog, which specifies that courses are to be taught at a specific time in a specific place. Am. Compl. at ¶ 22 (providing example).

Courts in other COVID-19 college tuition suits have held that similar course catalogs state a contract, express or implied. *Salerno*, 2020 WL 5583522, at *2 (similar "course portal" identifying days, times, and location of courses); *Rosado*, 2020 WL 6438684, at *1 (similar).

Yale does not attempt to distinguish these cases. Yale does not even mention them. Instead, Yale continues to paint Plaintiff's allegations as something they are not. Yale asserts that it would be "absurd" to claim a breach of contract if the class moved from Room A68 to A67, or if it moved from 2:30 pm to 2:15 pm. Br. at 17. But Plaintiff does not claim Yale breached an immaterial promise of providing class in Room A68 at 2:30 pm. Plaintiff claims that Yale breached a material promise of providing in-person class at all. To this, Yale does not respond.

***Other Representations***. Yale's other representations further evince its promise to provide an in-person education. For example, Yale's Faculty Handbook states that faculty is "expected to remain on campus and to teach." Am. Compl. at ¶ 24 (quoting Faculty Handbook). Yale also prohibits changes in course formats unless they are pre-reviewed. *Id.* at ¶ 23. To this, Yale responds that these promises were not made to students. Br. at 18. But students are the intended beneficiaries. "[A] court that is asked to enforce an asserted 'contract' between a student and his university must examine the oral and written expressions of the parties in light of the policies and customs of the particular institution." *Banerjee v. Robert*s, 641 F. Supp. 1093, 1106 (D. Conn. 1986) (denying motion to dismiss).

And Yale's other representations, from admissions brochures to websites, emphasize the in-person nature of Yale's education, further establishing a breach of contract. *See, e.g., Salerno,* 2020 WL 5583522, at *2 (similar statements of library, cafe, and other facilities contributing to the educational benefit); *Rosado,* 2020 WL 6438684, at *1 (similar).

Courts faced with similar COVID-19 college tuition lawsuits have denied largely identical arguments. For example, rejecting the university's argument that the amended complaint does not identify specific contractual provisions, the court in *Salerno* held allegations similar to Plaintiff's sufficed to state a claim; "[Plaintiff] alleges that the College's publications

clearly implied that courses would be conducted in-person. The College's materials also touted its many resources and facilities — all of which were located on the campus thereby implying in-person participation." *Salerno*, 2020 WL 5583522, at *5 ("the college/student contract is typically implied in the College's publications."). *See also Rosado*, 2020 WL 6438684, at *3 (holding that allegations that school accepted tuition, provided in-person courses until mid-March 2020, and "the backdrop of numerous other documents referring to in-person classes and amenities, are sufficient to establish, at minimum, an implied contract."); *Milanov,* 2020 Mich. Ct. Cl. LEXIS 1, at *15 (denying motion to dismiss breach of contract claim; "the complaint identifies the parties to the contract, the subject-matter (live, in-person instruction, room and board, and 'fees'), the consideration provided by each side, and each side's obligations."); *Garland v. Western Michigan Univ.*, 1:20-cv-03208-JMF at 6 (Mich. Ct. Cl. Oct. 16, 2020) (denying motion to dismiss breach of contract claim); *Zahn v. Ohio University*, Case No. 2020-00371JD at 5 (Ohio Ct. Cl., Oct. 19, 2020) (same); *Waitt v. Kent State Univ.,* 2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020) (same); *Cross*, 2020 WL 4726814 (same); *Smith*, 2020 WL 5694224 (same); *McDermott*, 2020 Ohio Misc. LEXIS 127, at *6-7 (same).

Finally, even if a finder of fact were to conclude that no *express* contact was formed by these promises and Yale's acceptance of moneys for tuition and fees, there is at least a jury question that an implied contract was formed between the parties. Am. Compl. at ¶ 21 (Plaintiff "entered into an express or implied contract with Yale ..."). Connecticut law has long recognized contracts implied from the conduct of the parties. *See Boland v. Catalano*, 202 Conn. 333, 337 (1987). "Whether this contract is styled 'express' or 'implied' involves 'no difference in legal effect, but lies merely in the mode of manifesting assent.'" *Id.* at 337 (quoting Restatement (Second), Contracts § 4 cmt. a).

Viewing all inferences in Plaintiff's favor, as Rule 12 requires, Plaintiff's alleged facts set forth a plausible claim for breach of contract.

## II.      Plaintiff Alleged Yale Breached Their Contract

Plaintiff alleges that Yale promised an in-person education in exchange for tuition payment. Am. Compl. at ¶¶ 21-26. Plaintiff accepted Yale's offer. *Id.* at ¶ 27. Plaintiff performed his obligations, but Yale did not. *Id.* at ¶¶ 28-29. Plaintiff was injured. *Id.* at ¶¶ 38-48. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014) (stating elements for breach of contract claim).

In response, Yale repeats the arguments it made in Section I.B.1 of its brief, claiming that the promises he alleges do not create a contract. Br. at 21-23. For the same reasons explained in Section I.B of this brief, *supra*, Yale's argument does not withstand muster.

## III.     Plaintiff Adequately Pleads an Unjust Enrichment Claim

In Section I.B.1, Yale argues that there is no contract for in-person classes. Br. at 14-19. In Section III, Yale changes course; it asserts that because there is a contract for in-person classes, Plaintiff cannot bring an unjust enrichment claim. Br. at 23.

Plaintiff does not contend he can recover under both unjust enrichment and breach of contract. He instead pleads his unjust enrichment claim in the alternative to his breach of contract. *See* Am. Compl. at ¶ 68 ("Plaintiff brings this claim . . . in the alternative to Count I" for breach of contract). Should the jury conclude there is no contract, his unjust enrichment claim may be the only mode of recourse left for Plaintiff and the class.

As numerous circuit courts and courts in this district have held, unjust enrichment claims may be pled in the alternative when a contract is in dispute. *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660 (2d Cir. 1996) (reversing dismissal of unjust enrichment claim which was "properly pleaded as such in the alternative to the contractual claim"); *Lass v.*

*Bank of America*, 695 F.3d 129, 140 (1st Cir. 2012) (same, "alternative and even inconsistent" theories may be pursued at the pleading stage); *Family Wireless #1, LLC v. Automotive Technologies, Inc.*, No. 15-CV-1310 (JCH), 2016 WL 183475, at *13 (D. Conn., Jan. 12, 2016) (same, denying summary judgment to defendant); *Bokanoski v. Lepage Bakeries Park St., LLC*, No. 15-CV-21 (JCH), 2016 WL 11547577, at *5 (D. Conn. Jun. 29, 2016) (same).

And as other courts addressing similar COVID-19 tuition suits have observed, a school's denial that a contract exists is exactly why the unjust enrichment claim should be allowed to stand. *McDermott,* 2020 Ohio Misc. LEXIS 127, at *7 ("Because the existence of the underlying contract is disputed, it would be premature for the court to dismiss plaintiff's unjust enrichment claim."); *Smith*, 2020 WL 5694224, at *4 (same); *Rosado*, 2020 WL 6438684, at *5 (same; "a plaintiff may assert a claim for unjust enrichment as an alternative to a contract claim.").

Yale then ignores Plaintiff's allegations, and denies they were ever made. Yale incorrectly claims that Plaintiff did not allege Yale's conduct was unjust, Br. at 23, ignoring Plaintiff's allegations that do just that. Am. Compl. at ¶¶ 71-75. *See also id.* at ¶¶ 8-9, 35-37, 39-48. Yale incorrectly claims that Plaintiff did not allege Yale was enriched, Br. at 24, again ignoring Plaintiff's allegation that Yale kept money Plaintiff paid for in-person courses but provided only online courses, which Yale customarily offers for free. Am. Compl. at ¶¶ 71-75.

Yale asserts that Plaintiff received course credits, and concludes that he did not allege a detriment. Br. at 24. Here, too, Yale ignores Plaintiff's allegations. He "did not pay for course credits." Am. Compl. at ¶ 71. He paid for in-person educational services, which he did not receive. *Id.* Instead, he received online educational services, which have "a substantially lesser value." *Id.* at ¶ 73. Among other things, online education is devoid of the valuable face-to-face interaction with professors and peers, hands-on learning and experimentation, extracurricular

activities, networking opportunities, and more. *Id. at* ¶ 44. Plaintiff's detriment is reflected in the "vast price difference Yale charges for its in-person, on-campus programs versus its online learning programs." *Id.* at ¶ 45. In fact, in its normal operations, Yale charges 60% less in tuition for non-live online versions of the same program. *Id.* at ¶ 46. For some courses, Yale provides the same course online for free. *Id.* at ¶¶ 47-48 (comparing courses).

In other COVID-19 tuition suits, courts have rejected schools' similar claims that the breach was minimal because students earned course credits. "This is kind of like purchasing a Cadillac at full price and receiving an Oldsmobile. Although both are fine vehicles, surely it is no consolation to the Cadillac buyer that the 'Olds' can also go from Point A to Point B." *Rosado*, 2020 WL 6438684, at *4 (denying motion to dismiss COVID-19 tuition suit).

Finally, Yale insists that moving classes online was appropriate given the pandemic, and thus not inequitable. Br. at 24. Yale misconstrues Plaintiff's claims. Plaintiff does not claim that moving classes online was inequitable – Plaintiff claims that *charging* tuition as if classes were in-person is inequitable. Nothing about the pandemic required Yale to charge tuition for services it was no longer providing. *See* Am. Compl. at ¶¶ 67-75. Whether Yale's *billing* decision was equitable or not is for a jury to decide.

*Rosado* perhaps puts it best:

> [The university] paints itself as a co-equal victim of the pandemic and goes on at length about how its administrative response was totally reasonable. But this misses the point. The question is not whether [the university] was justified in closing its campus due to an unforeseen pandemic. Rather, the question is where that risk (i.e., the financial burden) should be contractually allocated. That is what this lawsuit is about.

*Rosado*, 2020 WL 6438684, at *4 (denying motion to dismiss COVID-19 college tuition suit).

Other courts addressing similar COVID-19 tuition cases agree that allegations like Plaintiff's state a claim for unjust enrichment. *Cross,* No. 2020-00274JD, 2020 WL 4726814, at

*3 (denying motion to dismiss unjust enrichment claim); *Salerno*, 2020 WL 5583522, at *5 (same); *Zahn v. Ohio University*, Case No. 2020-00371JD at 5-6 (Ohio Ct. Cl., Oct. 19, 2020)**;** *Rosado*, 2020 WL 6438684, at *5 (same, although the school "disputes that the retention of payments was 'unjust' a motion to dismiss tests the sufficiency of the pleading, not the merits of the case."); *Garland*, 2020 Mich. Ct. Cl. LEXIS 7 (same); *Milanov,* 2020 Mich. Ct. Cl. LEXIS 1, at *18-19 (same).

Yale does not address these cases. Instead, Yale cites only *Moss v. Wayne State Univ.*, No. 286034, 2009 WL 4344193, at *2 (Mich. Ct. App. Dec. 1, 2009). Br. at 24. Yet *Moss* dealt with a school charging increased tuition due to uncertainty about state funding – not a school charging students for courses not received. *Id.* Here, in comparison, "plaintiffs have alleged that they yielded excess in comparison to what they received." *Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at *19 (distinguishing *Moss* and denying motion to dismiss COVID-19 tuition suit).

## IV. Plaintiff Adequately Pleads a CUTPA Claim

To Plaintiff's CUTPA claim, Yale first argues that providing educational services are not within "trade or commerce" under CUTPA, and then insists that its representations were not material. Plaintiff addresses each in turn.

### A. Educational services are within "trade or commerce" under CUTPA.

CUTPA governs "trade or commerce," defined as "the offering … of any services … in this state." Conn. Gen. Stat. § 42-110a. Citing chapter and verse, Plaintiff alleges that Yale is "in the conduct of trade or commerce" under the Act because "it is an entity that sells services." Am. Compl. at ¶ 78, citing Conn. Gen. Stat. § 42-110a.

In response, Yale rests on *Haynes v. Yale-New Haven Hospital*, which held that claims of medical and legal malpractice are excluded from CUTPA for reasons of public policy. 243 Conn.

17, 35-37 (1997). Here, Yale repeats its *Gupta* argument, again mischaracterizing Plaintiff's claims as alleging Yale provided an inferior education. Br. at 25.

There are two problems with Yale's argument. ***First, Haynes*** addressed legal and medical services – two industries heavily regulated and subject to malpractice claims. Nothing in *Haynes* suggests that educational services fall within its ambit. "Connecticut appellate courts have not decided whether CUTPA claims that are premised on professional practice in fields other than medicine or law should be barred." *Osberg v. Yale Univ.*, No. CV085021879S, 2009 WL 659072, at \*5 (Conn. Super. Ct. Feb. 11, 2009) (denying motion to dismiss CUTPA claim against Yale). As Connecticut courts warn, "[t]rial courts should be cautious in extending a doctrine that exempts conduct from the reach of remedial legislation, such as CUTPA." *Pollock v. Panjabi*, 47 Conn. Supp. 179, 195 (Conn. Super. 2000) (denying motion to strike CUTPA claim against Yale for its professors' conduct in rendering expert services). "[I]t would be a dangerous form of elitism, indeed, to dole out exemptions to our [consumer protection] laws merely on the basis of the educational level needed to practice a given profession." *Id.* (alterations in original, internal citation and quotation marks omitted). *See also Haynes*, 243 Conn. At 38; *Franco v. Mediplex Constr., Inc.*, No. CV 96390458, 1999 WL 185179, at \*2 (Conn. Super. Ct. Mar. 22, 1999) (declining to extend *Haynes* to architects); *Doe v. Julia Day Nursery, Inc.*, No. CV 980062198S, 1998 WL 813474, at \*4 (Conn. Super. Ct. Nov. 16, 1998) (declining to extend *Haynes* to day care center).

***Second,*** as Yale's brief recognizes, commercial aspects of professional industries are still subject to CUTPA's requirements, "such as the solicitation of business and billing practices." Br. at 25. *See also Haynes*, 243 Conn. at 33, 35-38 ("[a] blanket exemption for the" professional industries "would therefore be improper") (discussing cases, including *Ikuno v. Yip,* 912 F.2d

306, 312 (9th Cir.1990) ("the practice of law and medicine may give rise to [consumer protection act] claims … when the actions at issue are … the solicitation of business and billing practices ….") and *Jaramillo v. Morris*, 750 P.2d 1301, 1304 (Wash. App. Div. 3 1988) (dismissing consumer protection act claim against hospital because "[t]he entrepreneurial aspects of the hospital's business, such as billing, were not implicated")).

That is precisely what Plaintiff alleges. Plaintiff challenges Yale's marketing and billing practices. *See* sections I.A, I.B, *supra*.

Thus, the Court need not decide whether *Haynes* should extend to educational malpractice, an open question in Connecticut courts; "the allegations of the [P]laintiff in the present case implicate the entrepreneurial aspects of [Yale]'s provision of educational services and, therefore, fit into the limited exception to that rule." *Osberg*, 2009 WL 659072, at *5 (denying motion to strike CUTPA claim against Yale's drama school for failing to notify student that her work was not deserving of credit).

### B. Plaintiff alleged a material and deceptive representation.

Plaintiff alleged that Yale promised in-person educational services in its course catalog, Am. Compl. at ¶ 22, its marketing materials, *id.* at ¶ 25, and its policy manuals, *id.* at ¶ *24* . *See also id.* at ¶ 76. It also did not correct these representations, and instead passed off online education as just as valuable as in-person education. *Id.* at ¶¶ 36, 79. Yale intended Plaintiff rely on these promises, *id.* at ¶ 80, which Plaintiff did, *id.* at ¶ 37. Yale's representations and omissions had the tendency to mislead. *See id*. at ¶ 81. These promises were material to Plaintiff; "Plaintiff and members of the Class paid Yale tuition in reliance on its promise of teaching a certain number of courses in an in-person course format and with in-person facility access." *Id.* at ¶ 37.

Moreover, "[t]he same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation." *Pollock*, 47 Conn. Supp. at 197 (denying motion to strike CUTPA claim) (quoting *Lester v. Resort Camplands Intern.*, Inc., 27 Conn. App. 59 (Conn. App. 1992)).

Like its unjust enrichment argument, Yale simply denies that Plaintiff makes these allegations. Br. at 26. Yale also (incorrectly) asserts that Plaintiff did not allege that its representations were likely to affect his conduct. *Id*. Plaintiff did so allege. Am. Compl. at ¶¶ 34, 37.

## V.    Yale's Challenge to Plaintiff's Class Definition Fails

Plaintiff seeks to represent a class of undergraduate and graduate Yale students attending Spring 2020 or later semesters that went online due to the COVID-19 pandemic. Am. Compl. at ¶ 51.[10] In Yale's last argument, Yale attempts to whittle down Plaintiff's class definition, trying to exclude graduate students and semesters after Spring 2020. Br. at 27.

### A.    Challenges to Plaintiff's class definition should be addressed at the certification stage, not the pleading stage.

The first problem with Yale's challenge is that it is premature. Judicial efficiency counsels addressing Plaintiff's class definition once, at the certification phase when the facts are fleshed out, not at the pleading stage based on Yale's conjecture and improper denials. "[I]f a factual determination is necessary to decide whether the Rule 23 requirements have been met, a court ordinarily must wait until after class discovery has been completed and a plaintiff has moved for class certification before declining to certify a class." *Hendricks v. JPMorgan Chase Bank, N.A*, CIV A 3:08CV613(JCH), 2008 WL 5191819, at *2 (D. Conn. Nov. 21, 2008) (denying motion to dismiss and strike).

---

[10]    Plaintiff attended Yale for both the Spring and Fall 2020 semesters. Am. Compl. at ¶ 18.

The timing of Yale's argument strikes as a little bit of a "gotcha" tactic. Yale seeks to dismiss graduate students from the class because of a lack of discovery, and simultaneously seeks to stay discovery given its motion to dismiss. *See* Def. Mtn. to Stay Discovery, ECF 39.

Even without the benefit of discovery, Plaintiff alleged the very promises Yale contends are not there. For example, Yale incorrectly asserts that Plaintiff cites only promises made in undergraduate materials. Br. at 27. *See* response at section V.B, *infra*. And given that Plaintiff seeks discovery of graduate school handbooks and regulations, *see* Opp. to Def. Mtn. to Stay at 8, ECF 42, and that Yale will raise other issues as to the class definition at the certification stage, Plaintiff respectfully asserts that the sound course is for the Court to address the class definition at the certification stage, after discovery has been exchanged. *See Hendricks,* 2008 WL 5191819, at *2.

### B. Plaintiff alleges contractual promises made to graduate students.

Seeking to exclude graduate students from the putative class, Yale incorrectly asserts that Plaintiff has not identified contractual promises made to graduate students. Br. at 27. Yet on Yale's motion to dismiss, any ambiguities in Plaintiff's factual allegations are to be resolved in his favor. *Mirkin,* 931 F.3d at 176 (reversing dismissal); *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (same).

As the Yale University Faculty Handbook states, "Faculty members are expected to remain on campus and to teach …" Am. Compl. at ¶ 24; *id.* at ¶ 24 nn. 4-6 (identifying url).[11] Yale incorrectly assumes that this applies only to undergraduate courses, Br. at 27, and improperly attaches the handbook for instructors of *undergraduates*. *Id.* at 18 n.24; Yale Exhibit D. In fact, the Faculty Handbook that Plaintiff cites applies to both undergraduate and graduate

---

[11]     Yale        University        Faculty        Handbook,     *available        at* https://provost.yale.edu/sites/default/files/files/Faculty%20Handbook_8-22-19.pdf (last viewed 9/22/2020).

programs. Yale University Faculty Handbook at 1, 3 (stating purpose is to present "the most important University policies and practices as they apply to the faculties of the University," defined to include graduate schools).

As Plaintiff alleges, "[f]or each class taken, Yale promised to provide the education specified in the course catalog and course syllabus, including the time and physical location of the in-person instruction." Am. Compl. at ¶ 22. As "an *example* of such a promise," Plaintiff provides a screenshot the catalog entry for an undergraduate class. *Id.* (emphasis added). In its brief, Yale takes this to mean that the promise was made only for undergraduate courses. Br. at 27. Nothing supports Yale's assumption. Yale made these promises in the catalog's entry for graduate courses, as well. Am. Compl. at ¶ 22.[12]



Similarly, Plaintiff alleges that Yale contractually promised to provide students a refund if warranted by the circumstances, such as a pandemic. Am. Compl. at ¶ 26. Plaintiff provides an

---

[12]     Yale University Course Search, Anthropology 538, *available at* https://courses.yale.edu/?srcdb=202001&subject=ANTH&col=GS (circled emphasis added for clarity) (last viewed 11/10/20).

"*example*" from undergraduate regulations. *Id.* (emphasis added). Here again, Yale incorrectly assumes that the promise is made *only* for undergraduates. Br. at 27. Again, Yale is incorrect. *See, e.g.,* Yale School of Architecture, Tuition[13] ("In the face of such events, the University may, at its sole discretion, provide … appropriate refunds."); Yale Graduate School of Arts and Sciences, Interruption or Temporary Suspension of University Services or Programs[14] (same).

Plaintiff need not attach images of the entire course catalog to satisfy the federal rules, nor does providing one example of his factual evidence create the duty to provide all his factual evidence. Such a requirement would be inconsistent with Rule 8's requirement that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). *Ironshore Indem., Inc. v. Corle Bldg. Sys., Inc.,* 3:12-CV-78 JCH, 2013 WL 3866890, at *2 (D. Conn. July 24, 2013) (denying motion to dismiss, holding "[t]he plausibility standard does not 'require[ ] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8.'") (quoting *Arista Records, LLC v. Doe* 3, 604 F.3d 110, 119 (2d Cir. 2010)); *see also Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)").

### C.     Fall 2020 and Beyond

Improperly insisting on its own version of facts in its motion, Yale claims that Fall 2020 students knew what they were getting and cannot complain. Br. at 27.

---

[13]     Yale School of Architecture, Tuition, *available at* https://www.architecture.yale.edu/admissions/tuition (last viewed Nov. 10, 2020).

Plaintiff requests the Court take judicial notice of Yale's website. *Force v. Facebook, Inc.,* 934 F.3d 53, 60 n.5 (2d Cir. 2019) (taking judicial notice of defendant's website); *O'Toole v. Northrop Grumman Corp.,* 499 F.3d 1218, 1225 (10th Cir. 2007) (ruling that the district court erred in failing to take judicial notice of information found on defendant's website); *Munn v. Hotchkiss School,* 326 Conn. 540, 600 (2017) (reversing the denial of judicial notice; "federal courts … routinely take judicial notice … of the Internet Archive's Wayback Machine as reliable evidence of how a particular website appeared on a particular date") (internal citation omitted).

[14]     Yale Graduate School of arts and Sciences, Interruption or Temporary Suspension of University Services or Programs, *available at* http://catalog.yale.edu/gsas/financing/interruption-temporary-suspension-university-services-programs/ (last viewed Nov. 10, 2020).

As Plaintiff alleged, Yale waited until July to announce that substantially all Fall 2020 classes would be online, which "did not give students the time needed to make alternative arrangements (such as applying to another program)." Am. Compl. at ¶ 34. By the time of Yale's July announcement, students like Plaintiff had already relied to their detriment on Yale's in-person promises. *Id.* at ¶¶ 34, 37.[15]

These allegations state a claim for relief. Impracticability of performance does not allow a contracting party to rewrite the terms to whatever it wants. Instead, Plaintiff, who both relied and partly performed (by paying full tuition) is permitted restitution. Restatement (Second) of Contracts § 377 (1981). "It would certainly be anomalous, without sufficiently strong evidence of contractual intent, to permit a party to reap the full benefits of an agreement in return for only partial performance." *Rosado*, 2020 WL 6438684, at *5 (denying dismissal in college COVID suit; "in the absence of specific contractual provisions, courts often attempt to return the parties to their precontractual positions, insofar as possible, when nonperformance is excused.").

Yale does not argue that these allegations are insufficient. Instead, Yale insists that when Plaintiff enrolled for the Fall 2020 semester, he "knew that online instruction would be used predominantly" and "had the opportunity to withdraw for a full refund under the Yale Undergraduate Regulations." Br. at 27. Yale then chastises Plaintiff – "he decided to forgo that right and cannot now complain." *Id.*

In other words, Yale raises the defense of waiver. To succeed, Yale must show Plaintiff's "intentional relinquishment of a known right." *DeLeo v. Equale & Cirone, LLP*, 180 Conn. App. 744, 758 (Conn. App. 2018) (affirming finding of no waiver). *See also Worth Const. Co., Inc. v.*

---

[15]     As late as May 2020, Yale still required Fall tuition to be paid in full by August 1, 2020, almost a full month before the Fall 2020 courses were to begin. Yale University, Tuition due Dates, *available at* http://web.archive.org/web/20200514085817/https://student-accounts.yale.edu/understanding-your-bill/tuition-due-dates (website as of May 14, 2020).

*Dept. of Pub. Works*, 139 Conn. App. 65, 71 (2012) (same, considering "the background, experience and conduct of the party" claimed to have waived his rights).

"Whether conduct constitutes a waiver is a question of fact." *DeLeo,* 180 Conn. App. at 758. "[F]act-specific question[s] cannot be resolved on the pleadings." *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). *See also Optima Media Group Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 150 (S.D.N.Y. 2019) ("questions of waiver are not decided on a motion to dismiss"); *In re Lexi Dev. Co., Inc.*, 453 B.R. 440, 446 (Bankr. S.D. Fla. 2011) ("The affirmative defense of waiver will not support the granting of a motion to dismiss."); *Livolsi v. City of New Castle, Pa.*, 501 F. Supp. 1146, 1151 (W.D. Pa. 1980) (similar).

Moreover, Yale's waiver defense is inapplicable to Plaintiff's CUTPA claim. *T.D. Bank, N.A. v. Nutmeg Investments, LLC*, X02UWYCV085009473S, 2010 WL 4277552, at *10 (Conn. Super. Sept. 29, 2010) ("a CUTPA claim cannot be waived by contract, given that the intent of the statute is remedial.").

Finally, Yale's "waiver" defense suggests that Plaintiff could simply withdraw and restart whenever he chose. Br. at 27. This is not true. After withdrawal, students must apply and interview for reinstatement before they can return, showing that they were "constructively occupied" in the interim period. Yale College Programs of Study 2020-2021 at 66-67.[16] "[R]einstatement is not guaranteed to any applicant." *Id.* at 66. Thus, when the Fall 2020 semester began, Plaintiff was presented with a Hobson's choice: accept Yale's last-minute unilateral modification without the relied-upon in-person education, or withdraw and lose his

---

[16]     Yale College Programs of Study 2020-2021, available at http://catalog.yale.edu/pdf/ycps-2020-2021.pdf (last viewed Nov. 11, 2020). *See also* Yale College Leave of Absence, Withdrawal, and Reinstatement, *available at* https://yalecollege.yale.edu/policies-procedures/leave-absence-withdrawal-and-reinstatement (last viewed Nov. 10, 2020).

Students must petition for permission to take a leave of absence. Yale College Programs of Study 2020-2021 at 63. By the time of Yale's online Fall announcement, the only real option was for students to take a withdrawal. *Id.* at 64-66.

academic standing in one of the nation's most prestigious universities.

In short, as in *Rosado,* Yale "has not provided sufficient support for its position that [Plaintiff] was required to threaten [the school], risk financial loss, and disrupt [his] academic career in order to preserve her contractual remedies." *Rosado*, 2020 WL 6438684, at \*5.

## <u>CONCLUSION</u>

For all the reasons stated above, Yale's Motion to Dismiss Plaintiff's Amended Complaint should be denied. Should the Court be inclined to grant Yale's motion, Plaintiff respectfully requests leave to amend. "When a party requests leave to amend its complaint, permission generally should be freely granted." *Anderson News*, 680 F.3d at 185 (holding district court abused discretion in denying leave to amend).


Dated:  November 27, 2020

Respectfully submitted,
PLAINTIFF JONATHAN MICHEL
BY:   */s/ Yvette Golan*
Yvette Golan (*pro hac vice*)
**THE GOLAN FIRM, PLLC**
2000 M Street, N.W., Suite #750-A
Washington, DC  20036
Tel: (866) 298-4150, ext. 101
Fax: (928) 441-8250
ygolan@tgfirm.com

James A. Francis (*pro hac vice*)
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
Edward H. Skipton (*pro hac vice*)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: 215-735-8600
Fax: 215-940-8000
Email: jfrancis@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com
Email: dsearles@consumerlawfirm.com
Email: eskipton@consumerlawfirm.com

Sarah Poriss (ct24372)
Attorney at Law, LLC
777 Farmington Ave., 1st Fl.
West Hartford, CT 06119
Tel: 860-233-0336
Fax: 866-424-4880
sarahporiss@prodigy.net

*Attorneys for Plaintiff*