## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JONATHAN MICHEL, | : | |
| ON BEHALF OF HIMSELF AND ALL | : | |
| OTHERS SIMILARLY SITUATED, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:20-CV-01080 (JCH) |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, | : | July 7, 2021 |
|     Defendant. | : | |

## RULING ON DEFENDANT'S MOTION TO DISMISS (DOC. NO. 41)

## I.    INTRODUCTION

Plaintiff Jonathan Michel ("Michel") brings this putative class action against Yale University ("Yale" or "the University") alleging breach of contract, unjust enrichment, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq.  A student at Yale, Michel brings claims arising out of Yale's decision not to partially refund his tuition and fees after the University transitioned from in-person to virtual instruction in response to the COVID-19 pandemic.  Yale moves to dismiss Michel's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, the court grants Yale's Motion.

## II.   BACKGROUND[1]

Yale is a private, Ivy League educational institution located in Connecticut.  See Amended Complaint ("Am. Compl.") ¶¶ 16, 19 (Doc. No. 37).  Approximately 13,609

---

[1] The court accepts as true the well-pleaded facts alleged in the Amended Complaint but does not credit conclusory allegations.  See Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

students are enrolled at the University across its fourteen constituent schools.  Id. ¶ 19.
The plaintiff numbers among them.  Id. ¶ 1.  A citizen and resident of Ohio, Michel paid
tuition and fees and was enrolled as a full-time student at Yale for the Spring 2020
academic semester.  Id. ¶¶ 18, 28.

For most of the Spring 2020 semester, Michel's classes were conducted in-
person.  See id. ¶ 5.  However, in response to the COVID-19 pandemic, Yale ceased in-
person instruction beginning March 10, 2020, and transitioned to virtual instruction for
the remaining five weeks of the semester.  Id. ¶¶ 6, 30-31.  The University also closed
its campus and facilities for the duration of the semester.  Id. ¶¶ 5, 11, 30, 32.

Michel alleges that his payment of tuition and fees secured Yale's promise to
provide in-person instruction and access the University's facilities.  Id. ¶¶ 9, 12, 21.  He
points to various documents and publications as setting forth the terms of Yale's
promise.  First, each class in Yale's course catalog specifies the physical classroom in
which the course will be held.  Id. ¶ 22.  Second, Yale's Handbook for Instructors of
Undergraduates in Yale College 2020-2021 requires that changes in course format be
reviewed and approved by a committee of University faculty.  See id. ¶ 23.  Third, Yale's
Faculty Handbook states that teaching faculty are "expected" to be on campus "most
days of the work week" and "must remain on campus during reading and examination
periods."  Id. ¶ 24.  Fourth, Yale promotes its Residential College housing system as
"the heart of the Yale experience."  Id. ¶ 25.  The University emphasizes that, through
the residential colleges, undergraduate students will become part of an on-campus
community and have access to facilities such as libraries, gyms, dining halls, and other
spaces.  Id.  Finally, Yale's undergraduate regulations applicable to the Spring 2020

semester ("Undergraduate Regulations") stated that, if the University decided to suspend programs or operations due to public health or other safety concerns, it would issue "appropriate refunds . . . as may in its judgment be warranted."  Id. ¶ 26.

Michel alleges that the online education he received the final five weeks of the Spring 2020 semester was not as valuable as the in-person experience for which he paid.  Id. ¶ 12 ("[R]emote online learning cannot provide the same value as in-person education."); id. ¶ 39 ("Yale's move to online-only classes deprived students of [the on-campus experience] . . . which provided considerable value."); id. ¶ 43 ("In-person education is worth more than online education.").  In support, the Amended Complaint cites a 2017 study that found that online courses do not "promote academic success" to the extent that in-person courses do.  Id. ¶ 38.  Yale also charges more for in-person instruction than it does for online instruction.  Id. ¶¶ 44-45.  For example, Yale offers an in-person Women's Leadership Program through its business school that costs $7,000, whereas the live, online version of that same program costs $4,950.  Id. ¶ 46.  The online version of the program that is not live costs even less, $2,800.  Id.[2]

Despite the difference in "value" between the educational experience promised and that provided, Yale has refused to refund any of Michel's tuition or fees for the Spring 2020 semester.  Id. ¶¶ 7, 35, 49.  The Amended Complaint makes no allegation as to whether the University refunded monies paid for room and board.

---

[2] Michel also alleges that Yale does not permit students transferring from other institutions to transfer credits for online courses.  However, the Yale publication cited in support of this allegation explicitly states that "[o]nline courses from other universities may be eligible for Yale credit under limited conditions."  See Yale University, Yale College Programs of Study Fall and Spring Terms 2019-2020, 115 BULL. YALE UNIV. 4, 85 (June 30, 2019), https://bulletin.yale.edu/sites/default/files/ycps-2019-2020.pdf. Those conditions include "regular, synchronous interaction with the instructor" and "regular feedback."  Id. The court therefore does not credit Michel's allegation that online course credits from other institutions are not transferrable to Yale.

On July 1, 2020, Yale announced that it would continue with online instruction for nearly all courses for the Fall 2020 semester. Id. ¶ 33. Fall semester classes began roughly two months later. Id. ¶ 34. Michel, who was enrolled as a full-time student during the Fall 2020 semester, id. ¶ 18, alleges that the timing of Yale's announcement "did not give students the time needed to make alternative arrangements" such as applying to another program, id. ¶ 34. Yale likewise did not refund any of the tuition or fees Michel paid for the Fall 2020 semester. See id. ¶¶ 14, 49.

On October 16, 2020, Michel filed an Amended Complaint alleging breach of contract (Count One), unjust enrichment (Count Two), and violation of CUTPA (Count Three). Id. ¶¶ 59-82. Pursuant to Federal Rule of Civil Procedure 23, he seeks to certify a class defined as: "Any person who paid or caused to be paid tuition and/or fees to attend Yale University when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19." See id. ¶ 51. Yale has moved to dismiss the Amended Complaint. Motion to Dismiss Amended Complaint ("Mot. to Dismiss") (Doc. No. 41). Michel opposes Yale's Motion. Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Complaint ("Opposition") (Doc. No. 46).[3] In addition, both parties have submitted numerous additional authorities in support of their respective positions. See Plaintiff's Notice of Supplemental Authority (Doc. No. 49); Plaintiff's Second Notice of Supplemental Authority (Doc. No. 54); Plaintiff's Third Notice of Supplemental Authority (Doc. No. 59); Plaintiff's Fourth Notice of Supplemental Authority (Doc. No. 62); Plaintiff's Fifth Notice of Supplemental

---

[3] Unless otherwise noted, the court's page citations to the parties' briefs refer to those documents' original pagination.

Authority (Doc. No. 66)[4]; Defendant's Notice of Supplemental Authority (Doc. No. 57); Defendant's Second Notice of Supplemental Authority (Doc. No. 61); Defendant's Third Notice of Supplemental Authority (Doc. No. 64); Defendant's Fourth Notice of Supplemental Authority (Doc. No. 65); Defendant's Fifth Notice of Supplemental Authority (Doc. No. 67); Defendant's Sixth Notice of Supplemental Authority (Doc. No. 68); Defendant's Seventh Notice of Supplemental Authority (Doc. No. 69).

## III.   LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). The court takes all factual allegations in a complaint as true and draws all reasonable inferences in the plaintiff's favor. See Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015). However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Dismissal under Rule 12(b)(6) is appropriate when

---

[4] Michel incorrectly entitles this submission his "Third Notice of Supplemental Authority."

"it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Associated Financial Corp. v. Kleckner, 480 Fed. App'x 89, 90 (2d Cir. 2012) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks and citations omitted); see also United States v. Strock, 982 F.3d 51, 63 (2d Cir. 2020) (same).

## IV.  DISCUSSION

The court begins its discussion by noting that this case has company.  In response to the COVID-19 pandemic, colleges and universities across the country closed their doors in the middle of the Spring 2020 semester and migrated course instruction from in-person classrooms to virtual ones.  Many of these institutions, however, chose not to refund any portion of students' tuition or fees.  Unhappy with these decisions, students (and parents) around the country have filed dozens—perhaps hundreds—of lawsuits alleging breach of contract and unjust enrichment, among other claims.  See, e.g., In re Columbia Tuition Refund Action, No. 20-CV-3208 (JMF), 2021 WL 790638 (S.D.N.Y. Feb. 26, 2021); Chong v. Northeastern Univ., No. CV 20-10844-RGS, 2020 WL 7338499 (D. Mass. Dec. 14, 2020); Rhodes v. Embry-Riddle Aeronautical Univ., Inc., No. 620-CV-927-ORL-40EJK, 2021 WL 140708 (M.D. Fla. Jan. 14, 2021); Nguyen v. Stephens Inst., No. 20-CV-04195-JSW, 2021 WL 1186341 (N.D. Cal. Mar. 30, 2021).

Michel likewise brings claims sounding in breach of contract and unjust enrichment, in addition to a CUTPA claim.  The court considers each in turn.  However, the court first considers Yale's principal, threshold argument that Michel's claims must be dismissed because they run afoul of Connecticut's educational malpractice doctrine.

A.    Educational Malpractice

Yale principally argues that Michel's claims must be dismissed because each of them "rest[s] on the theory that Yale's online courses were inferior to its in-person courses."  Mot. to Dismiss at 2.  Relying on Gupta v. New Britain General Hosp., 239 Conn. 574 (1996), Yale contends that claims so premised are "not cognizable because Connecticut does not recognize claims for 'inadequate educational services.'"  Mot. to Dismiss at 8 (quoting Gupta, 239 Conn. at 591); see also Mot. to Dismiss at 1-2, 8-13.

In Gupta, a surgical resident sued a hospital for dismissing him from its residency training program, which dismissal the court concluded implicated the educational (rather than employment) component of the residency agreement between the parties.  Gupta, 239 Conn. at 575, 589.  In challenging his dismissal, the plaintiff argued that the hospital breached the parties' residency agreement by "fail[ing] to provide him a residency program that would reasonably and adequately train him."  Id. at 590.

The court held that the plaintiff had failed to state a cause of action, id. at 593, because his breach of contract claim "raise[d] questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students," see id. at 590.  The court observed that, similar to "educational malpractice" claims sounding in tort, contract claims challenging the overall quality of educational services "involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been

7

breached." See id. at 591-92.  Such claims would require courts to "evaluate the course of instruction" and "review the soundness of the [institution's]  method of teaching[,] . . . a project that the judiciary is ill equipped to undertake."  Id. at 590.  In light of these concerns, the court rejected the plaintiff's breach of contract claim based on inadequate educational services.  Id. at 593; see also Tankoos v. Mead Sch. for Hum. Dev., No. X05CV 950145853S,  1999 WL 391350,  at *1, 9 (Conn. Super. Ct. June 4, 1999) (extending Gupta to an unjust enrichment claim based on allegedly  inadequate educational  services); Wightwood Sch. v. Fritz, No. 410060, 1999 WL 240727, at *3 (Conn. Super. Ct. Apr. 9, 1999) ("[T]he same policy considerations  discussed in Gupta that militate against tort liability for educational  malpractice generally militate against a CUTPA claim grounded in educational malpractice.").

Courts have differed on whether COVID-19 tuition reimbursement suits implicate the educational  malpractice doctrine.  Some have answered in the affirmative.  For instance, in Gociman v. Loyola Univ. of Chicago, a university transitioned to virtual instruction two months into the semester and closed its campus buildings in response to the COVID-19 pandemic.  Gociman v. Loyola Univ. of Chicago, No. 20 C 3116, 2021 WL 243573, at *1 (N.D. Ill. Jan. 25, 2021).  Plaintiffs brought a putative class action against the school "seek[ing] damages representing the difference in value between in-person classes and access to facilities, and the online education they received."  Id. The district court stated that "the theory underlying all of plaintiffs' claims is that the education plaintiffs received once defendant transitioned  to remote instruction  in response to the COVID-19 pandemic was 'worth significantly less than the value of live classes.'"  Id. at *3 (brackets omitted).  Resolution of those claims, the court continued,

would therefore "require the Court to make judgments about the quality and value of the education defendant provided in the Spring 2020 semester." Id. at *3 (quoting Lindner v. Occidental Coll., No. CV 20-8481-JFW (RAOX), 2020 WL 7350212, at *7 (C.D. Cal. Dec. 11, 2020)).  The court concluded that the plaintiffs' claims were therefore barred by the state's educational malpractice doctrine.  Gociman, 2021 WL 243573, at *3; see also Lindner, 2020 WL 7350212, at *7 (concluding that claims were barred by the educational malpractice doctrine where plaintiffs had alleged that the online education they received during the COVID-19 pandemic was "not worth the amount charged" or "in any way the equivalent of an in-person education").

Many more courts, however, have concluded that COVID-19 tuition refund suits do not implicate the educational malpractice doctrine.  In Rhodes v. Embry-Riddle Aeronautical Univ., for example, the plaintiff sued his university for breach of contract and unjust enrichment, among other claims, after it closed its facilities and transitioned all classes from in-person to remote instruction in response to the pandemic.  Rhodes, 2021 WL 140708, at *1.  The defendant argued that the theory underlying the plaintiff's claims—"that the temporary transition to an online learning format is inferior to the in-person instruction he previously received"—was not cognizable under the educational malpractice doctrine.  Id. at *4.  The district court disagreed, concluding that plaintiff's claims were not for educational malpractice because "the essence of [his] claims is that he contracted for in-person classes and received online classes instead—a paradigmatic contract claim."  Id.  The court stated that resolution of the plaintiff's claims would not require the court to examine the educational value or academic adequacy of the online instruction provided by the university.  Id.

More recently, in a case in this district, Judge Dooley rejected the educational malpractice doctrine's applicability to a COVID-19 tuition reimbursement suit. Metzner v. Quinnipiac University, No. 3:20-CV-00784 (KAD), 2021 WL 1146922 (D. Conn. Mar. 25, 2021) (concluding that "the educational malpractice doctrine [is] inapposite to the theory of liability alleged here").

Numerous other courts analyzing similar claims have reached a similar conclusion. See, e.g., Hiatt v. Brigham Young Univ., No. 1:20-CV-00100 (TS), 2021 WL 66298, at *3 (D. Utah Jan. 7, 2021) ("Plaintiff is not asking the Court to interfere in BYU's academic or pedagogical choices by requiring BYU to provide in-person education or change its methods of education.  Rather, Plaintiff is asking for a refund of tuition and/or mandatory fees for the breach of contract alleged.  The requested relief does not require the Court to ask BYU to change its operations or otherwise interfere in BYU's academic decisions, so this argument does not support granting the Motion."); Oyoque v. DePaul Univ., No. 20 C 3431, 2021 WL 679231, at *2 (N.D. Ill. Feb. 21, 2021) ("Though portions of the plaintiffs' allegations can be read as talking about the value of online instruction, at its core the complaint's focus is breach of contract— whether DePaul provided the specific services it allegedly promised."); Hassan v. Fordham Univ., No. 20-CV-3265 (KMW), 2021 WL 293255, at *3 (S.D.N.Y. Jan. 28, 2021) ("The Court holds that Plaintiff's claims are not barred by the educational malpractice doctrine, because they are sufficiently grounded in whether an alleged promise for educational services was made and breached."); In re Columbia Tuition Refund Action, No. 20-CV-3208 (JMF), 2021 WL 790638, at *6 & n.5 (S.D.N.Y. Feb. 26, 2021) ("The Court therefore joins the majority of district courts around the country that

have declined to hold, at least on a motion to dismiss (or judgment on the pleadings), that claims arising from universities' adoption of online instruction in response to the COVID-19 pandemic are barred under the educational malpractice doctrine.").

The court agrees with the weight of authority on this question and, at this stage of the case, concludes that Michel's claims do not implicate the educational malpractice doctrine. Michel has not, as Yale argues, challenged the adequacy of the online instruction he received. That view rests upon a fundamental error of reasoning— namely, it mistakes a relative property for an absolute property. It does not follow that, because Michel has alleged the online instruction he received was not as good as the in-person education he paid for (relative), Michel has alleged the online instruction he received was inadequate (absolute).[5] The essence of Michel's claims is that Yale promised, and failed, to provide in-person educational services and to refund his tuition and fees in the event those services could not be provided. This is "a paradigmatic contract claim," Rhodes, 2021 WL 140708, at *4, and it does not require the court to "defin[e] what constitutes a reasonable educational program and . . . decid[e] whether that standard has been breached" by the remote educational experience provided by Yale. Gupta, 239 Conn. at 591-92. Further, the court reads Michel's focus on the difference in "value" between in-person and online education as being "limited to alleging damages from the defendant's alleged breach of contract, not an allegation that any decreased value constitutes the breach of contract." Oyoque, 2021 WL 679231, at *2 (emphasis in original); see also Metzner, 2021 WL 1146922, *8 (emphasizing that

---

[5] By way of analogy, it can be said that the second tallest person on Earth is not as tall as the first. That is not the same as saying the second tallest person on Earth is not tall.

Gupta's standard focused not on "the nature of damages" but rather on "the theory of liability alleged"); Hassan, 2021 WL 293255, at *4 ("Because these allegations primarily would impact the damages element of Plaintiff's contract claim, the Court is not persuaded that they form the "essence" of the Complaint, such that Plaintiff's claims should be barred entirely at this stage."). In sum, the court concludes that the educational malpractice doctrine does not bar Michel's claims.

B.   Breach of Contract[6]

"The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages."

---

[6] In addition to the grounds for dismissal discussed below, the court notes here that Michel's breach of contract claim fails for an arguably more fundamental reason. Namely, he has failed to allege that any of the contract-forming documents relied upon in the Amended Complaint even apply to him. This is because he has failed to allege that he is an undergraduate student.

The Amended Complaint merely alleges that Michel is a "student" at Yale, see Am. Compl. ¶¶ 1, 18, and never specifies whether he is an undergraduate or graduate student. While it might appear that Michel's focus on undergraduate tuition, id. ¶ 4, undergraduate courses, id. ¶ 22, undergraduate policies and regulations, id. ¶¶ 23 n.3, 26 n.8, and undergraduate housing, id. ¶ 25 & n.7, permits the inference that he himself is an undergraduate, that is not the case. Michel relies on these allegations in seeking to represent a class of both undergraduate and graduate students at the University. See id. ¶ 51; see also Opposition at 18. The court therefore cannot infer that these undergraduate-focused allegations are meant to support the claims of only undergraduate students, with Michel being one of them. Moreover, Michel also attempts to support his claims with allegations concerning the price of a graduate program at Yale, id. ¶ 46, and a faculty handbook applicable to both undergraduate and graduate programs, see id. ¶ 24 & n.4; see also Opposition at 19-20 (Doc. No. 46).

The court thus reads the Amended Complaint as bringing claims on behalf of a putative class consisting of both undergraduate and graduate students and cannot discern, from the face of the Amended Complaint, to which set of students Michel belongs. This deficiency is, in and of itself, fatal to the Amended Complaint. Without the basic information of whether Michel was an undergraduate or graduate student, the court cannot know whether the Amended Complaint's alleged promise of an in-person educational experience for undergraduate students applies to him.

However, because the Amended Complaint alleges that undergraduate students at Yale were promised an in-person educational experience, see Am. Compl. ¶¶ 4, 22, 25, the court assumes, for the purposes of the following analysis, that Michel is an undergraduate student and analyzes the undergraduate claim for breach of contract. To the extent that Michel asserts a breach of contract claim on behalf of graduate students, that claim is dismissed because Michel has failed to make any allegations regarding any particular educational experience promised to graduate students. Michel may replead claims on behalf of graduate students in a second amended complaint if he has a basis to do so.

Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 311 Conn. 282, 291

(2014).  In Connecticut,

> the basic legal relation between a student and a private university or college is contractual in nature.  There seems to be no dissent from the proposition that the catalogues, bulletins, circulars, and regulations of the institution determine the contractual relationship between the student and the educational institution.  A court that is asked to enforce an asserted contract between a student and his university must examine the oral and written expressions of the parties in light of the policies and customs of the particular institution.  Because a student bases his or her decision to attend a college or university, in significant part, on the documents received concerning core matters, such as faculty, curriculum, requirements, costs, facilities and special programs, application of contract principles based on these documents and other express or implied promises, consistent with the limitations expressed in Gupta . . . , appears sound.

Burns v. Quinnipiac Univ., 120 Conn. App. 311, 320-21 (2010) (brackets and ellipses

omitted) (quoting Johnson v. Schmitz, 119 F. Supp. 2d 90, 93 (D. Conn. 2000)).  In view

of these principles, the court concludes that Michel has failed to state a claim for breach

of contract, for the following reasons.

> 1.    Yale's Transition to Online Education

As an initial matter, the court notes that Michel alleges two separate contract

breaches.  First, Michel alleges that Yale agreed to provide him an in-person education

and breached that agreement by not providing it the final five weeks of the semester.[7]

See Am. Compl. ¶¶ 64-65.  He points to various documents and publications which he

alleges constitute Yale's promise.  See, e.g., id. ¶ 22 (alleging that each class in Yale's

---

[7] Michel maintains that he does not challenge Yale's decision to move classes online, see Opposition at 3, but that contention cannot be squared with the allegations in the Amended Complaint, which characterize Yale's switch to online instruction as a breach of contract.  See Am. Compl. ¶ 64 ("Yale has failed to provide the contracted-for services." (emphasis added)); id. ¶ 65 (alleging that "Yale's breach" "result[ed]" in "deprivation of the education, experience, and services [Michel was] promised"); Opposition at 12 (asserting that "Yale promised an in-person education" but "did not [perform]").

course catalogue specifies the physical classroom in which the course will be held); id. ¶ 24 (alleging that Yale's Residential Colleges website promises a "singular" in-person experience for undergraduate students).

However, Michel also relies on a provision of Yale's Undergraduate Regulations (hereinafter, "Suspension Provision") that totally undercuts his claim. The Suspension Provision, as set forth in the Amended Complaint, provides:

> Temporary Suspension of University Operations. In the unlikely event that public health or other significant safety or security concerns cause the University temporarily to suspend University programs and operations, the University will make arrangements for appropriate refunds, consistent with the principles enunciated in these Regulations, as may in its judgment be warranted in light of all the circumstances of the suspension and consistent with applicable law and regulations. <u>The decision to suspend programs shall be made at the discretion and judgment of the University.</u>[8]

Am. Compl. ¶ 26 (quoting Yale University, Yale College Undergraduate Regulations 2019-2020 (last visited July 6, 2021), http://catalog.yale.edu/archive/2019-2020/undergraduate-regulations/regulations/financial-services/) (emphasis added).

Plainly, the Suspension Provision explicitly reserves Yale's right to temporarily suspend—at its "discretion and judgment"—its operations in response to emergencies. In so doing, it specifically cites "public health" concerns as being among those exigencies that might require the suspension of operations. Thus, Yale's decision to suspend in-person education in light of the COVID-19 pandemic represents an exercise of authority expressly reserved to the University, and the exercise of that authority cannot constitute a breach. See Crista v. Drew Univ., Civ. No. 21-00249 (KM) (ESK),

---

[8] Michel argues that this provision applies because he has alleged that Yale suspended its operations by "ceas[ing] in-person instruction and clos[ing] its campus." Opposition at 9 (citing Am. Compl. ¶¶ 6, 30-31). The court assumes that the provision is applicable.

2021 WL 1422935, at *8 (D.N.J. Apr. 14, 2021) ("If, viewed in contractual terms, the [plaintiffs] paid the University tuition in exchange for an education which the University expressly provided that it could modify, then the [plaintiffs] have no claim of breach based on the University's having provided such a modified education."), reconsideration denied sub nom. Dougherty v. Univ., 2021 WL 2310094 (D.N.J. June 7, 2021); see also Romankow v. New York Univ., No. 20 CIV. 4616 (GBD), 2021 WL 1565616, at *4 (S.D.N.Y. Apr. 21, 2021) (concluding that a disclaimer in the school's bulletin made "clear that NYU expressly reserved the right to change, relocate, and/or modify its course offerings"); Smith v. Univ. of Pennsylvania, No. CV 20-2086, 2021 WL 1539493, at *7 (E.D. Pa. Apr. 20, 2021) ("Penn retained [through its 'Suspension of Normal Operations' provision] the right to modify and cancel classes if the circumstances called for it, further underscoring the lack of a guarantee of in-person instruction.").

The court concludes that Michel has failed to plausibly allege that Yale breached an agreement to provide him an in-person education. Accordingly, this breach of contract claim is dismissed.

### 2. Yale's Decision Not to Refund Tuition and Fees

Second, Michel alleges that Yale agreed to provide a refund if a pandemic forced the University to suspend operations, and breached that agreement by not partially refunding his tuition and fees. See Am Compl. ¶ 26, 64; see also Opposition at 8. Here again, Michel relies on the Suspension Provision in Yale's Undergraduate Regulations by emphasizing its language stating that "[i]In the unlikely event that public health . . . concerns cause the University temporarily to suspend University programs and operations, the University will make arrangements for appropriate refunds, consistent

15

with the principles enunciated in these Regulations, as may in its judgment be warranted." Opposition at 8 (quoting Am. Compl. ¶ 26).

Yale argues that the Suspension Provision is inapplicable because the University did not "suspend" its operations, it modified them. See Motion at 15; Reply at 5. However, Michel alleges that, for five weeks, Yale ceased in-person instruction and closed its campus to students. Am. Compl. ¶¶ 6, 30-31. The court cannot conclude, as a matter of law, that these actions did not constitute a "suspension" of operations within the meaning of the Undergraduate Regulations.

Michel's breach of contract claim on this score fails for a different reason, however. As with the decision to suspend operations, the provision Michel relies upon expressly commits the decision of whether to issue a refund to the University's discretion. Am. Compl. ¶ 26 ("[T]he University will make arrangements for appropriate refunds . . . as may in its judgment be warranted."). The court reads the Amended Complaint to allege that the way in which Yale exercised its discretion under this provision breached the implied covenant of good faith and fair dealing. See Am. Compl. ¶ 26 (stating that Yale's "promise . . . must be performed and interpreted in good faith").

"To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (2004); see also 23 Williston on Contracts § 63:22 (4th ed. 2018) ("[A]s long as the discretion is exercised as permitted under the contract, and without evident bad faith motive or malice, its exercise cannot be a breach of the more general implied promise

16

of good faith and fair dealing."). Establishing bad faith generally requires "both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Gabriel v. Liberty Mut. Fire Ins. Co., No. 3:14-CV-01435 (VAB), 2017 WL 6731713, at *9 (D. Conn. Dec. 29, 2017) (quoting Habetz v. Condon, 224 Conn. 231, 237 (1992)). "Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. [I]t contemplates a state of mind affirmatively operating with furtive design or ill will." Miller Auto. Corp. v. Jaguar Land Rover N. Am., L.L.C., No. 3:09-CV-1291 EBB, 2010 WL 3417975, at *4 (D. Conn. Aug. 25, 2010) (alteration, emphasis, and ellipses omitted) (quoting Buckman v. People Express, Inc., 205 Conn. 166, 171 (1987)).

The court concludes that Michel has failed to allege facts plausibly showing that Yale's decision not to refund tuition and fees was made in bad faith. Michel alleges that Yale "failed to apportion the burden [of the pandemic] in an equitable manner." Am. Compl. ¶ 8. That may very well be, but nothing in the Suspension Provision suggests that, in exercising its discretion, Yale was required to even consider, much less ensure, such equitable outcomes. This allegation simply indicates that Michel disagrees with Yale's decision and, at best, supports the inference Yale was negligent or injudicious in exercising its discretion. However, the court cannot infer that Yale acted with "dishonest purpose or moral obliquity" simply because it exercised its discretion in a manner that appears to be economically imbalanced to Michel. See Richards v. Direct Energy Servs., LLC, 246 F. Supp. 3d 538, 558 (D. Conn. 2017) (quoting Wilson v. Amerada

Hess Corp., 168 N.J. 236, 251 (2001) ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance.")), aff'd, 915 F.3d 88 (2d Cir. 2019); Liston-Smith v. CSAA Fire & Cas. Ins. Co., No. 3:16-CV-00510 (JCH), 2016 WL 6246300, at *2 (D. Conn. Oct. 25, 2016) ("Bad faith requires more than a dispute over the discretionary application or interpretation of a contract term." (quoting Celentano v. Oaks Condominium Assn., 265 Conn. 579 (2003)).

Michel further alleges that, by not issuing a partial refund, Yale is "attempting to pass off [the] substitute educational experience" provided as being equivalent in value to the one for which Michel paid, id. ¶¶ 35-36, 50. While the language used in the Amended Complaint does suggest some sort of dishonest intent ("attempting to pass off"), this is a conclusory assertion, not a factual allegation. The court cannot, and does not, draw the inference that, because Yale exercised its discretion in a manner with which Michel disagrees, some sinister motive was at play.

Michel has failed to state a plausible claim that Yale breached its duty of good faith and fair dealing by exercising its discretion in bad faith. Accordingly, this breach of contract claim is dismissed without prejudice to refiling.

> C.   Unjust Enrichment

In the alternative to his breach of contract claims, Michel brings a claim for unjust enrichment. "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." Town of New Hartford v. Connecticut Res. Recovery Auth., 291 Conn. 433, 451 (2009). "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the

defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."  Id. at 451-52.

Michel alleges that he conferred a benefit on Yale by paying tuition and fees for the Spring 2020 semester.  Am. Compl. ¶¶ 69, 70.  He further alleges that, for the final five weeks of the semester, Yale provided an allegedly less valuable online education instead of the allegedly higher value in-person education for which he paid, and did not refund any of the monies paid for services it did not provide.  Id. ¶¶ 6, 30-31, 71-73.  As a result, Michel has, to his detriment, allegedly paid money in excess of what he received.  Id. ¶¶ 73, 75.

Yale argues that Michel cannot maintain an unjust enrichment claim because he has alleged that there is an enforceable contract between the parties.  Mot. to Dismiss at 23.  However, Michel ostensibly brings his unjust enrichment claim in the alternative, which is specifically permitted by the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 8(d)(2).  Moreover, Yale disputes the existence of a contract to provide Michel an in-person education or to provide a refund if such an education is not possible.  Mot. to Dismiss at 14-15.  Thus, dismissal of Michel's unjust enrichment claim merely on the ground that he has alleged an enforceable contract would be premature at this stage. See Metzner, 2021 WL 1146922, at *10 ("[I]n light of the parties' dispute as to the existence of an enforceable contract, dismissal of the Plaintiffs' unjust enrichment claim is inappropriate at this juncture."); Chong, 2020 WL 7338499, at *4 (same); Bergeron v. Rochester Inst. of Tech., No. 20-CV-6283 (CJS), 2020 WL 7486682, at *9 (W.D.N.Y. Dec. 18, 2020) (same).

Yale also argues, however, that Michel's unjust enrichment claim cannot survive because it expressly incorporates his breach of contract claim.  Mot. to Dismiss at 23; see also Reply at 8.  On this point, the court agrees.

"The lack of a remedy under a contract is a precondition to recovery based on unjust enrichment."  Ravski v. Connecticut State Med. Soc., IPA, Inc., No. X01CV044000582S, 2005 WL 469300, at *5 (Conn. Super. Ct. Jan. 26, 2005).  Thus, under Connecticut law, "[a] party may properly plead an unjust enrichment claim in the alternative to a breach of contract claim, but it cannot be accomplished by the express incorporation of a claim of a breach of contract."  Marjanovic v. Naugatuck Valley Women's Health Specialists, P.C., No. UWYCV146022762S, 2015 WL 3519101, at *5 (Conn. Super. Ct. May 7, 2015) (quoting Darsten Techs. v. Golden Compass, Inc., No. CV136043132S, 2014 WL 2853805, at *3 (Conn. Super. Ct. May 16, 2014)).

Here, Michel has brought a claim for unjust enrichment while alleging, in that same count, the existence of a contract and the breach thereof.  See Am. Compl. ¶ 67 (alleging in unjust enrichment count that "Plaintiff restates, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this [Amended] Complaint as if fully set forth herein."); id. ¶¶ 61, 64 (alleging in breach of contract count that Michel "entered into a binding contract with Yale" and that Yale has "not performed under the contract").  "[T]his is not alternative pleading, but rather is internally and legally inconsistent within the count itself."  Marjanovic, 2015 WL 3519101, at *5 (quoting Darsten, 2014 WL 2853805, at *3).  Michel has therefore failed to assert a distinct, alternative cause of action.  Marjanovic, 2015 WL 3519101, at *5; see also

Accordingly, the court dismisses Michel's unjust enrichment claim without prejudice to refiling.

D.      CUTPA

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).  An act or practice is deceptive if three elements are satisfied: "First, there must be a representation, omission, or other practice likely to mislead consumers.  Second, the consumers must interpret the message reasonably under the circumstances.  Third, the misleading representation, omission, or practice must be material—that is, likely to affect consumer decisions or conduct." Cadco, Ltd. v. Doctor's Assocs., Inc., 188 Conn. App. 122, 142 (2019) (quoting Caldor, Inc. v. Heslin, 215 Conn. 590, 597 (1990), cert. denied, 498 U.S. 1088 (1991)).  "[A] party need not prove an intent to deceive to prevail under CUTPA." Cadco, Ltd., 188 Conn. App. at 142 (quoting Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 106 (1992)).

Michel alleges that Yale engaged in deceptive practices in violation of CUTPA "by falsely representing and passing off to Plaintiff and Class members that online education has the same value as in-person education."  Am. Compl. ¶ 79.  Michel further alleges that "Yale's representations as to the quality and value of its online classes as compared to in-person education had the tendency to mislead," and that Yale intended for students to rely on the University's misleading representations.  Id. ¶¶ 80, 81.

This claim is unfounded.  The Amended Complaint does not identify a single representation or omission that Yale made regarding the value of the online educational experience it provided in light of the pandemic.  Certainly, Michel makes no factual

allegations that support his conclusory assertion that Yale "falsely represent[ed] and pass[ed] off" that its online education "has same value as in-person education." Id. ¶ 79. The court reads the Amended Complaint to suggest that Yale's decision not to partially refund tuition and fees constitutes a representation about the relative value of online and in-person education. See id. ¶¶ 35-36 ("[I]n [refusing to refund tuition and related expenses], Yale is . . . attempting to pass off this substitute educational experience as the same as or just as good as full participation in the university's academic life."). This framing of Yale's decision is conclusory and without basis. Michel offers no support for the proposition that a university's decision not to take a certain discretionary action may constitute a misleading representation that satisfies the first element of a deceptive practices CUTPA claim.

The court concludes that Michel has failed to state a plausible claim for relief under CUTPA. Accordingly, this claim is dismissed without prejudice to refiling.

E.   Michel's Motion for Leave to File a Sur-Reply Brief

Finally, the court denies Michel's Motion for Leave to File Sur-Reply Brief, or in the Alternative, to Strike Defendant's Reply ("Mot. for Leave to File Sur-Reply") (Doc. No. 55). In its Reply to Michel's Opposition, Yale argued that Michel's claims on behalf of graduate students should be dismissed because Michel is an undergraduate and his allegations focus on undergraduate students. Reply (Doc. No. 52) at 10. Michel then moved for leave to file a Sur-Reply, seeking an opportunity to respond to this argument, which Michel contends Yale raised for the first time in its Reply. Mot. for Leave to File Sur-Reply at 1. However, it is clear that Yale raised this very argument in its Motion to Dismiss. Mot. to Dismiss at 27 (arguing that "[Michel's] claims on behalf of non-undergraduate students should be dismissed" because "[he] is an undergraduate" and

his allegations do not "address[ ] anyone other than undergraduates").[9]   Indeed, the court is puzzled, to say the least, by Michel's contention that Yale raised this argument for the first time in its Reply, given that Michel's Opposition responds to—and cites—this argument as it appears in Yale's Motion to Dismiss.  Opposition at 18-21.

The court denies Michel's Motion for Leave to File Sur-Reply.[10]

## V.   CONCLUSION

For the reasons stated above, the court grants Yale's Motion to Dismiss (Doc. No. 41).  Michel's breach of contract, unjust enrichment, and CUTPA claims are dismissed.  The court dismisses the following claims without prejudice: Michel's breach of contract claim on behalf of undergraduates asserting that Yale's decision not to partially refund tuition for the Spring 2020 semester breached the implied covenant of good faith and fair dealing; Michel's unjust enrichment claim; Michel's CUTPA claim; and Michel's breach of contract claim on behalf of graduate students.  Michel may replead these counts, if he is able.  Michel's claim for breach of contract based on Yale's alleged promise to provide in-person education is dismissed with prejudice.

Michel's Motion for Leave to File Sur-Reply (Doc. No. 55) is denied.

---

[9] Yale does not provide a basis for its assertion that Michel is an undergraduate student.  As noted above, the court cannot discern from the Amended Complaint whether Michel is an undergraduate or graduate student.  See supra note 6.

[10] The court does not regard Yale to argue that Michel lacks Article III standing to assert his claims, see Motion at 27; Reply at 10, and any such argument should have been made in a motion pursuant to Federal Rule of Civil Procedure 12(b)(1).  To the extent Yale argues that Michel lacks class standing to assert claims on behalf of graduate students, the court has not considered or addressed that argument here.  If Michel repleads his claims and subsequently reaches the class certification stage, the court will take up any arguments regarding class standing at that time.  Petrosino v. Stearn's Prods., Inc., No. 16-CV-7735 (NSR), 2018 WL 1614349, at *5 (S.D.N.Y. Mar. 30, 2018) (citing cases) (deferring consideration of the class standing question to the class certification stage).

23

**SO ORDERED.**

Dated at New Haven, Connecticut this 7th day of July 2021.

/s/  Janet C. Hall
Janet C. Hall
United States District Judge