## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JONATHAN MICHEL, on behalf of himself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 3:20-cv-01080-JCH** |
| **v.** | ) ) | **SECOND AMENDED CLASS** |
| | ) ) | **ACTION COMPLAINT AND** |
| | ) | **DEMAND FOR JURY TRIAL** |
| **YALE UNIVERSITY,** | ) ) | |
| **Defendant.** | ) | |

Plaintiff Jonathan Michel brings this action on behalf of himself and all others similarly situated against Defendant Yale University, and alleges upon personal knowledge as to himself, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, as follows:

### I.      NATURE OF THE CASE

1.      Yale is one of the most prestigious private universities in the world.

2.      On March 10, 2020, Yale announced that it was canceling in-person classes and other in-person university services due to the coronavirus ("COVID-19") pandemic.

3.      Although Yale has canceled its in-person classes and services for almost three semesters (to date), it continues to demand students like Plaintiff pay for the on-campus and in-person educational services it has promised but ceased to provide.

4.      Students like Michel are thus put in an inequitable bind.  Having accepted Yale's offer of admission and having committed to attend Yale's multi-year program, to the exclusion of other universities and educational opportunities, Plaintiff has in effect no recourse when Yale materially and unilaterally changed its program with virtually no notice.

1

5.     Yale has thus forced students like Plaintiff into a Hobson's choice – either overpay for an online education (that they did not sign up for) priced as an in-person education, or disrupt the entire trajectory of their professional and educational careers, to their detriment.

6.     While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, Yale has failed to apportion the burden in an equitable manner and had taken financial advantage of students like Plaintiff.

7.     As a result, Defendant has violated common law and principles of justice, financially harming Plaintiff and the other undergraduate and graduate students that he seeks to represent.

## II.     JURISDICTION AND VENUE

8.     This Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Yale is headquartered in this district.

10.     This Court has personal jurisdiction over Yale because Yale is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because Yale conducts substantial business in this district.

### III.    PARTIES

11.    Plaintiff Jonathan Michel is a citizen and resident of the State of Ohio.  Plaintiff Michel was enrolled as a full-time undergraduate student for the Spring 2020 academic semester at Yale College and has remained enrolled in subsequent semesters.

12.    Defendant Yale University is a private Ivy League educational institution that offers programs at fourteen constituent schools. Yale had a total enrollment of approximately 13,609 students at the start of the Fall 2019 semester. As of June 2020, Yale reportedly had an endowment of $31.2 billion.

### IV.    FACTUAL ALLEGATIONS

13.    From day one, students like Plaintiff expect that Yale will provide an in-person and on-campus educational experience (as it had historically provided) and ready access to physical resources and school facilities such as libraries, laboratories, study halls, gyms, and classrooms.

14.    Indeed, this is how education has taken place at Yale for decades if not centuries. It is also the education and experience Yale promises to Plaintiff and other Class members.

15.    For each class at each of its undergraduate and graduate schools, Yale promised to provide an in-person education as described in the course catalog and course syllabus, including the time and physical location of the in-person instruction. Yale's other materials further promised an in-person education. An example of such promises for each school is attached as **Exhibit 1**.

16.    Yale prohibits changes in course formats unless they are pre-reviewed by the Course of Study Committee. As Yale promises:[1]

---

[1]    Proposals for New Courses and for Changes in Existing Courses, Handbook for Instructors of Undergraduates in Yale College 2020-2021, *available at* http://catalog.yale.edu/handbook-instructors-undergraduates-yale-college/courses/proposals-new-changes-existing/ (last viewed 9/22/2020).  *See also* Proposals for New Courses and for

An existing course that undergoes a significant change must be reviewed by the Course of Study Committee. All other course changes are reviewed by the University Registrar's Office before they are published in Yale Course Search. All changes are submitted using the same CIM form used to submit new course proposals.

The Course of Study Committee must review an existing course if:

The course format changes. For example, a course that was originally approved by the CSC with a lecture format (with a standard lecture time pattern and required work appropriate for a lecture course) that is changing to a seminar course (with limited enrollment, a standard seminar meeting time, and a different pattern of work expected of the students) must be resubmitted to the committee. Conversely, a seminar becoming a lecture course must also be resubmitted.

17.     Upon admission, Yale promised undergraduate students, including Plaintiff, a singular experience through its "Residential Colleges."[2]

- "Before arriving on campus, each first-year student is randomly assigned to one of fourteen residential colleges, giving Yalies a built-in community from the moment they arrive."

- "The Residential College housing system is at the heart of the Yale experience."

- "Far more than just dormitories, Yale's residential colleges serve as a home away from home for students. Each college has its own library, gym, dining hall, and activity spaces – from movie theatres and recording studios to basketball courts and printing presses – all housed in distinctive, stunning buildings that center around grassy courtyards."

- "The colleges provide an exceptional opportunity to meet and learn from students with different interests – people students might not otherwise encounter in their courses or extracurricular activities. Many students form their closest and most enduring friendships through their college, though

---

Changes in Existing Courses, Handbook for Instructors of Undergraduates in Yale College 2019-2020, *available at* http://web.archive.org/web/20191221132940/http://catalog.yale.edu/handbook-instructors-undergraduates-yale-college/courses/proposals-new-changes-existing/.

[2]     Yale Residential Colleges, *available at* https://admissions.yale.edu/residential-colleges?_ga=2.122352719.515148827.1599573288-535388142.1599573287 (last viewed October 13, 2020).

students can choose to engage in residential college life as much as they like."

- "The colleges also bring together faculty and students to form an integrated support system. Each college hosts guest speakers, fellowships, and cultural events. With programs of formal advising, seminars, and activities that encourage students' extracurricular interests, the colleges create a dynamic bridge between academic and social life."

18.   Yale's description of the Residential College system makes it plain that its offered educational experience is not just about classes – it's about having on-campus and in-person intimate access to speakers, advisors, faculty, brilliant students with diverse interests, and also easy access to libraries, gyms, dining halls, lounges and other campus facilities and resources.

19.   Yale also has not historically held itself out as an online school either for undergraduate or graduate admissions.

20.   To the contrary, Yale has expressly promised students like Plaintiff in-person instruction.

21.   Yale's Faculty Handbook states the faculty expectations for all schools, both graduate and undergraduate. The Faculty Handbook states:

- "Faculty members are expected to remain on campus and to teach during all semesters when not on an approved leave."[3]

- "Members of the teaching or research faculty are expected to meet their professional and institutional commitments at Yale on a regular basis throughout the academic year. For full-time teaching faculty this includes being on campus most days of the work week, except for holidays and recess time, in order to be available to advise students …"[4]

---

[3]   Yale University Faculty Handbook at 128, *available at* https://provost.yale.edu/sites/default/files/files/Faculty%20Handbook_8-22-19.pdf (last viewed September 22, 2020).

[4]   *Id.* at 160.

- "All teaching faculty must remain on campus during reading and examination periods."[5]

22.     Plaintiff Michel accepted Yale's offer of admission and is currently enrolled in a four-year undergraduate program at Yale College.

23.     Plaintiff has fully performed his side of the bargain. Plaintiff paid Yale the amounts it requested for tuition and fees for the Spring 2020, Fall 2020, and Spring 2021 semesters.

24.     There was nothing unusual about this.  Like generations of students before Plaintiff, Yale promised an in-person educational experience on its New Haven campus to every student and every Class member who accepted Yale's offer of admission and paid Yale, or causes it to be paid, tuition and fees.

25.     On March 10, 2020, while Plaintiff and other students were on spring recess, Yale announced that due to COVID-19 it was moving classes and all other education activities and services online until at least April 5, 2020 and asked Plaintiff and other students away on spring break not to return to campus.

26.     Yale subsequently moved all or substantially all classes, activities and services online for the Spring 2020 and Summer semesters.

27.     Yale moved substantially all classes, activities, and services online for the Fall 2020 and Spring 2021 semesters. Whether and when Yale will resume in-person education remains unknown.

28.     These announcements were abrupt. The March 2020 Yale announcement gave students no notice at all.  A July 2020 Yale announcement that substantially all of the Fall 2020 classes would be taught online, and that on-campus life would be drastically reduced for the

---

[5]     *Id*.

foreseeable future, gave students less than 60-days' notice before the beginning of the Fall 2020 semester.

29.    Since college application and attendance decisions are made many months in advance, these Yale announcements gave students such as Plaintiff no time to make alternative arrangements, such as applying to another school or program or to at least compare the online offerings of other prestigious universities during the pandemic.

30.    Nor could Plaintiff and other Class members, as a practical matter, change their academic plans without significant delay, cost, and other consequential injuries.

31.    For the 2019-2020 academic year, Yale calculated tuition, fees, room and board and other expenses at approximately $72,100 annually for an in-person undergraduate educational experience. For the 2020-2021 academic year, Yale increased its price to $74,900. Approximately $55,000-$57,000 of this price-tag is for tuition alone.[6]

32.    Yale charges tens of thousands of dollars in tuition alone for every undergraduate program and every graduate program.[7] REDACTED
REDACTED .[8]

33.    Plaintiff paid these tuition and fees relying upon and expecting the complete in-person and on-campus undergraduate educational experience Yale promised.

---

[6]    *See* https://news.yale.edu/2020/02/24/yale-announces-term-bill-2020-2021-plus-expanded-financial-aid (visited July 26, 2021).

[7]    **Exhibit 2** lists the tuition Yale charges for all its schools.

[8]    REDACTED
REDACTED
REDACTED
REDACTED

34.     Yale did not provide what was promised, canceling its in-person classes, services, and activities in all its graduate and undergraduate schools.

35.     Other colleges and universities charge students far less than $72,100-$74,900 for an online educational experience. Indeed, even other prestigious colleges and universities charged far less in tuition for an online educational experience both prior to and after March 2020.

36.     For example, according to a publication of the University of Illinois at Urbana-Champaign the average price for online college courses in 2019 was from $100 to $400 per credit hour. *See* https://online.illinois.edu/articles/online-learning/item/2019/10/22/5-benefits-of-online-courses-vs.-a-traditional-classroom (visited July 26, 2021).  By comparison, Yale on average charged well over $1,500 per credit hour to undergraduate full-time students for an in-person, on campus education at the same time.

37.     As another example, before the COVID-19 pandemic Johns Hopkins University charged $62,500 for tuition for one year of its two-year in-person MBA program, but charged only $41,175 for the equivalent credits for its online program (a 33% discount for the online program). Johns   Hopkins   University   Carey   Business   School,   "Tuition   and   fees,"   at https://carey.jhu.edu/programs/admissions/how-to-apply/tuition-fees (visited May 27, 2020).

38.     Even Yale has acknowledged the difference between online education and in-person educational pricing.  Yale charged less for online classes prior to March 2020. For example, for its Women's Leadership program through the School of Management, Yale charged $7,000 for in-person, on-campus instruction, but charged only $4,950 for the live, online version of the same program (an almost 30% discount), and only $2,800 for the non-live, online version of the same program (a 60% discount).

39.     Even after the COVID-19 pandemic, several universities continued to price online education at a discount.  For example, the University of Arizona charges out-of-state residents $28,800 for undergraduate tuition for the 2021 academic year, but only $12,981 for online students (a 45% discount). *See* chart at https://students.asu.edu/standard-cost-attendance (visited July 26, 2021).

40.     Although Yale moved its educational offerings and activities online after March 2020, and could not provide Plaintiff and the Class the complete in-person and on-campus educational experience promised (through at least the end of the 2020-2021 academic year) due to COVID-19, it still charged students the full in-person prices for tuition and fees.

41.     Yale refused tuition refunds and refused to lower its tuition like some of its competitor universities, such as Princeton University and Georgetown University (both of which offered a 10% reduction in their tuitions), while it shifted to an online educational experience.

42.     As a result of the closure of Yale's campuses and facilities, Yale failed to deliver the educational services, activities, facilities, access and/or opportunities for which Plaintiff and the putative Class paid for, either directly or through a third-party on their behalf, and which they reasonably expected based on Yale's representations and pre-pandemic conduct.

43.     Plaintiff and members of the Class paid Yale tuition and fees, relying (at least in part) on its promise of teaching its promised courses in an in-person course format and with in-person facility.

44.     Plaintiff and members of the Class paid Yale tuition and fees also due to its promises of offering a complete on-campus experience.

45. Plaintiff and the Class did not choose to attend and/or pay tuition for an online institution of higher learning, but instead chose to attend Yale's in-person institution and enroll on an in-person basis.

46. At least one academic study found that "[o]nline courses do less to promote academic success than do in person courses." The study found that:

   a) Taking a course online reduced student achievement in that course by .44 points on the traditional four-point grading scale, a full one-third of a standard deviation;

   b) Specifically, students taking the in-person course earned roughly a B- (2.8 GPA) versus a C (2.4 GPA) for students taking an online version of the same course;

   c) Taking a course online also reduces future grades by 0.42 points for courses taken in the same subject area in the following semester;

   d) Taking an online course reduced the probability of the student remaining enrolled in the university a year later by over ten percentage points.

Eric P. Bettinger *et al., Virtual Classrooms: How Online College Courses Affect Student Success*, AMERICAN ECONOMIC REVIEW, Vol. 107, No. 9, p. 2857.

47. Because it is widely accepted that online education is not as sought after or desirable, in-person education has a higher market price than online education.

48. Accordingly, the tuition and fees for in-person instruction at Yale are higher than tuition and fees for online classes at Yale, or at other online institutions, as discussed above.

49. Through this lawsuit Plaintiff seeks, for himself and Class members, the difference in market value between the in-person educational experience Yale promised and the online experience it delivered post-pandemic, as well disgorgement and restitution of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for

the diminished market value of online learning, as well as for each subsequent semester, continuing until Yale resumes in-person classes. Plaintiff seeks return of these monetary amounts on behalf of himself and the Class as defined below.

50.     On March 10, 2020, Connecticut Governor Ned Lamont declared that the COVID-19 outbreak created a public health emergency throughout the state. In the days following, additional orders issued by state and local officials limited the size of gatherings and required individuals to maintain at least six feet of physical distance.

51.     Yale's announcements to students confirm that it viewed the legal requirements limiting the size of gatherings and requiring individuals maintain at least six feet of physical distance rendered it "not possible" to provide the in-person classes promised.[9]

52.     If, as Yale believes, performance of its in-person promises were rendered impossible due to the pandemic, Yale's continued performance of the contract between it and its students would be excused. Its insistence of a contractual benefit is therefore unjustified.

53.     Yale contends that it has no contractual obligation to Plaintiff and the Class he seeks to represent to provide in-person education, and no contractual obligation to provide a refund if such an in-person education becomes impossible to provide. *See* ECF 73 at p. 19 ("Yale disputes

---

[9]     *See, e.g.,* March 27, 2020 Update from Graduate School of Arts and Sciences ("Research in the laboratory and field are not possible at this time, and archives and other sources of primary research are inaccessible. **Please rest assured that we will find ways to compensate for lost time, especially if you are a senior student nearing completion of your degree.")** (emphasis in original), *available at* https://gsas.yale.edu/sites/default/files/page-files/message_on_march_27_2020.pdf.

*See also* Yale School of Architecture, June 8, 2020 Updates on COVID-19 ("The use of spaces in Rudolph — particularly classrooms — will be significantly limited by the requirements of social distancing, and therefore it is not possible to teach every class in person even if all students and faculty were able to be in the building."), *available at* https://www.architecture.yale.edu/news/covid-19-updates. *See also id.* ("Proper training for and supervision of shop equipment is not possible under social distancing, so the fabrication shops will be closed, at least through the fall term.").

11

the existence of a contract to provide Michel an in-person education or to provide a refund if such an education is not possible.")

54.     Yale determined that its University policy prohibits providing Plaintiff or Class members any refund or discount for canceling its in-person educational offerings.

55.     Yale has been unjustly benefited by collecting full in-person tuition and fees from Plaintiff and the Class though unable to perform its promises to deliver an on-campus and in-person educational services, to the financial detriment of Plaintiff and the Class.

56.     Plaintiff and the Class attended Yale under the basic assurance that Yale would continue to offer the educational experience that it has traditionally offered to all incoming undergraduate and graduate students, on-campus and in-person, as it has done for hundreds of years, including through the last pandemic.

57.     Plaintiff and the Class, to their detriment, paid full freight at Yale, believing that they would get what they were promised – the full on-campus and in-person educational experience.  They have not gotten the educational experience Yale promised.

58.     When Yale issued materials it intended Plaintiff and other members of the Class to rely upon, such as its promise to provide the courses described in its course catalog, to provide the rich in-person education and experience as promised in its advertisements, admissions letters, and elsewhere, and its promise to not change course formats unless pre-reviewed, Yale did not disclose that it could elect to cancel in-person classes and on-campus access for an entire semester.

59.     In fact, according to its pre-2020 graduate school regulations, Yale lacked the ability to cancel in-person classes and on-campus access on even a *temporary* basis, much less for an entire semester. It instead simply promised to provide the in-person education and experience it advertised.

60.     Yale intended students rely on its promise of in-person classes and on-campus experience. Plaintiff and other class members in fact so relied.

61.     Knowing that Plaintiff and the Class were already committed to educational programs which they could not abandon or switch easily, Yale chose to ignore, to its benefit and to the detriment of Plaintiff and the Class, that online classes and a virtual campus do not have the same market value as the in-person classes and residential campus experience Plaintiff and the Class were promised and relied upon.

## V.      CLASS ACTION ALLEGATIONS

62.     Plaintiff seeks to represent a Class defined as:

> Any and all students enrolled at Yale in the Spring of 2020 in any program other than an exclusively online program and who paid or caused to be paid tuition and/or fees to attend Yale for any semester when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19 (the "Class").

Specifically excluded from the Class are Yale, Yale's officers, directors, trustees and agents, the judge assigned to this action, and any member of the judge's immediate family.

63.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed.

64.     **Numerosity.** The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff at this time, the true number of Class members is known by Yale and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through Yale's websites and social media pages.

65.     **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

a)     whether Yale accepted money from Class members in exchange for the promise to provide in-person and on-campus educational services;

b)     whether Yale provided the services it promised;

c)     whether Class members are entitled to a refund or discount for that portion of the tuition and fees;

d)     whether Yale is liable to Plaintiff and the Class for unjust enrichment and or promissory estoppel.

66.     **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Yale's wrongful conduct as set forth herein. Further, there are no defenses available to Yale that are unique to Plaintiff.

67.     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

68.     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Yale. It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not.

Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

69.      In the alternative, the Class may also be certified because:

a)      the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Yale; and/or

b)      the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c)      Yale has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## <u>COUNT I</u>
### Unjust Enrichment

70.      Plaintiff brings this claim individually and on behalf of the members of the Class against Yale.

71.      Under Connecticut common law, plaintiff seeking a recovery for unjust enrichment must prove: (1) that the defendant was benefited; (2) that the defendant unjustly did not compensate plaintiff for that benefit; and (3) that the defendant's failure was to the plaintiff's detriment. *See Town of New Hartford v. Connecticut Res. Recovery Auth*., 291 Conn. 433, 451-52 (2009).

72.     Plaintiff and members of the Class conferred a benefit on Yale in the form of monies paid for tuition and fees in exchange for certain service and promises. This tuition was intended to cover traditional in-person and on-campus educational services.

73.     Yale benefited financially, voluntarily accepting and retaining the monies Plaintiff and members of the Class paid.

74.     Plaintiff and members of the Class did not pay just for course credits. Plaintiff and members of the Class paid Yale justifiably expecting the services Yale promised, which they did not receive.

75.     Yale unjustly, unfairly and inequitably charged and retained the tuition and fees paid by Plaintiff and the members of the Class, and failed to provide just compensation and/or recompense for the services for which the tuition and fees were collected, to the financial detriment of Plaintiff and the Class.

76.     The online education services Yale substituted for the in-person education for which Plaintiff and Class members paid has a substantially lesser market value, but Yale has nonetheless retained full payment for its part performance, essentially overcharging Plaintiff and the Class for an online educational experience, causing financial harm to Plaintiff and the Class.

77.     Courts in Connecticut have routinely certified unjust enrichment classes. *See KennyNick, LLC v. Standard Petroleum Co.* (Conn. Super. Ct. 2016), *aff'd Standard Petroleum Co. v. Faugno Acquisition, LLC* (Conn. 2018); *Estate of Gardner v. Continental Causalty Co.* (D. Conn. 2016).

78.     It would be unjust and inequitable for Yale to retain benefits in excess of the services it provided, and Yale should be required to restore, return and/or disgorge any tuition, fees and

related expenses equal to the difference in value between the in-person education promised and the online education provided.

## COUNT II
### Promissory Estoppel

79.    Plaintiff brings this claim individually and on behalf of the members of the Class against Yale.

80.    Connecticut law provides that a plaintiff may recover in estoppel where: (1) the defendant did or said something which is intended or calculated to induce a plaintiff to believe in the existence of certain facts and to act upon that belief; (2) and the plaintiff, influenced thereby, change his  position or do something to his  injury which he otherwise would not have done. *See Fischer v. Zollino*, 303 Conn. 661 (2012).

81.    Through its representations and actions, Yale intended to induce Plaintiff and the Class to attend Yale on the assurance and belief that Yale would provide the promised in-person and on-campus educational services.

82.    Plaintiff and the Class were influenced thereby, and accepted Yale's offer of admission in reliance.

83.    In reliance on Yale's promises, Plaintiff and the Class paid, or caused to be paid, the tuition and fee amounts that Yale demanded for the in-person services, to their detriment and financial disadvantage.

84.    Plaintiff expended considerable resources in reliance on Yale's promises of an in-person and on-campus educational experience for the Spring 2020, Fall 2020, and Spring 2021 semesters.

85.    Plaintiff also forewent other opportunities in reliance on Yale's promises of an in-person and on-campus educational experience.

17

86.     Neither Plaintiff nor any Class member sought nor contemplated an online education when they agreed to attend Yale.

87.     Courts have certified estoppel classes where appropriate. *See, e.g., Becher v. Long Island Lighting Co*., 164 F.R.D. 144 (E.D.N.Y. 1996).

88.     Plaintiff and Class members are, accordingly, entitled to reliance damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Yale as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.     For reliance damages in amounts to be determined by the Court and/or jury;

D.     For prejudgment interest on all amounts awarded;

E.     For an order of restitution and all other forms of equitable monetary relief, including disgorgement;

F.     For an order awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit; and

G.     All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: July 29, 2021

Respectfully submitted,

JONATHAN MICHEL, *on behalf of himself and all others similarly situated.*

By:   /s/James A. Francis
James A. Francis (*pro hac vice*)
John Soumilas (*pro hac vice*)
David A. Searles  (*pro hac vice*)
Edward H. Skipton (*pro hac vice*)
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com
eskipton@consumerlawfirm.com

Yvette Golan (*pro hac vice*)
**THE GOLAN FIRM**
529 14th Street Suite 914
Washington, D.C. 20045
T: (866) 298-4150
F: (928) 441-8250
ygolan@tgfirm.com

*Attorneys for Plaintiff*