**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JONATHAN MICHEL, on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | |
| v. | Case No. 3:20-cv-01080-SALM |
| YALE UNIVERSITY, | |
| *Defendant*. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
<u>MOTION TO CERTIFY CLASS</u>**

Oral Argument Requested

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................... 2

III.    LEGAL STANDARD ................................................................................ 15

IV.     ARGUMENT .............................................................................................. 16

        A.      The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied................... 16

                1.      Numerosity............................................................................. 16

                2.      Commonality.......................................................................... 16

                3.      Typicality............................................................................... 17

                4.      Adequacy............................................................................... 18

        B.      The Requirements of FED. R. CIV. P. 23(b)(3) Are Satisfied.............. 19

                1.      Predominance......................................................................... 19

                2.      Superiority.............................................................................. 20

V.      CONCLUSION ........................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Florida Int'l Univ. Bd. of Trustees*,
  Case No. 2021-009869-CA-01 (Miami-Dade Cty. 11th Cir. Dec. 30, 2021)...........................1

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)......................................................................................................20

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)......................................................................................................19

*Arrendondo v. Univ. of La Verne*,
  Case No. 2:20-cv-07665-MCS-RAO (C.D. Cal. Feb. 8, 2022)..................................1

*In re Columbia Univ. Tuition Refund Action*,
  No. 1:20-cv-03208-JMF (ECF 87) (S.D.N.Y. Dec. 3, 2021) ....................................1

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)........................................................................................................20

*Comer v. Cisneros*,
  37 F.3d 775 (2d Cir. 1994)......................................................................................16, 17

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)..........................................................................................16

*Cross v. Univ. of Toledo*,
  2021 Ohio Misc. LEXIS 43 (Ct. Cl. Apr. 26, 2021)..................................................1

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992).........................................................................................18

*General Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982)......................................................................................................17

*Gibson v. Lynn Univ.*,
  2021 WL 1109126 (S.D. Fla. Mar. 23, 2021)............................................................1

*Johnson v. Nextel Commc'ns, Inc.*,
  780 F.3d 128 ................................................................................................................19

*Little v. Grand Canyon Univ.*,
  2022 WL 266726 (D. Az. Jan. 28, 2022)...................................................................1

*Marisol A. v. Giuliani,*
    126 F.3d 372 (2d Cir. 1997)..................................................................15, 16, 17

*Ninivaggi v. Univ. of Delaware,*
    555 F. Supp. 3d 44 (D. Del. 2021)........................................................................3

*Roach v. T.L. Cannon Corp.,*
    778 F.3d 401 (2d Cir. 2015)..........................................................................17, 19

*Rocchio, et al. v. Rutgers, The State Univ. of New Jersey,*
    No. MID-L-003039-20 (N.J. Law Div. Middlesex County, Feb. 4, 2022)...............................1

*Rosado v. Barry Univ.,*
    2021 U.S. Dist. LEXIS 169196 (S.D. Fla. Sep. 7, 2021) ........................................1

*In re Teva Sec. Litig.,*
    2021 WL 872156 (D. Conn. Mar. 9, 2021) ...............................................................20

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016)..............................................................................................19

*In re U.S. Foodservice Inc. Pricing Litig.,*
    729 F.3d 108 (2d Cir. 2013)............................................................................19, 20

*Waitt v. Kent State Univ.,*
    Case No. 2020-00392JD (OH Ct. of Claims, Feb. 11, 2022) ...................................1

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)..............................................................................................16

*Weiman v. Miami Univ.,*
    Case Nos. 2020-00614JD, 2020-00644JD (OH Ct. of Claims, Dec. 13, 2021) ...................1

## FEDERAL RULES

FED. R. CIV. P. 23...............................................................................................1, 15, 20

FED. R. CIV. P. 23(a) ......................................................................................15, 16, 18

FED. R. CIV. P. 23(a)(1)...............................................................................................16

FED. R. CIV. P. 23(a)(2)...............................................................................................16

FED. R. CIV. P. 23(a)(3)...............................................................................................17

FED. R. CIV. P. 23(a)(4)...............................................................................................18

FED. R. CIV. P. 23(b) ...................................................................................................15

Fed. R. Civ. P. 23(b)(3) ...................................................................................15, 18, 19

**OTHER AUTHORITIES**

Dickler, Jessica, *Colleges are slashing tuition to entice students back*, CNBC,
(Oct. 30, 2020), https://www.cnbc.com/2020/10/30/colleges-are-slashing-
tuition-to-entice-students-back.html ......................................................................13

Gutierrez, Marvis & Park, Chris H., *Hopkins announces online-only fall plans
and tuition reduction*, The Johns Hopkins News-Letter, (Aug. 6, 2020)
https://www.jhunewsletter.com/article/2020/08/hopkins-announces-online-
only-fall-plans-and-tuition-reduction..................................................................13

Hanson, Melanie, *Cost of Online Education vs. Traditional Education*,
Educational Data Initiative (Aug. 18, 2021),
https://educationdata.org/cost-of-online-education-vs-traditional-education .........14

Johns Hopkins Carey Business School, *MBA, Master Degree Programs
Tuition and Fees* (Aug. 6, 2020)............................................................................13

Johns Hopkins Carey Business School, *Part Time Flexible MBA Programs*,
(Aug. 2, 2020) (Aug. 2, 2020) ...............................................................................13

Princeton University, *Princeton Announces Plan for Fall 2020, Guidelines for
Undergraduates Returning to Campus*, (July 6, 2020),
https://www.princeton.edu/news/2020/07/06/princeton-announces-plan-fall-
2020-guidelines-undergraduates-returning-campus ..............................................13

U.S. News & World Report, *Colleges Giving Tuition Discounts*, (Jan. 5, 2022),
https://www.usnews.com/education/best-colleges/paying-for-
college/articles/these-colleges-are-giving-tuition-discounts-this-fall;....................13

U.S. News & World Report, *Johns Hopkins University (JHU) - Profile,
Rankings and Data | US News Best Colleges*, https://www.usnews.com/best-
colleges/jhu-2077 ..................................................................................................13

U.S. News and World Report, *Online Bachelor's Degrees and Programs*,
https://www.usnews.com/education/online-education/bachelors ...........................14

Venable, Melissa, *Comparing the Costs of Online vs. On-Campus Programs*,
(Apr. 13, 2021), https://www.bestcolleges.com/blog/comparing-costs-online-
on-campus-programs...............................................................................................14

Yale University, *Existing Courses*, http://catalog.yale.edu/handbook-
instructors-undergraduates-yale-college/courses/proposals-new-changes-
existing/ (last visited Aug. 30, 2022) ......................................................................7

YALE UNIVERSITY, *Faculty Handbook, available at*
https://provost.yale.edu/sites/default/files/files/Faculty%20Handbook_8-22-
19.pdf (last visited Sep. 22, 2020) ........................................................................................9

YALE UNIVERSITY, *Yale announces term bill for 2020-2021, plus expanded*
*financial aid*, https://news.yale.edu/2020/02/24/yale-announces-term-bill-
2020-2021-plus-expanded-financial-aid (last visited Aug. 30, 2022) .....................................11

YALE UNIVERSITY, *Yale College Undergraduate Admissions*,
https://admissions.yale.edu/residential-colleges (last visited Aug. 30, 2022) ...........................6

YALE UNIVERSITY, *Yale endowment earns 40.2% investment return in fiscal 2021*,
https://news.yale.edu/2021/10/14/yale-endowment-earns-402-investment-
return-fiscal-2021 (last visited Aug. 30, 2022) .........................................................................11

Zalanick, Matt, *Who's joining the list of colleges cutting tuition?*, UNIVERSITY
BUSINESS (Aug. 14, 2020), https://universitybusiness.com/colleges-
universities-cut-tuition-fall-semester-covid-online-learning/ ...................................................13

Plaintiff Jonathan Michel moves this Court to certify a class of undergraduate students under FED. R. CIV. P. 23. In support of this motion, he avers as follows:

## I. **INTRODUCTION**

This motion raises one central question: Should Defendant Yale University be allowed to keep the full amount it charged in tuition and fees for in-person instruction during the spring 2020 semester when it did not provide the in-person services that it promised? This question will be answered the same way for Michel and every other student in the proposed class because every student who paid Yale tuition and/or fees for the spring 2020 semester did not get the services promised when the campus shut down in response to the Covid-19 pandemic and transitioned classes and other educational services from in-person to online for all undergraduates. Therefore, class action treatment is not merely appropriate, it is the ideal way to answer questions about the propriety and calculation of refunds to each student, as several courts have already found in similar contexts.[1]

As will be discussed below, each of the requirements of Rule 23 are satisfied in this case. The class is easily identifiable; Yale can readily produce a list of all students who were enrolled for in-person instruction and paid tuition and/or fees for the spring 2020 semester. Plaintiff is a member of the class because he paid tuition and fees to attend Yale during the spring 2020

---

[1]     *See, e.g., Cross v. Univ. of Toledo*, No. 2020-00274JD, 2021 Ohio Misc. LEXIS 43 (Ct. Cl. Apr. 26, 2021) (certifying class); *Waitt v. Kent State Univ.*, Case No. 2020-00392JD (OH Ct. of Claims, Feb. 11, 2022) (same); *Weiman v. Miami Univ.*, Case Nos. 2020-00614JD, 2020-00644JD (OH Ct. of Claims, Dec. 13, 2021) (same); *Arrendondo v. Univ. of La Verne*, Case 2:20-cv-07665-MCS-RAO (C.D. Cal. Feb. 8, 2022) (same); *Little v. Grand Canyon Univ.*, 2022 WL 266726 (D. Az. Jan. 28, 2022) (same); *Alexander v. Florida Int'l Univ. Bd. of Trustees*, Case No. 2021-009869-CA-01 (Miami-Dade Cty. 11th Cir. Dec. 30, 2021) (same); *Rosado v. Barry Univ.*, No. 20-21813-CIV, 2021 U.S. Dist. LEXIS 169196 (S.D. Fla. Sep. 7, 2021) (final approval of class settlement); *Rocchio, et al. v. Rutgers, The State Univ. of New Jersey*, No. MID-L-003039-20 (N.J. Law Div. Middlesex County, Feb. 4, 2022) (same); *In re Columbia Univ. Tuition Refund Action*, No. 1:20-cv-03208-JMF (ECF 87) (S.D.N.Y. Dec. 3, 2021) (order preliminarily approving proposed settlement and provisionally certifying a settlement class). *See also Gibson v. Lynn Univ.*, 2021 WL 1109126 at *2-4 (S.D. Fla. Mar. 23, 2021) (denying motion to strike class allegations in case bringing claims similar to those presented here).

semester. Numerosity is satisfied because thousands of undergraduate students paid Yale tuition and fees to attend the spring 2020 semester at the New Haven campus, and joinder of this number of individuals is impracticable. Commonality is satisfied because this case turns on the same questions for all class members: Yale either reneged on its promises to class members or it did not, and it is either unjust for Yale to retain full tuition and fees for all class members or it is not. Plaintiff's claims are typical of the class because they arise from the same course of conduct as the claims of all other class members and are based on the same theory. Plaintiff is an adequate class representative who has zealously advocated for the class, responded to discovery, sat for his deposition, and has retained experienced counsel to further the interests of the class. The central question regarding the propriety and calculation of any refund that students should receive as a result of Yale's decision to no longer offer in-person instruction for nearly half of the spring 2020 semester predominates over any individual issues that may arise. Finally, a class action is superior to thousands of individual lawsuits.

For these reasons, as explained more fully below, the Court should certify the proposed class, appoint Plaintiff as class representative, and appoint his lawyers as class counsel.

## II.     <u>STATEMENT OF FACTS</u>

The 2019-2020 academic year at Yale began like every other year in its long and storied history — with students moving to New Haven and registering for in-person classes on or near the majestic campus. *See generally* Ex. 1, Salovey Dep., at 18:10-23:4.[2] Michel did the same as he had done from the time of his initial enrollment as an undergraduate in 2018. Ex. 2, Michel Dep., at 228:1-229:23. The campus was promoted on Yale's website, www.Yale.edu, as a vibrant

---

[2]     Exhibits cited herein are attached to the contemporaneously filed Declaration of John Soumilas in Support of Plaintiff's Motion to Certify Class.

community of learning and collaboration. Ex. 3, Dep. Ex. 5; *see also infra* note 7. In President Peter Salovey's words, the campus is a magical place, which he described as "[not being] in Kansas anymore." Ex. 1, Salovey Dep., at 22:6-13.

Access to the New Haven campus comes with a hefty price tag. Yale charged $55,000 per year for tuition and another $125 in fees for the 2019-2020 academic year, as well as $16,600 for room and board to students who needed it. Ex. 4, Dep. Ex. 7; Ex. 5 at YU-0000021607. Yale maintains precise records of all the tuition and fees it has collected from every undergraduate student. *See* Ex. 5 at YU-0000021607. Even after accounting for every penny given in financial aid or scholarships, Yale collected almost ███REDACTED███ from undergraduate students for the spring semester of 2020 alone. *Id.* As Yale's records demonstrate, while many students receive financial aid, the thousands of students included in the putative class paid an already-identified amount to cover Yale's tuition and fees to attend the undergraduate college, known as Yale College. *See* Ex. 5A; Ex. 2, Michel Dep., at 56:3-57:20, 157:15-20; Ex. 1, Salovey Dep., at 37:1-5; 39:10-40:2.

Although the sums collected by Yale (at the beginning of every semester) are large, no formal contract exists between undergraduates and Yale, as is the case with most colleges and universities.[3] Yale's President testified that he has no knowledge of any written document constituting a contract between Yale and its students and has never contemplated having such a contract. Ex. 1, Salovey Dep., at 63:2-17, 64:24-65:9. More specifically, President Salovey confirmed that "there is not a specific contract to provide Michel an in-person education or to provide a refund if such an education is not possible." *Id.* at 67:24-68:2. Similarly, President of

---

[3]    *See Ninivaggi v. Univ. of Delaware*, 555 F. Supp. 3d 44, 47 (D. Del. 2021) (Bibas, Circuit Judge sitting by designation) ("Higher education involves lots of money but surprisingly few express contracts. Students borrow and spend tens if not hundreds of thousands of dollars to go to college. Yet they never sign an agreement of the sort they encounter when downloading an app.").

Global Strategy and Vice Provost for Academic Initiatives for Yale University, Dr. Pericles Lewis, testified that no contract generally exists between Yale and either Plaintiff Michel or Yale students regarding the form of academic instruction or what specifically students will receive in exchange for their tuition. Ex. 6, Lewis Dep., at 34:10-35:18. *See generally* Ex. 1, Salovey Dep., at 63:2-7, 64:24-65:9, 67:24-68:2; Ex. 7, Parndigamage Dep., at 43:20-45:5. This is also confirmed by Plaintiff's testimony, which is that there is no contract between him and Yale addressing the provision of in-person education and access to Yale facilities in the event of a pandemic. Ex. 2, Michel Dep., at 152:4-158:7.[4]

Despite (or due to) the lack of a formal or signed contract, Yale made a set of written, specific promises to undergraduates like Michel that the educational experience at Yale would be in-person, as it had always been historically, and not online:

### The Undergraduate Admissions Offer Letter

Yale's promises to students for an in-person education experience began with its standardized admissions correspondence to admitted students. In these materials, Yale states that

---

[4]    Despite this testimony, it appears that the parties disagree as to whether a contract exists in this case. Yale has asserted an affirmative defense that it has an express contract with students like Michel and that it acted in accordance with that contract. *See* ECF 95 at 12 of 15 (First Defense); *see also* ECF 135-1 at 8. Plaintiff disagrees that any relevant contract was ever formed. *See, e.g.,* Ex. 6, Lewis Dep., at 34:10-35:18; Ex. 1, Salovey Dep., at 63:2-7, 64:24-65:9, 67:24-68:2; Ex. 7, Parndigamage Dep., at 43:20-45:5; Ex. 2, Michel Dep., at 152:4-158:7.

In either case, the issue is common to the class and can be adjudicated on a class wide basis should Yale seek to invoke such a defense on the merits. *See generally* Ex. 7, Parndigamage Dep., at 131:12-159:10 (former lawyer Rule 30(b)(6) witness seeking to articulate such a "defense" in a deposition taken during the final days of discovery).

Yale heavily relies upon the so-called "Suspension Provision" in one of the documents, the Undergraduate Regulations ("URegs"), that it claims forms a contract when cobbled together with other documents made "available" to students on its website. *See* ECF 135 at 5-9. But the URegs are not controlling in the scenario presented here, either as a contract or even as university policy, because Yale did not "suspend" operations, and this its "Suspension Provision" was never triggered. *See* Ex. 1, Salovey Dep., at 75:3-9 ("Q. With your announcement that we see here on Yale 8 on March 10th, 2020, do you believe that Yale College suspended operations? A. No, I do not. Q. Do you agree with the statement that Yale did not suspend operations during the pandemic? A. I believe Yale modified its operations."). No contract or policy/university regulations speak to the impact on tuition or fees in the case of a "modification" in operations, much less to the specific and significant modifications here to move all instruction online.

"[w]ith hundreds of undergraduate organizations on campus, you will find many ways to augment what you learn in the classroom with exceptional extracurricular opportunities." Ex. 8 at YU-0000010380. Yale notes that its students:

> [M]ount over 250 theatrical and musical performances annually, engage in more than 20 political and debating societies across the ideological spectrum, celebrate their identities through dozens of religious or cultural groups, houses, and centers, and compete on nearly 100 varsity, club, and intramural athletic teams.

*Id*. In follow up correspondence, Yale states that it "genuinely hope[s] that your final decision will bring you to New Haven in the fall" and that "[w]e look forward to seeing you on campus this fall!" Ex. 9 at YU-0000010346. That is, in-person and not online. Michel received such an offer from Yale and accepted it, fully expecting a traditional in-person and on-campus educational experience. Ex. 2, Michel Dep., at 251:14-252:24.

**Residential Colleges Materials**

This expectation is immediately solidified for undergraduate like Michel because they are *required*, at least initially, to live on the Yale campus within a "Residential College" as part of their immersed educational experience. Ex. 10 at YU-0000022614 ("[A]ll first-year and second-year students are required to live on campus unless married or at least 21 years old. Living on campus and participating in residential college life is an *essential* part of the educational program of Yale College.") (emphasis added).

President Salovey described the Residential College system as a point of emphasis in Yale's overall educational mission, a place where students have a physical "community" and where they "learn[] from their peers." Ex. 1, Salovey Dep., at 20:13-21:9. In correspondence to students, Yale states that its "unique Residential College system combines the feeling of intimacy at a small college with the opportunities found only at a large research university" and that students

"will have innumerable resources at [their] fingertips from [their] first day on campus, empowering [them] to make an immediate impact[.]" Ex. 8 at YU-0000010380.

On its website, Defendant promises undergraduate students, including Michel, a singular experience through its "Residential Colleges," to wit:

> The Residential College housing system is at the heart of the Yale experience. Before arriving on campus, each first-year student is randomly assigned to one of fourteen residential colleges, giving Yalies a built-in community from the moment they arrive.
>
> * * *
>
> Far more than just dormitories, Yale's residential colleges serve as a home away from home for students. Each college has its own library, gym, dining hall, and activity spaces – from movie theatres and recording studios to basketball courts and printing presses – all housed in distinctive, stunning buildings that center around grassy courtyards.
>
> * * *
>
> The colleges provide an exceptional opportunity to meet and learn from students with different interests – people students might not otherwise encounter in their courses or extracurricular activities. Many students form their closest and most enduring friendships through their college, though students can choose to engage in residential college life as much as they like.
>
> The colleges also bring together faculty and students to form an integrated support system. Each college hosts guest speakers, fellowships, and cultural events. With programs of formal advising, seminars, and activities that encourage students' extracurricular interests, the colleges create a dynamic bridge between academic and social life.

*Residential Colleges | Yale College Undergraduate Admissions*, YALE UNIVERSITY, https://admissions.yale.edu/residential-colleges (last visited Aug. 30, 2022).

Michel initially was enrolled at Davenport College and lived in Welch Hall. Ex. 2, Michel Dep., at 65:21-24.

**Yale Course Catalog**

Further and more specific promises about in-person instruction are made in Yale's Course Catalog once undergraduate students begin registering for classes. Ex. 1, Salovey Dep., at 29:2-30:24 (citing Ex. 11, Dep. Ex. 6 (listing several examples)). The catalog lists specific physical "meeting" (not online) locations, and specific times for classes, where instruction is to take place in-person as it has traditionally for decades and centuries. *Id*. 30:15-24. An example is below:[5]



**Handbook for Instructors of Undergraduates in Yale College**

Yale prohibits changes in course formats unless they are pre-reviewed and approved by the Course of Study Committee. As Yale represents in its Handbook for Instructors of Undergraduates in Yale College:

> An existing course that undergoes a significant change must be reviewed by the Course of Study Committee. All other course changes are reviewed by the University Registrar's Office before they are published in Yale Course Search. All

---

[5]     Yale University Course Search, *available at* https://courses.yale.edu/?srcdb=202003&col=YC (as it appeared August 21, 2020). This Court may take judicial notice of Yale's website. Force v. Facebook, Inc., 934 F.3d 53, 60 n.5 (2d Cir. 2019) (taking judicial notice of defendant's website); O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir. 2007) (ruling that the district court erred in failing to take judicial notice of information found on defendant's website); Munn v. Hotchkiss School, 326 Conn. 540, 600 (2017) (reversing the denial of judicial notice; "federal courts ... routinely take judicial notice ... of the Internet Archive's Wayback Machine as reliable evidence of how a particular website appeared on a particular date") (internal citation omitted).

changes are submitted using the same CIM form used to submit new course proposals.

The Course of Study Committee must review an existing course if:

- The course format changes. For example, a course that was originally approved by the CSC with a lecture format (with a standard lecture time pattern and required work appropriate for a lecture course) that is changing to a seminar course (with limited enrollment, a standard seminar meeting time, and a different pattern of work expected of the students) must be resubmitted to the committee. Conversely, a seminar becoming a lecture course must also be resubmitted.

Handbook for Instructors of Undergraduates in Yale College 2022-2023, Proposals for New Courses and for Changes in *Existing Courses*, YALE UNIVERSITY http://catalog.yale.edu/handbook-instructors-undergraduates-yale-college/courses/proposals-new-changes-existing/ (last visited Aug. 30, 2022).[6] Nothing at the time Michel and other Yale undergraduates paid their bills for the spring 2020 semester even remotely suggested that there would be any "change" to the traditional "format" of courses.

**Yale University Website**

Moreover, in the years leading up to 2020, Yale's website regularly represented the accessibility of the campus, the availability of on-campus events and facilities, and the in-person instruction that Michel and all undergraduates naturally expected as part of their Yale educational experience. *See, e.g.*, Ex. 12 at YU-0000041595 (noting that the Beinecke Rare Book & Manuscript Library "houses the gold pen used by Lincoln to sign the Emancipation Proclamation" circa October 2016), *id*. at YU-0000041606 (highlighting "Beinecke's expanded classrooms [that] provide hi-tech access to its collections" circa October 2017), *id*. at YU-0000041613 (highlighting

---

[6]    *See also Handbook for Instructors of Undergraduates in Yale College 2019-2020, Proposals for New Courses and for Changes in Existing Courses*, YALE UNIVERSITY, *available at* http://web.archive.org/web/20191221132940/http://catalog.yale.edu/handbook-instructors-undergraduates-yale-college/courses/proposals-new-changes-existing/ (last visited Aug. 30, 2022).

"Class Day, a Yale College tradition" circa April 2017), *id*. at YU-0000041641 (highlighting the "state-of-the-art classrooms, faculty offices, academic centers, and meeting spaces" of the Yale School of Management's Edward P. Evans Hall circa October 2018), *id*. at YU-0000041645 (highlighting Trumbull College, "one of Yale's most beautiful and intimate residential colleges" circa January 2019), *id*. at YU-0000041659 (highlighting student life at Yale that "is steeped in many special traditions developed over the centuries" circa October 2019).[7]

**Faculty Handbook**

Finally, Yale's Faculty Handbook also represents the obvious – that professors and supposed to be on physically campus and meet with students. For example, it provides that "[f]aculty members are expected to remain on campus and to teach during all semesters when not on an approved leave." *Faculty Handbook*, YALE UNIVERSITY, at 128, *available at* https://provost.yale.edu/sites/default/files/files/Faculty%20Handbook_8-22-19.pdf (last visited Sep. 22, 2020). Further, it provides that:

> Members of the teaching or research faculty are expected to meet their professional and institutional commitments at Yale on a regular basis throughout the academic year. For full-time teaching faculty this includes being on campus most days of the work week, except for holidays and recess time, in order to be available to advise students[.]

---

[7]     *See also id*. at YU-0000041584 (highlighting upcoming literary festival with free events open to the public circa October 2015), *id*. at YU-0000041585 (featuring Yale Peabody Museum of Natural History circa April 2016), *id*. at YU-0000041589 (urging visitors to "[e]xperience art" in the "[f]ree and open to the public Yale University Art Gallery circa July 2016), *id*. at YU-0000041594 (noting that "Campus to celebrate its beginning at Founders Day festivities" circa October 2016), *id*. at YU-0000041596 (highlighting Intramurals circa October 2016), *id*. at YU-0000041600 (highlighting the Yale Babylonian Collection of "over 45,000 items" circa January 2016), *id*. at YU-0000041603 (noting the Yale dancers group circa January 2017), *id*. at YU-0000041616 (highlighting "a special display of The Dunlap Broadside," a first printing of the Declaration of Independence, circa July 2017), *id*. at YU-0000041621 (noting upcoming "lectures, exhibitions, concerts, performances, and more" circa January 2018), *id*. at YU-0000041627 (highlighting current exhibits at the Yale University Art Gallery circa April 2018), *id*. at YU-0000041635 (highlighting the Sterling Memorial Library "[l]ocated in the heart of central campus" circa July 2018), *id*. at YU-0000041644 (urging attendance of upcoming "events celebrating diversity, equality, and inclusion" circa January 2019), *id*. at YU-0000041652 (highlighting the Beinecke Rare Book & Manuscript Library circa April 2019), *id*. at YU-0000041654 (highlighting the Yale Center for British Art, a "public art museum" circa July 2019), *id*. at YU-0000041666 (noting "[w]hat to do at Yale over the holidays: galleries, libraries, and more" circa January 2020).

*Id*. at 160. Finally, "[a]ll teaching faculty must remain on campus during reading and examination periods." *Id*.

In sum, a host of specific written representations and promises by Yale create a reasonable expectation for every undergraduate that their dollars would be put to the service of a traditional in-person and on-campus educational experience, the way Yale has operated for decades, if not centuries. Moreover, the price of tuition and student fees at Yale College was fixed regardless of whether students took advantage of all the traditional, in-person and on-campus experiences Yale offered, regardless of the course of study they chose to pursue, and regardless of the diligence with which they did so. *See generally* Ex. 1, Dep. of Salovey, at 41:22-45:24.

But when the COVID-19 pandemic hit the U.S. hard in the spring of 2020, these promises of an in-person educational experience all went out the window fast. In an email dated March 10, 2020, President Salovey announced Yale's campus shutdown and the end of in-person instruction. Ex. 13, Dep. Ex. 8; Ex. 1, Salovey Dep., at 70:9-72:23. There is no dispute here that classes all moved online and that the New Haven campus was generally inaccessible from March 10, 2020 until the end of the spring 2020 term, in or about May 2020, for almost all activities traditionally offered on campus. *See* Ex. 13; Ex. 1, Salovey Dep., at 74:16-18.

Both Yale students and administration immediately realized that the resulting educational experience was not only different, but also of a lesser economic value in the education marketplace. For example, Yale Provost Scott Strobel, who did not wish to refund tuition, *see* Ex. 14, Strobel Dep., at 44:11-18, 45:15-23, advised in a March 16, 2020 internal email that he did not want the administration to use the word "closed" in relation to the campus because "as soon as you use that word you will be refunding tuition no matter what the faculty do for their teaching." Ex. 15, Dep. Ex. 12, at YU-0000040096. Yale conducted a survey in the same timeframe and found that "top

areas for desired assistance from Yale Administration" was "tuition reimbursement." *See* Ex. 16 at YU-0000020007. The Dean of the School of Public Health thought that at least a tuition "freeze" was in order. Ex. 17, Dep. Ex. 22, at YU-0000037871. Hundreds of Yale students even participated in a "Town Hall" meeting on subject of tuition reimbursements. Ex. 18, Dep. Ex. 17, at YU-0000040887 ("The issue of tuition reimbursement was the subject of many of your submitted questions and recent emails to me.").

But Yale refused to issue any tuition refunds as matter of "university-wide policy"[8] to any of the thousands of undergraduates enrolled at Yale College in the spring of 2020 or to freeze tuition, instead raising the price of tuition during the ensuing semesters of the pandemic. Ex. 14, Strobel Dep., at 52:12-24. *See also* Ex. 5, YU-0000021607;[9] Ex. 5A; ECF 81, 2d Amd. Comp., at Ex. 2.

In this same timeframe, Yale's overall financial condition improved dramatically, with the value of its endowment increasing by $11 billion. *See, e.g.*, *Yale endowment earns 40.2% investment return in fiscal 2021*, YALE UNIVERSITY, https://news.yale.edu/2021/10/14/yale-endowment-earns-402-investment-return-fiscal-2021 (last visited Aug. 30, 2022); *Yale announces term bill for 2020-2021, plus expanded financial aid*, YALE UNIVERSITY, https://news.yale.edu/2020/02/24/yale-announces-term-bill-2020-2021-plus-expanded-financial-aid (last visited Aug. 30, 2022).

---

[8]    *See* Ex. 19 at YU-0000016078 ("As a university-wide policy, there will be no refund of tuition fees . . ."); Ex. 20 at YU-0000000688 ("As dictated by University-wide policy, no stipends, tuition reimbursements or changes to financial aid packages will be provided."); Ex. 21 at YU-0000016575 (FAQ "Can I have a refund instead of a fourth year? If not, why not?" "University policy precludes them."); Ex. 22 at YU-0000020073 ("[T]here will not be any tuition or activity fee refunds, per university policy."). Notably, this university "policy" did not specify reference the terms of any "contract" with students or a "suspension" of operations, or even any Course of Study Committee "change" to the format of classes.

[9]    For convenience and readability, Plaintiff hid rows unrelated to Yale College students and added alternating white and gray lines to the original spreadsheet produced as YU-0000021607. *See* Decl. of Soumilas, ¶ 7.

Yale was also better off after the spring 2020 semester with respect to its operational finances. REDACTED

REDACTED. Ex. 23, Dep. of Murphy, at 116:22-117:2, 118:2-12. REDACTED

REDACTED *id.* at 123:4-11, and REDACTED Ex. 24, Dep. Ex. 1, at YU-000013486; *see also* Ex. 23, Murphy Dep., at 124:18-125:16. In his September 15, 2020 report to President Salovey, Stephen Murphy, Yale's Vice President for Finance and Chief Financial Officer, explained that this REDACTED. *See* Ex. 24, Dep. Ex. 1, at YU-0000013481-85; *id.* at YU-0000013484 REDACTED

REDACTED

REDACTED.[10]

Furthermore, REDACTED, *id.* at YU-0000013503, REDACTED. *Id.* at YU-0000013479. This was REDACTED

REDACTED

REDACTED *Id.* at YU-0000013484.

There is no dispute that Yale charged half of its $55,500 annual tuition and $125 student fee for the spring 2020 semester, a sum of $27,562.50. *See* Ex. 4, Dep. Ex. 7. There is also no dispute that Yale did not deliver to undergraduates in-person instruction or customary educational

---

[10] REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED

services and access to the campus for 8 of the 17 weeks of that semester. *See* Ex. 25 at YU-0000041447 (five weeks of instruction from March 23, 2020 to April 24, 2020, Reading period from April 25-29, and Exam period April 30-May 6). Therefore, for 47% (8/17) of that semester, Yale failed to fully meet its promises.

This refusal to shoulder any of the financial burden of the pandemic was in stark contrast to other universities, including some of Yale main competitors.[11] For example, due to its campus shutdown, one of Defendant's peer schools and major competitors, Princeton University, reduced its tuition by 10% beginning in the summer of 2020. *Princeton Announces Plan for Fall 2020, Guidelines for Undergraduates Returning to Campus*, PRINCETON UNIVERSITY, (July 6, 2020), https://www.princeton.edu/news/2020/07/06/princeton-announces-plan-fall-2020-guidelines-undergraduates-returning-campus. *See* Ex. 26, MICHEL 026708-13; Ex. 1, Salovey Dep., at 46:10-47:1 (Ivy League schools such as Princeton and some others are peer schools).

So did Johns Hopkins University, another elite "top 10"[12] school. *See* Marvis Gutierrez & Chris H. Park, *Hopkins announces online-only fall plans and tuition reduction*, THE JOHNS HOPKINS NEWS-LETTER, (Aug. 6, 2020) https://www.jhunewsletter.com/article/2020/08/hopkins-announces-online-only-fall-plans-and-tuition-reduction ("Aside from a 10 percent tuition reduction, the University has allocated nearly $15 million for assistance, according to the University-wide email.").[13]

---

[11]     *See, e.g*., Matt Zalanick, *Who's joining the list of colleges cutting tuition?*, UNIVERSITY BUSINESS, (Aug. 14, 2020), https://universitybusiness.com/colleges-universities-cut-tuition-fall-semester-covid-online-learning/; Emma Kerr & Sarah Wood, *Colleges Giving Tuition Discounts*, U.S. NEWS & WORLD REPORT, (Jan. 5, 2022), https://www.usnews.com/education/best-colleges/paying-for-college/articles/these-colleges-are-giving-tuition-discounts-this-fall; Jessica Dickler, *Colleges are slashing tuition to entice students back*, CNBC, (Oct. 30, 2020), https://www.cnbc.com/2020/10/30/colleges-are-slashing-tuition-to-entice-students-back.html.

[12]     *Johns Hopkins University (JHU) - Profile, Rankings and Data | US News Best Colleges*, U.S. NEWS & WORLD REPORT, https://www.usnews.com/best-colleges/jhu-2077 (last visited Aug. 30, 2022).

[13]     Johns Hopkins similarly recognized the lower market value of an online only educational experience even pre-pandemic. By way of example only, in 2020, tuition for one year of Johns Hopkins University's two-year full-

In contrast, Yale's Budget Advisory Committee, upon which the Provost serves, recommended *increasing* tuition for the 2020-2021 school year. Ex. 14, Strobel Dep., at 46:21-48:9; *see also id.* at 61:6-64:24 (discussing tuition recommendation approval process between Provost and Deans of various school). REDACTED

REDACTED

REDACTED        Ex. 5 (*Cf* "Tuition" column for spring 2020 ("202001") *with* "Tuition" column for fall 2020 ("202003")).

The conclusion that online instruction, even at prestigious universities, should not as expensive to purchase and cannot be priced as high in the education marketplace as traditional in-person instruction is support not only by facts of record relating to other universities, but also by expert testimony. Plaintiff hired Gareth Macartney, a well-respected and experienced economist, to provide a comprehensive expert report and rebuttal report explaining the price differences between an online and an in-person college educational experience in terms of the economic theories of conjoint analysis and hedonic regression. *See* Exs. 29-30.

This basic supposition that online education cannot be priced, and pre-pandemic was not priced, as high as in-person education is even supported by common sense, widely disseminated

---

time MBA program was $62,500. *MBA, Master Degree Programs Tuition and Fees*, JOHNS HOPKINS CAREY BUSINESS SCHOOL, (Aug. 6, 2020); Ex. 27 at MICHEL 026702-03. For the same period, tuition for 27 credits in its online Flexible MBA program, half of the 54 credits required for graduation, at $1,525 each was only $41,175. *Part Time Flexible MBA Programs*, JOHNS HOPKINS CAREY BUSINESS SCHOOL, (Aug. 2, 2020); Ex. 28 at MICHEL 026704-07. This amounts to an approximately 33% discount for online-only education.

academic publications,[14] and even one of Yale's economics professors[15] who bluntly stated as follows in an internal email uncovered during discovery:

> Full tuition, even including the activities fee, for hard-banned students is a bit offensive ….Very myopic. It would have been cheap to buy some good will, and share the burden.

Ex. 31, Dep. Ex. 20, at YU-0000035345. Plaintiff agrees. Ex. 2, Michel Dep., at 184:3-13; *see also* ECF 81, 2d Amd. Comp., at ¶¶ 4-7. He now seeks to certify the following class:

> All undergraduate students enrolled at Yale College during the spring 2020 semester who paid Yale University either directly or indirectly any amount of money in tuition and fees for the spring 2020 semester.

## III.    **LEGAL STANDARD**

For a suit to be maintained as a class action under Rule 23, Plaintiff must demonstrate that each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997) (citing FED. R. CIV. P. 23(a)).

Plaintiff must also demonstrate that this action qualifies for class treatment under at least one of the subdivisions of Rule 23(b). *Id.* Under Rule 23(b)(3), a class action will be appropriate where "the court finds that the questions of law or fact common to the members of the class

---

[14]    *See Online Bachelor's Degrees and Programs*, U.S. NEWS AND WORLD REPORT, https://www.usnews.com/education/online-education/bachelors (last visited Jan. 5, 2022) (average of $488 per credit for online programs, compared to $1,240 for on-campus programs); Melanie Hanson, *Cost of Online Education vs. Traditional Education*, EDUCATIONAL DATA INITIATIVE, (Aug. 18, 2021), https://educationdata.org/cost-of-online-education-vs-traditional-education (same); Melissa Venable, *Comparing the Costs of Online vs. On-Campus Programs*, (Apr. 13, 2021), https://www.bestcolleges.com/blog/comparing-costs-online-on-campus-programs (tuition for online bachelor's degree ranges from $38,496 to $60,593 and tuition for traditional on-campus bachelor's degree ranges from $38,748 to $140,348).

[15]    *Giuseppe Moscarini, Ph.D. | Department of Economics*, YALE UNIVERSITY, https://economics.yale.edu/people/faculty/giuseppe-moscarini (last visited Aug. 30, 2022).

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

This action should be certified as a class action because the requirements of Rule 23(a) and Rule 23(b)(3) have been met for the class.

## IV.     ARGUMENT

### A.     The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied

#### 1.     *Numerosity*

Members of a certifiable class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Numerosity is generally presumed "at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the Class is comprised of thousands of undergraduate students who were among the thousands who were enrolled at Yale College in the Spring of 2020 and who paid at least some money in tuition and fees. Any class size in the thousands is plainly numerous. Ex. 5 at YU-0000021607 (spring 2020 term denoted as "202001"); Ex. 5A (summarizing Exhibit 5 to identify spring 2020 students who paid monies in tuition, net of financial aid and Yale-managed scholarships). The exact identity of class members can be ascertained from Yale's records which identify the student associated with each student ID. Ex. 5 at YU-0000021607; Ex. 5A.

#### 2.     *Commonality*

To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Satisfaction of the commonality requirement requires that plaintiffs demonstrate that their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also id*. at 359 ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do[.]") (citation omitted). Courts find commonality satisfied

where, as in the present case, a defendant engaged in standardized conduct toward class members. *See Comer v. Cisneros*, 37 F.3d 775, 796-97 (2d Cir. 1994); *In re Marisol A.*, 126 F.3d at 376-77.

As just one example of a question of law or fact common to the class: did Yale fail to provide the in-person classes and services promised? Yale's conduct here (canceling all in-person classes and services) was standardized across the entire Class. Not only is this issue central to both the promissory estoppel and unjust enrichment claims, but the factual and/or legal questions that might arise here can and should be resolved through common evidence.

As another example of a question common to the class: is it unjust to allow Yale to keep the full tuition and fees? Here again, this issue is central to both the promissory estoppel and unjust enrichment claims, and its answer is resolved through common evidence of Yale's financial windfall from lowered costs.

3.    *Typicality*

Rule 23(a)(3) requires that the claims of the named plaintiff be "typical of the claims … of the class." FED. R. CIV. P. 23(a)(3). The threshold for establishing typicality is low, does not require identical claims or defenses, and is satisfied if the plaintiff's claim concerns the same policies and practices, arises from the same legal theories, and alleges the same types of harm or entitlement to relief. *Comer*, 37 F.3d at 797; *Marisol A.*, 126 F.3d at 376. Where an action challenges a policy or practice, a named plaintiff suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982).

Here, Plaintiff Michel's claims are typical of those of other Class members. Like every member of the Class, he paid money in tuition and fees in exchange for a holistic, in-person educational experience at Yale – and instead received an online experience with a lower market value. Plaintiff Michel seeks damages for himself and other class members, in the form of the

difference between what the paid and what they received in the Spring 2020 semester. Calculating damages will require the type of objective mathematical calculation that can be performed on a class-wide basis, and it is well recognized that any differences in damages for class members does not defeat certification. *See Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 405-08 (2d Cir. 2015).

### 4.    *Adequacy*

Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." In the Second Circuit, adequacy of representation is measured by two standards. *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another." *Id*. (internal quotation marks omitted).

In this matter, Plaintiff and his counsel satisfy the adequacy requirement. First, Plaintiff has retained counsel experienced in class action litigation to prosecute his claims and those of the Class.[16] Furthermore, adequacy is presumed and any challenge to adequacy is for Defendant to prove. Michel asserts there is no conflict or antagonism of interests. He has shown that he understands the claims at issue in this case and is interested in working to serve the interests of the class. Ex. 2, Michel Dep., at 154:21-155:5 (describing nature of injury to class members), 234:7-11 (agreeing that this lawsuit was brought on behalf of all Yale students). Moreover, he has actively participated in discovery in this matter, responding to discovery requests, providing tens of thousands of pages of documents, and preparing for and giving a deposition. Accordingly, Michel adequately represents the interests of the class.

---

[16]    The firm of Francis Mailman Soumilas, P.C. has been repeatedly certified as class counsel in cases under both state and federal law by numerous courts throughout the country and has tried multiple class actions to verdict. Ex. 32. Yvette Golan and Sarah Poriss are highly experienced consumer protection attorneys. Exs. **Error! Reference source not found.**-34.

**B.**    **The Requirements of FED. R. CIV. P. 23(b)(3) Are Satisfied**

Rule 23(b)(3) provides that "[a]n action may be maintained as a class action if the prerequisites of [Rule 23(a)] are satisfied, and in addition[,] the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members[.]" FED. R. CIV. P. 23(b)(3). "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (citing FED. R. CIV. P. 23(b)(3)) (modification in original).

1.    *Predominance*

The predominance inquiry examines whether "common issues can profitably be tried on a class-wide basis, or whether they will be overwhelmed by individual issues." *Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128, 138 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." (internal quotation marks and citations omitted)).

Courts routinely certify classes where, as here, litigation centers on a single course of conduct by the defendant that is common to all class members. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) ("claims based on uniform [representations] to all members of a class are appropriate subjects for class certification because . . . they 'create no need for a series of mini-trials.'") (citation omitted). Most notably, other courts have considered these common factual and legal issues in a nearly identical context against other colleges, finding that they predominate over any individual issues. *See supra* note 1.

As other courts have found, the need to conduct damages calculations does not mean that individualized questions predominate. *Roach,* 778 F.3d 401, 405-08 (2d Cir. 2015) ("individualized damages determinations alone cannot preclude class certification under the predominance inquiry"). To the contrary, where, as here, the evidence shows that economic damages can be established through common and objective economic methods, courts regularly find that predominance is satisfied. *Comcast Corp.*, 569 U.S. at 34; *In re Teva Sec. Litig.*, No. 3:17-CV-558 (SRU), 2021 WL 872156, at *40-42 (D. Conn. Mar. 9, 2021).

2.    *Superiority*

Plaintiff and the other Class members experienced virtually identical consequences from Yale's standardized conduct. At its core, this is a case of common factual questions, guided by common discovery. Federal courts have long regarded "consumer claims" like those presented here as "particularly appropriate for class resolution." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). Here, substituting a single class action for numerous trials of the thousands of students affected by Yale's uniform conduct "will achieve significant economies of 'time, effort, expense, and promote uniformity of decision.'" *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130-31 (2d. Cir. 2013) (quoting Rule 23 advisory committee note).

Without a representative action, thousands of enrolled students would unlikely be able to seek relief, given the costs of litigation against such a well-financed adversary would far exceed their potential recovery. For those students who are financially wealthy or able to find counsel willing to accept a high-risk, low-reward individual suit, the resulting scattered suits would cause the inefficient administration of justice and potentially contrary results.

The common and predominating issues noted above mean this matter is capable of efficient, class-wide adjudication on the merits. Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this matter.

V.     **CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff Jonathan Michel respectfully requests

that this Court certify this matter as a class action and enter the proposed Order included herewith.

Dated:      September 2, 2022                    Respectfully submitted,

PLAINTIFF JONATHAN MICHEL

By:      */s/John Soumilas*
James A. Francis
John Soumilas
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: 215-735-8600
Fax: 215-940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

THE GOLAN FIRM, PLLC
Yvette Golan
529 14th Street Suite 914
Washington, DC 20045
Tel: (866) 298-4150, ext. 101
Fax: (928) 441-8250
ygolan@tgfirm.com

Sarah Poriss
Attorney at Law, LLC
777 Farmington Ave., 1st Fl.
West Hartford, CT 06119
Tel: 860-233-0336
Fax: 866-424-4880
www.sarahporiss.com
sarahporiss@prodigy.net

*Attorneys for Plaintiff*

## VI.    <u>Table of Exhibits</u>

1. Deposition of Peter Salovey
2. Deposition of Jonathan Michel
3. Deposition Exhibit 5
4. Deposition Exhibit 7
5. YU-0000021607
5A. Summary of YU-0000021607
6. Deposition of Pericles Lewis
7. Deposition of Parndigamage
8. YU-0000010380
9. YU-0000010346
10. YU-0000022614
11. Deposition Exhibit 6
12. YU-0000041584-669 (Website Captures)
13. Deposition Exhibit 8
14. Deposition of Scott Strobel
15. Deposition Exhibit 12
16. YU-0000020007
17. Deposition Exhibit 22
18. Deposition Exhibit 17
19. YU-0000016078
20. YU-0000000688
21. YU-0000001657
22. YU-0000020073
23. Deposition of Stephen Murphy
24. Deposition Exhibit 1, YU-0000013477-503
25. YU-0000041447
26. MICHEL 026708-13
27. MICHEL 026702-03
28. MICHEL 026704-07
29. Gareth Macartney Report
30. Gareth Macartney Rebuttal Report
31. Deposition Exhibit 20
32. FMS Firm Bio
33. Golan Declaration
34. Poriss Declaration

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 2, 2022, a copy of the foregoing Plaintiff's Motion for Class Certification is being filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ John Soumilas*
John Soumilas
