UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JONATHAN MICHEL, | : | |
| ON BEHALF OF HIMSELF AND ALL | : | |
| OTHERS SIMILARLY SITUATED, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:20-CV-01080 (JCH) |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, | : | JANUARY 30, 2023 |
|     Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 135)**

**I.     INTRODUCTION**

Plaintiff Jonathan Michel ("Michel") brings this putative class action against Yale University ("Yale" or "the University") alleging unjust enrichment and promissory estoppel.  Michel, a student at Yale, brings claims arising out of Yale's decision not to partially refund his tuition and fees after the University transitioned from in-person to virtual instruction in response to the COVID-19 pandemic.  Yale has moved for summary judgment, see Motion for Summary Judgment ("Mot. for Summ. J.") (Doc. No. 135), which Michel opposes, see Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 162).

For the reasons set forth below, the court grants Yale's Motion.

1

## II.     BACKGROUND

### a. Factual Background[1]

Michel was a sophomore at Yale for the 2019-20 academic year.  See Plaintiff's Exhibit 1, November 10, 2021 Deposition of Jonathan Michel ("11/10/21 Deposition of Michel") at 59 (Doc. No. 135-4).  For the fall and spring semesters that year, Michel paid the tuition and fees owed, minus the gift aid he received from Yale.  See Plaintiff's Local Rule 56(a)2 Statement of Facts ("Pl.'s 56(a)2 Stmt.") ¶ 17 (Doc. No. 162–1); Defendants' Local Rule 56(a)1 Statement of Facts ("Def.'s 56(a)1 Stmt.") ¶ 17 (Doc. No. 135–2); Plaintiff's Exhibit 27, Michel Billing History at 2 (Doc. No. 135–30).

The first nine weeks of the 2020 spring semester consisted of in-person instruction.  See Plaintiff's Local Rule 56(a)2 Statement of Additional Material Facts - ("Pl.'s 56(a)2 Stmt. of Add'l Facts") ¶ 52 (Doc. No. 162–1).  However, on March 10, 2020, Connecticut Governor Ned Lamont declared a public health emergency.  Pl.'s 56(a)2 Stmt. ¶ 18; Def.'s 56(a)1 Stmt. ¶ 18.  In response, Yale closed its campus and stopped in-person instruction.  See Pl.'s 56(a)2 Stmt. ¶ 18; Def.'s 56(a)1 Stmt. ¶ 18.  Additionally, Yale transitioned to remote learning for the remaining eight weeks of the spring semester.[2]  See Pl.'s 56(a)2 Stmt. ¶ 18–19; Def.'s 56(a)1 Stmt. ¶ 18–19; Pl.'s 56(a)2 Stmt. of Add'l Facts ¶ 52.  In reflecting on this period of online learning, Michel

---

[1] The court draws primarily from the parties' Local Rule 56(a) statements and supporting exhibits in summarizing the material facts.  As it must, the court construes all disputed facts in the light most favorable to Michel, the non-moving party.

[2] As Michel makes clear in his Memorandum of Law in Opposition to the Motion for Summary Judgment, he has not elected to seek damages beyond the spring 2020 semester.  See Pl.'s Mem. at 2. As such, the court limits its review to the pertinent facts and allegations for this period.

testified that he had no reason to think that his online classes were any worse than his in-person instruction.³  See Def.'s 56(a)1 Stmt. ¶ 22.

In light of Yale's decision to close its campus, the University refunded room and board charges for the rest of the semester.  See Pl.'s 56(a)2 Stmt. ¶ 21; Def.'s 56(a)1 Stmt. ¶ 21.  The refund was calculated based on the full list price for room and board, rather than being reduced to reflect what a student on financial aid paid following receipt of gift aid.  See Pl.'s 56(a)2 Stmt. ¶ 21; Def.'s 56(a)1 Stmt. ¶ 21.  However, Yale did not provide any tuition reimbursements.  See Pl.'s 56(a)2 Stmt. ¶ 66.  Instead, the school charged—as it always has—the same amount for remote instruction as it did for in-person instruction.⁴  See Def.'s 56(a)1 Stmt. ¶ 37.

Michel testified that he knew Yale's Undergraduate Regulations and the Yale College Programs of Study (YCPS) set the rules, regulations, and policies at the school. See Pl.'s 56(a)2 Stmt. ¶ 9; Def.'s 56(a)1 Stmt. ¶ 9.  Both the Undergraduate Regulations and the YCPS are available on Yale's website at all times.  See Pl.'s 56(a)2 Stmt. ¶ 8;

---

³ In his Local Rule 56(a)2 Statement, Michel denies that he learned just as much in his online classes as he did in his in-person ones.  Pl.'s 56(a)2 Stmt. ¶ 22.  To buttress his denial, Michel points to testimony where he noted that it was "difficult to assess what [he] learned or what [he] could have learned."  11/10/21 Deposition of Michel at 108.  Still, his stated difficulty in evaluating the experience does not change that Michel also testified that he had no reason to believe he was learning any less, see id. at 106, and that the remote education was not any worse than in-person instruction, see id. at 107.

Michel also points to survey results of other Yale students who described what life and learning was like during the pandemic to support his denial.  See Pl.'s 56(a)2 Stmt. ¶ 22; Plaintiff's Exhibit AB (Doc. No. 165–4); Plaintiff's Exhibit O (Doc. No. 165–5).  However, the opinions of other students about their experience is irrelevant to Michel's experience, which is what the Local Rule 56(a)1 statement is about.  Therefore, the court concludes that this material fact is admitted.  See D. Conn. L. Civ. R. 56(a)(2)(i)–(3); see also Eiden v. McCarthy, 531 F. Supp. 2d 333, 338 (D. Conn. 2008).

⁴ Michel denies that this is true in his Local Rule 56(a)2 Statement.  Pl.'s 56(a)2 Stmt. ¶ 37.  In support, Michel cites to a page of the Yale School of Public Health's website that identifies tuition and expenses by program.  Id.  However, this page does not support his denial.  See, infra, Section IV(b).  Therefore, the court deems this material fact admitted.  See D. Conn. L. Civ. R. 56(a)(2)(i)–(3); see also Eiden, 531 F. Supp. 2d at 338.

Def.'s 56(a)1 Stmt. ¶ 8.  Moreover, Yale notifies students of the Undergraduate Regulations for the upcoming year in either August or September.  See Pl.'s 56(a)2 Stmt. ¶ 7.  The Undergraduate Regulations,[5] which Michel admits to having read, see Pl.'s 56(a)2 Stmt. ¶ 3, state:

> Temporary Suspension of University Operations.  In the unlikely event that public health or other significant safety or security concerns cause the University temporarily to suspend University programs and operations, the University will make arrangements for appropriate refunds, consistent with the principles enunciated in these Regulations, as may in its judgment be warranted in light of all the circumstances of the suspension and consistent with applicable law and regulations.  The decision to suspend programs shall be made at the discretion and judgment of the University.

See Pl.'s 56(a)2 Stmt. ¶ 14; Def.'s 56(a)1 Stmt. ¶ 14.  On August 27, 2019, Michel signed a card indicating he understood that, "[a]ll students in Yale College are required as a condition of enrollment to comply with the Undergraduate Regulations, a copy of which is available online. . . ."  See Defendant's Exhibit 24, Signed Registration Card (8/27/19 Registration Card") (Doc. No. 135–27).  However, Yale could not locate a registration card signed by Michel for the spring 2020 semester.  Plaintiff's Exhibit K, Deposition of Nilakshi Parndigamage on December 16, 2021 ("12/16/21 Parndigamage Dep.") at 116 (Doc. No. 162–13).

Similar to the Undergraduate Regulations, Michel was informed of the YCPS approximately two months before arriving on campus his freshman year.  See Pl.'s 56(a)2 Stmt. ¶ 10; Def.'s 56(a)1 Stmt. ¶ 10.  He was informed of an updated version of the YCPS for the 2019-20 academic year on June 5, 2019.  See Pl.'s 56(a)2 Stmt. ¶ 6.

---

[5] This language appears in the Undergraduate Regulations for both the 2018-19 as well as the 2019-20 academic years.  See Pl.'s 56(a)2 Stmt. ¶ 14; Def.'s 56(a)1 Stmt. ¶ 14.

On the first page of the YCPS following the cover,[6] there is a disclaimer that reads: "[t]he University reserves the right to withdraw or modify the courses of instruction or to change the instructors at any time."  See Pl.'s 56(a)2 Stmt. ¶ 12; Def.'s 56(a)1 Stmt. ¶ 12.

Students who read the rules and regulations laid out in the YCPS and Undergraduate Regulations and decide to withdraw from Yale are allowed to do so before the fifteenth day of the term.  See Pl.'s 56(a)2 Stmt. ¶ 11; Def.'s 56(a)1 Stmt. ¶ 11.  Any student who withdraws before that date remains eligible for a full refund of tuition and related fees.  See Pl.'s 56(a)2 Stmt. ¶ 11; Def.'s 56(a)1 Stmt. ¶ 11.  This was true of both the 2018-2019 as well as the 2019-2020 academic years.  See Pl.'s 56(a)2 Stmt. ¶ 11; Def.'s 56(a)1 Stmt. ¶ 11.

    b.  Procedural Background

Michel filed his initial Complaint against Yale on July 29, 2020, alleging breach of contract (Count One) and unjust enrichment (Count Two).  See Complaint ("Compl.") ¶¶ 43–57 (Doc. No. 1).  On October 16, 2020, Michel filed an Amended Complaint that added a third count alleging violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq.  See Amended Complaint ("First Amended Compl.") ¶¶ 59-82 (Doc No. 37).  Yale's Motion to Dismiss the First Amended Complaint was granted on July 7, 2021.  See Ruling on Defendant's Motion to Dismiss ("R. on Mot. to Dismiss") (Doc. No. 73).  Michel filed a Second Amended Complaint a few weeks later, this time alleging unjust enrichment (Count One) and promissory

---

[6] Identical language is included in the YCPS for the 2018-19, 2019-20, and 2020-21 academic years.  See Pl.'s 56(a)2 Stmt. ¶ 12; Def.'s 56(a)1 Stmt. ¶ 12.

5

estoppel (Count Two).  See Second Amended Complaint ("Second Amended Compl.") ¶¶ 70-88 (Doc. No. 80).

The court now considers Yale's Motion for Summary Judgment.  See Mot. for Summ. J.; Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem.") (Doc. No. 135-1); Defendant's Reply in Further Support of Motion for Summary Judgment ("Def.'s Reply") (Doc. No. 168).  Michel opposes that Motion.  See Pl.'s Mem.

## III. LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

**IV.     DISCUSSION**

  a. Dispute of Material Fact Concerning Contract Prevents the Preclusion of the Unjust Enrichment and Promissory Estoppel Claims

Yale argues that it is entitled to summary judgment on both the unjust enrichment as well as the promissory estoppel claim because the legal contract it had with Michel precludes equitable causes of action covering the same subject matter.  See Def.'s Mem. at 23.  Michel counters by asserting that there is no contract governing the provision of in-person instruction and that, even if there was, the "Suspension Provision" was not triggered because Yale never suspended operations.  See Pl.'s Mem. at 3–6.

As this court previously recognized, in Connecticut:

> the basic legal relation between a student and a private university or college is contractual in nature. . . .   [T]here seems to be no dissent from [the] proposition that the catalogues, bulletins, circulars, and regulations of the institution determine the contractual relationship between the student and the educational institution. . . .   Because a student bases his or her decision to attend a college or university, in significant part, on the documents received concerning core matters, such as faculty, curriculum, requirements, costs, facilities and special programs, application of contract principles based on these documents and other express or implied promises, consistent with the limitations expressed in Gupta v. New Britain General Hospital, 239 Conn. 574, 687 A.2d 111 (1996), appears sound.

R. on Mot. to Dismiss at 13 (quoting Burns v. Quinnipiac Univ., 120 Conn. App. 311, 320-21 (2010) (brackets and ellipses omitted); see also, e.g., Madej v. Yale Univ., 2020 WL 1614230, at *9 (D. Conn. Mar. 31, 2020) (recognizing "a student's contract with the university is defined by the catalogues, bulletins, circulars[,] and regulations of the institution).  Because "a formal university-student contract is rarely employed . . . the general nature and terms of the agreement are usually implied[, with the] catalogs, bulletins, circulars, regulations, and other publications, and customs becom[ing] part of the contract."  Gociman v. Loyola Univ. of Chicago, 41 F.4th 873, 883 (7th Cir. 2022).

The term "implied contract . . . often leads to confusion because it can refer to an implied in fact contract or to an implied in law contract." See Vertex, Inc. v. City of Waterbury, 278 Conn. 557, 573 (2006). "An implied in fact contract is the same as an express contract, except that assent is not expressed in words, but is implied from the conduct of the parties." Id. at 573–74. An implied in law contract, on the other hand, is another name for unjust enrichment, which is not a contract but rather "an obligation" arising "due to one party being unjustly enriched to the detriment of the other party." Id. at 574.

The existence of an express contract does not necessarily preclude an unjust enrichment claim. See Fabri v. United Techs. Int'l, Inc., 387 F.3d 109, 128 (2d Cir. 2004). "Unjust enrichment applies even where the parties have an express contract if: (1) the plaintiff cannot recover under the contract because the plaintiff is guilty of breach of contract, and (2) the defendant would nevertheless be unjustly enriched by keeping the plaintiff's services or money without some payment." Id. However, "the doctrine of promissory estoppel is precluded by the existence of a contract between the parties" where a claim arises on the basis "of alleged promises that contradict the written contract." Kent Literary Club v. Wesleyan Univ., 338 Conn. 189, 210 (2021).

Here, Yale asserts that the "Suspension Provision" of the Undergraduate Regulations governs the subject matter of Michel's equitable claims. See Def.'s Reply at 4. Indeed, this court has already recognized that "Yale's decision to suspend in-person education in light of the COVID-19 pandemic represents an exercise of authority expressly reserved to the University. . . ." pursuant to that clause. R. on Mot. to Dismiss at 14. However, unlike the First Amended Complaint discussed in the court's

8

prior Ruling, the plaintiff's Second Amended Complaint does not plead a breach of contract claim nor does it contemplate the existence of a contract that governs this dispute.[7]  Compare First Amended Compl." ¶¶ 59-82, with Second Amended Compl." ¶¶ 70-88.

Instead, Michel now avers that "Yale fails to demonstrate the existence of any contract relevant to this dispute."  Pl.'s Mem. at 4.  With respect to the "Suspension Provision" of the University Regulations, Michel first asserts that the University Regulations cannot be a part of a relevant contract because Connecticut law requires assent, which Yale has not proven Michel provided.  See Pl.'s Mem. at 5.  This argument is inapposite because Connecticut law acknowledges the "contractual relationship" between a student and a university, which is determined by the "catalogues, bulletins, circulars, and regulations of the institution."  Burns, 120 Conn. App. at 321.  In light of the fact that such a contract is rarely formalized in this context, it is often an implied in fact contract, where assent is implied from a party's conduct.  See Gociman, 41 F.4th at 882; Vertex, 278 Conn. at 573.  There is no dispute of material fact that Michel knew that the Undergraduate Regulations and YCPS set the rules, regulations, and policies of the school.  See Pl.'s SOF ¶ 9; Def.'s SOF ¶ 9.  Nor is there any dispute of material fact that Michel enrolled at Yale for the spring 2020 semester.

---

[7] Yale asserts that Michel's Complaint and First Amended Complaint are admissions that there was a contract between the parties.  See Def.'s Reply at 4; Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 707 (2d Cir. 1989) ("The amendment of a pleading does not make it any the less an admission of the party.").  However, this stands in stark contrast to the provisions of the Federal Rules of Civil Procedure, which approve of inconsistent and alternative pleading—just as Michel did.  See Fed. R. Civ. P. 8(d); First Amended Compl. ¶ 68; Svege v. Mercedes-Benz Credit Corp., 329 F. Supp. 2d 285, 287 (D. Conn. 2004) ("Since the purpose of alternative pleading is to enable a party to meet the uncertainties of proof, policy considerations demand that alternative pleadings not be admitted either as an admission of a party-opponent or for purposes of impeachment." (quoting 30B Wright & Miller, Fed. Prac. & Proc. § 7026)).  Thus, the court will not use Michel's change of strategy against him.

Accordingly, the fact that he knew he was bound by the Undergraduate Regulations and continued to enroll is sufficient to manifest assent to an implied in fact contract.

Michel's second argument is that the "Suspension Provision" is inapplicable because the school did not "suspend" operations.  See Pl.'s Mem. at 5.  To support this, Michel cites Yale President Peter Salovey, who testified that he did not believe Yale suspended operations on March 10, 2020.[8]  See Plaintiff's Exhibit AI, Deposition of Peter Salovey on November 1, 2021 at 75 (Doc. No. 162–37).  Yale points out though that, during the same deposition, President Salovey noted that Yale suspended operation of in-person classroom teaching following the school's announcement of the transition online on March 10, 2020.  See Defendant's Exhibit 47, Deposition of Peter Salovey on November 1, 2021 at 91–92 (Doc. No. 168–3).  Still, at the summary judgment stage, the court construes all disputed facts in the light most favorable to Michel, the non-moving party.  Just as the court previously could not conclude as a matter of law that Yale's actions constituted a "suspension" of operations under the Undergraduate Regulations, see R. on Mot. to Dismiss at 16, it cannot do so here.

Accordingly, there is also a dispute of material fact as to whether the "Suspension Provision" was triggered.  Thus, the Motion for Summary Judgment is denied on this basis.

---

[8] Michel also points to several missives Yale sent to students indicating that the school would not be refunding tuition or activity fees per "a university-wide policy."  See Plaintiff's Exhibit AJ (Doc. No. 162–38) ("As a university-wide policy, there will be no refund of tuition fees. . .."); see also Plaintiff's Exhibit AM (Doc. No. 162–41) ("[W]ith all the flexibility offered for you with your courses, with all of them continuing to be offered in an online format, there will not be any tuition or activity fee refunds, per university policy.").  Michel claims that these pronouncements demonstrate that Yale never considered appropriate refunds as it would be obligated to do under the "Suspension Provision."  Yet, neither these notes nor any other evidence in the record suggest Yale did not consider providing a tuition refund, merely that the school decided against doing as a matter of policy.  This would seemingly be an exercise of the discretion afforded Yale under the "Suspension Provision," rather than evidence that it was never triggered.

> b. Lack of Financial Detriment Bars Michel's Promissory Estoppel and Unjust Enrichment Claims

Yale contends that it is entitled to summary judgment on the promissory estoppel and unjust enrichment claims because Michel failed to put forward any evidence that would allow a jury to calculate the financial detriment he suffered. See Def.'s Mem. at 23–27. Michel counters by asserting that the measure of damages is a question fact, and that the record includes evidence from which a reasonable trier of fact could calculate damages. See Pl.'s Mem. at 10.

To prevail on the promissory estoppel claim, Michel must show that Yale made "a clear and definite promise that [it] should have expected him to rely upon, and that he actually did rely upon that promise to his detriment." Perugini v. Stryker Orthopaedics, 2009 WL 3254492, at *7 (D. Conn. Oct. 6, 2009). In addition, the promissory estoppel claim itself still requires that Michel demonstrate the "cost" of his reliance. See Stewart v. Cendant Mobility Servs. Corp., 267 Conn. 96, 113 (2003). "[T]o rely, in the law of promissory estoppel, is not merely to do something in response to the inducement offered by the promise. There must be a cost to the promisee of doing it." Id.

Detriment is also crucial to an unjust enrichment claim, where a plaintiff must prove "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." Town of New Hartford v. Connecticut Res. Recovery Auth., 291 Conn. 433, 451–52 (2009) (quotation and citation omitted). The doctrine of unjust enrichment is grounded in the theory of restitution, "that is, the restoration to a party of something of which he was deprived because of the unjust enrichment of another at his expense." Schirmer v. Souza, 126 Conn. App. 759, 766 (2011) (quotation and citation omitted). In

Connecticut, unjust enrichment has been "commonly pursued . . . when the benefit that the enriched party receives is either money or property." Id.  In the case at bar, Michel's requested remedy for Yale's alleged unjust enrichment calls for the defendant to "restore, return and/or disgorge any tuition, fees and related expenses equal to the difference in value between the in-person education promised and the online education provided."  Second Amended Compl. ¶ 78.

Yale argues that Michel has not introduced evidence into the record from which a factfinder could reasonably calculate the "difference in value" between the remote instruction he received and the in-person instruction he believes he was promised.  See Def.'s Mem. at 23–27.  Michel counters by laying out a litany of facts from which he believes a factfinder could measure financial detriment.  See Pl.'s Mem. at 7–8, 10–15.

First, he posits that Yale charges differing fees for its in-person Master of Public Health ("MPH") degree and its online executive MPH degree.  See id. at 7 (citing Defendant's Exhibit AF, Yale School of Public Health Tuition and Expenses by Program (Doc. No. 162–34)).  While compelling, this claim is inaccurate.  Yale offered sworn testimony that the difference in price reflects the fact that the in-person degree is a 20-credit program while the remote one is a 16-credit program.  See Defendant's Exhibit 50, Declaration of Frank Grosso ¶ 7 (Doc. No. 168–4).  Indeed, "[t]he tuition cost per credit is the same for each of [Yale's] MPH programs, regardless of whether the courses are taught in person or online."  Id. ¶ 4.

Michel also points to disparities in tuition costs for Yale School of Management's Women's Leadership program, which includes an in-person version, a live online version, and an alternative asynchronous online version.  See Pl.'s Mem. at 7.

However, any comparison between the live versions of the program and the asynchronous one fails because they differ in content, faculty size, and the provision of group coaching.  See Defendant's Exhibit 51, Declaration of Kavitha Bindra ¶ 7 (Doc. No. 168–5).  Even the comparison of the in-person and live online program fails, as the "higher price for the in-person version . . . reflected the fact that the price included the costs of hotel lodging and meals, which were not part of the" online program.  Id.  Indeed, uncontroverted testimony makes clear that the prices of the two courses are "the same after backing out the costs of lodging and meals. . . ."  Id.

The only evidence in the record that pertains to the undergraduate program indicates that Yale "has always" charged the same tuition for online and in-person instruction.  See Defendant's Exhibit 52, Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories ("Def.'s Resps. to Pl.'s First Interrog.") at 14 (Doc. No. 168–6).  Michel responds by noting that Yale limits the number of online courses undergraduates may use towards their degree, see Pl.'s Mem. at 7; Plaintiff's Exhibit AN, Yale Summer Session Handbook at 10 (Doc. No. 162–42), but that neither changes the undisputed evidence that the courses are identically priced, nor does it provide any aid to a factfinder attempting to assess damages.  Thus, for the sake of the Motion for Summary Judgment, the court accepts as true that Yale "has always" charged the same amount for in-person and remote instruction.

Michel's expert proposes two methodologies for calculating the disparity in the value, either by relying on data from "different colleges' tuition and fees and the different institutions' attributes," see Declaration of Dr. Gareth Macartney ¶ 59 (Doc. No. 131–4), or on data stemming from surveys of the preferences of Yale students.  Id. ¶ 64.

13

However, such a calculation would ignore that Yale has assessed the value of its in-person and online offerings prior to the pandemic and opted to charge students an identical fee for either mode of instruction.

A District of Massachusetts court considering the calculation of damages on a motion for summary judgment on breach of contract and unjust enrichment claims determined that:

> Plaintiffs' tuition-based claims are only allowed to proceed to damages calculation insofar as the Plaintiffs can demonstrate at trial either: (1) that Suffolk has a particular method for calculating the cost difference between its online and in-person programs and apply that method of calculation to the in-person undergraduate program; or (2) that a consistent cost differential -- either across school years or across programs -- exists between the online and in-person versions of Suffolk's other educational programs (such as the MBA) and apply that differential to the in-person undergraduate program."

In re Suffolk Univ. Covid Refund Litigation, 2022 WL 2713732, at *2 (D. Mass. July 13, 2022) (emphasis in original); see also In re Boston Univ. COVID-19 Refund Litigation, 2022 WL 3154670, at *4 (D. Mass. Aug. 8, 2022) (concluding that BU did not establish that plaintiffs will be unable to prove damages because there was a dispute of material fact as to whether the school charged the same tuition per-credit for online and in-person instruction).  The Suffolk University court cautioned that "[p]laintiffs will not be permitted to utilize market-value data of sister programs at other institutions to demonstrate this cost difference" because, ultimately, "there is only one Suffolk University in downtown Boston."  In re Suffolk Univ., 2022 WL 2713732, at *2.

Just as there is only one Suffolk University in downtown Boston, there is only one Yale University in downtown New Haven.  This court agrees that attempting to divine a difference in market value from competitors is unavailing where Yale's pricing model has previously rejected a value disparity for the in-person and remote educational

14

opportunities it provides.[9]  Indeed, Michel himself conceded that he had no reason to think that the education he received online was any worse than what he received in person.  See 11/10/21 Deposition of Michel at 107.  In light of this, there is no evidence in the record from which a reasonable juror could calculate the financial detriment Michel experienced.  Moreover, without an ability to demonstrate financial detriment, both of Michel's claims fail.  Accordingly, Yale's Motion is granted as to the promissory estoppel and unjust enrichment claims.

## V.    CONCLUSION

For the foregoing reasons, Yale's Motion for Summary Judgment is granted.  The court also grants Michel's Motion to Seal (Doc. No. 160) portions of his Memorandum in Opposition to Summary Judgment as well as certain exhibits.  The remaining outstanding motions—including the Motion to Exclude the Reports and Opinions of Dr. Gareth Macartney (Doc. No. 131) and the Motion to Certify the Class (Doc. No. 139)—are dismissed as moot.

**SO ORDERED.**

Dated at New Haven, Connecticut this 30th day of January 2023.

                                           /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge

---

[9]  Even if the actions of competitors were relevant, the court notes that Michel's citation to "comparable institutions" that supposedly provided tuition refunds is inaccurate.  The schools cited lowered tuition amounts for future semesters, rather than providing remuneration for the spring 2020 semester.  See Def.'s Mem. at 21; Defendant's Exhibit AX, Princeton's Announcement of Plans for Fall 2020 at 3 (Doc. No. 162–52) ("The University has approved a 10% discount to tuition for all undergraduate students during 2020-21 [school year], whether they are on campus or learning remotely.").