**MANDATE**

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of August, two thousand twenty-four.

Before:     Debra Ann Livingston,
                 *Chief Judge,*
              Reena Raggi,
              Beth Robinson,
                 *Circuit Judges.*

_____

Jonathan Michel, on behalf of himself and all
others similarly situated,                                    **JUDGMENT**

               Plaintiff - Appellant,              Docket No. 23-222

v.

Yale University,

               Defendant - Appellee.

_____

The appeal in the above captioned case from a judgment of the United States District Court for the District of Connecticut was argued on the district court's record and the parties' briefs.

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's judgment is AFFIRMED.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 08/29/2024

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2023

(Argued:  April 5, 2024    Decided: August 7, 2024)

Docket No. 23-222

JONATHAN MICHEL, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,[*]

*Plaintiff-Appellant,*

–v.–

YALE UNIVERSITY,

*Defendant-Appellee.*

Before:      LIVINGSTON, *Chief Judge,* RAGGI and ROBINSON, *Circuit Judges.*

Plaintiff-Appellant Jonathan Michel appeals from the January 31, 2023 judgment of the United States District Court for the District of Connecticut (Hall, *J.*) granting Defendant-Appellee Yale University's (Yale) motion for summary judgment.  Michel was a sophomore at Yale during the Spring 2020 semester.  In March 2020, responding to rising COVID-19 cases, Yale closed its campus and transitioned from in-person to online-only classes for the remainder of the semester.  Michel subsequently filed this putative class action, raising Connecticut

[*] The clerk's office is directed to amend the caption as reflected above.

promissory estoppel and unjust enrichment claims based on Yale's refusal to issue tuition refunds following that transition.

We hold that Michel's quasi-contract claims are barred by a "Temporary Suspension Provision" in Yale's Undergraduate Regulations. As a Yale undergraduate, Michel had a contractual relationship with the University that is governed in relevant part by the Temporary Suspension Provision. And under the provision's terms, Yale had the discretion to respond to the pandemic by transitioning to online-only classes in the Spring 2020 semester without refunding students' tuition. Because the Temporary Suspension Provision precludes Michel's quasi-contract claims, Yale is entitled to summary judgment. Accordingly, we **AFFIRM** the district court's judgment.

————————

YVETTE GOLAN, The Golan Firm PLLC, Washington, DC (John Soumilas, Francis Mailman Soumilas P.C., Philadelphia, PA, *on the brief*), *for Plaintiff-Appellant*.

JONATHAN M. FREIMAN (Kim E. Rinehart, Emmett Gilles, Nathan Guevremont, *on the brief*), Wiggin and Dana LLP, New Haven, CT, *for Defendant-Appellee*.

————————

ROBINSON, *Circuit Judge*:

Plaintiff-Appellant Jonathan Michel was an undergraduate at Defendant-Appellee Yale University when the COVID-19 pandemic caused Yale, like

universities across the country, to transition to exclusively online instruction during the Spring 2020 semester.

In response to that transition, Michel filed this putative class action, which in its current form raises Connecticut law promissory estoppel and unjust enrichment claims.  Michel doesn't question Yale's decision to transition to remote-only learning in reaction to the COVID-19 pandemic.  But he asserts that it would be inequitable to allow Yale to keep the entirety of his tuition payments when it provided him something (online education) of lower value than the program he paid for and was promised (in-person education).

The United States District Court for the District of Connecticut (Hall, *J.*) granted Yale's motion for summary judgment, concluding that Michel did not present evidence that taking classes online caused him to suffer a financial detriment—a required element of both promissory estoppel and unjust enrichment claims.  *See Michel v. Yale University*, No. 3:20-CV-01080 (JCH), 2023

WL 1350220, at *5–8 (D. Conn. Jan. 30, 2023).  The court accordingly dismissed Michel's suit in a January 31, 2023 judgment.

We agree with the district court that Yale is entitled to summary judgment. But we reach this conclusion for a different reason.[1]  We hold that Michel and Yale had a contractual relationship that was governed in relevant part by a "Temporary Suspension Provision" in Yale's Undergraduate Regulations.  That provision, which operated as a *force majeure* clause, allowed Yale to switch to online-only classes during the Spring 2020 semester in response to the global pandemic without issuing tuition refunds.  Because Michel's quasi-contract claims arise from matters covered by the parties' implied contract, including the Temporary Suspension Provision, those claims fail under Connecticut law.  Accordingly, we **AFFIRM** the district court's judgment.

## BACKGROUND[2]

Michel began taking class as a Yale undergraduate in Fall 2018.  He was a sophomore during the 2019–2020 academic year.

---

[1] This Court may "affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." *ACEquip Ltd. v. American Engineering Corp.*, 315 F.3d 151, 155 (2d Cir. 2003).  Here, both parties provided this Court with briefing on the alternate basis on which we affirm the district court.

[2] We present the facts in the light most favorable to Michel, the non-movant, and draw all inferences in his favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Before his sophomore year started, Yale instructed Michel to review the University's "Undergraduate Regulations"—a document describing Yale College's rules, regulations, and policies. Michel admits that he knew about the Undergraduate Regulations and that they set forth certain requirements. In August 2019, he signed a card acknowledging that "[a]ll students in Yale College are required as a condition of enrollment to comply with the Undergraduate Regulations." Supp. App'x at 301; *see also id.* at 292 (introduction to Undergraduate Regulations repeating compliance requirement).

The Undergraduate Regulations contain a provision entitled, "Temporary Suspension Provision," which sets forth Yale's obligations and rights in the event of, among other things, "public health or other significant safety or security concerns" that "cause the University temporarily to suspend" its "programs and operations":

> Temporary Suspension of University Operations. In the unlikely event that public health or other significant safety or security concerns cause the University temporarily to suspend University programs and operations, the University will make arrangements for appropriate refunds, consistent with the principles enunciated in these Regulations, as may in its judgment be warranted in light of all the circumstances of the suspension and consistent with applicable law and regulations. The decision to suspend programs shall be made at the discretion and judgment of the University.

*Id.* at 298–99.

On March 10, 2020, Connecticut's governor declared a public health emergency in light of rising COVID-19 cases. That same day, Yale shut down its campus. It stopped providing room and board services, prohibiting students from returning to their dorms. And it canceled all in-person instruction, transitioning to exclusively online classes for the semester's remaining five weeks. Although Yale refunded undergraduates' room and board for the rest of the semester, it did not issue any tuition refunds.

Michel filed this lawsuit in July 2020. He originally alleged breach of contract and unjust enrichment claims based on Yale's failure to refund his Spring 2020 tuition, later amending the complaint to add a claim under the Connecticut Unfair Trade Practices Act. The district court dismissed the complaint for failure to state a claim. *See Michel v. Yale University*, 547 F. Supp. 3d 179, 194 (D. Conn. 2021). Michel thereafter filed the operative second amended complaint, asserting only quasi-contract claims for unjust enrichment and promissory estoppel.

The district court granted Yale's motion for summary judgment. Citing a deposition statement from Yale's president, *see below* at 14–16 (quoting statement), the court concluded that there was a genuine dispute of material fact about whether the Temporary Suspension Provision had been triggered. *See Michel*, 2023

WL 1350220, at *5.  Still, it held that Michel hadn't raised a genuine dispute of material fact as to whether he suffered a financial detriment, which is required to recover under Connecticut law governing promissory estoppel and unjust enrichment.  *See id.* at *5–7.  Based on that conclusion, the court granted Yale's motion, entered judgment for Yale, and closed the case.  Michel timely appealed.

## DISCUSSION

We review without deference the district court's grant of summary judgment.  *Richards v. Direct Energy Services, LLC*, 915 F.3d 88, 96–97 (2d Cir. 2019) (internal quotation marks omitted).  Summary judgment is proper when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Applying that standard, we conclude that Yale is entitled to summary judgment on Michel's quasi-contract claims.  Michel and Yale had a contractual relationship governed in relevant part by the Temporary Suspension Provision. That provision is an enforceable *force majeure* clause that allowed Yale to transition to fully remote classes for the rest of the Spring 2020 semester and assigned to Yale sole discretion as to whether to refund any tuition payments.  Because the parties' rights and responsibilities with respect to Yale's transition to remote instruction in

March 2020 were governed by the Temporary Suspension provision, Michel cannot seek to hold Yale liable on equitable theories based on the same subject matter. For these reasons, Yale is entitled to summary judgment on Michel's equitable claims. We elaborate below.

## I.  Michel and Yale had a contractual relationship that is governed in relevant part by the Temporary Suspension Provision.

Michel and Yale had a contractual relationship during the Spring 2020 semester, when Michel was a Yale undergraduate. In Connecticut, "[t]he basic legal relation between a student and a private university or college is contractual in nature." *Burns v. Quinnipiac University*, 120 Conn. App. 311, 320 (2010) (internal quotation marks omitted).[3] "Because a student bases his or her decision to attend a college or university, in significant part, on the documents received concerning core matters," this contractual relationship's scope is defined by "the catalogues, bulletins, circulars, and regulations of the institution." *Id.* at 321 (internal quotation marks omitted).

---

[3] Although Connecticut "contract claims challenging the overall quality of educational programs" should "generally be[] rejected," a student can bring a breach of contract claim if they can show that "the educational institution failed to fulfil a specific contractual promise distinct from any overall obligation to offer a reasonable program." *Gupta v. New Britain General Hospital*, 239 Conn. 574, 592–93 (1996) (internal quotation marks omitted). Here, Michel's quasi-contract claims center around his assertion that Yale "promised in-person and on-campus educational services." App'x at 39. *See also id.* at 38 (explaining that Michel paid his Spring 2020 tuition expecting "traditional in-person and on-campus educational services").

As part of Yale's Undergraduate Regulations, the Temporary Suspension
Provision is part of the "regulations of the institution."  *Id.*  "Each student in Yale
College is required as a *condition of enrollment* to comply with" it.  Supp. App'x at
292 (emphasis added).  And Michel himself admits that he knew the
Undergraduate Regulations "set rules, regulations, and policies at Yale," App'x at
475, an admission backed up by the card he signed at the start of his sophomore
year, Supp. App'x at 301.  Thus, as Michel's counsel conceded during oral
argument, "it is fair to say that yes, students agreed to the Temporary Suspension
Provision."  April 5, 2024 Oral Arg. at 3:18–24.

## II.   The Temporary Suspension Provision is an enforceable *force majeure* clause.

Moreover, the Temporary Suspension Provision is an enforceable *force
majeure* clause specifically addressing the occasion of a "public health" concern.  A
*force majeure* clause is a "contractual provision allocating the risk of loss if
performance becomes impossible or impracticable, esp[ecially] as a result of an
event or effect that the parties could not have anticipated or controlled."  Black's
Law Dictionary (12th ed. 2024).  The Connecticut Supreme Court has explained
that "[t]he basic purpose of force majeure clauses is in general to relieve a party
from its contractual duties when its performance has been prevented by a force
beyond its control or when the purpose of the contract has been frustrated."  *AGW*

*Sono Partners, LLC v. Downtown Soho, LLC*, 343 Conn. 309, 331 n.21 (2022) (ellipsis

omitted) (quoting *Phillips Puerto Rico Core, Inc. v. Tradax Petroleum Ltd.*, 782 F.2d

314, 319 (2d Cir. 1985)).

Applying analogous New York law, we recently explained that

"[u]niversities may limit or qualify their promises by including a *force majeure*

provision in their implied contracts with students, but . . . such a clause must be

narrow to be enforceable." *Goldberg v. Pace University*, 88 F.4th 204, 210–11 (2d Cir.

2023), *rehearing en banc denied* (Jan. 24, 2024) (citing *Rynasko v. New York University*,

63 F.4th 186 (2d Cir. 2023), *rehearing en banc denied* (July 31, 2023)).[4]

*Rynasko* and *Goldberg* together illustrate that a sufficiently specific provision

in a document comprising part of the implied contract between student and

---

[4] Both *Rynasko* and *Goldberg* explored the contractual relationship between universities and students under the law of New York, not Connecticut. But the operative legal framework is essentially the same for purposes of this analysis. Like Connecticut law, New York law "recognize[s] that the relationship between a university and its students is contractual in nature, and that specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." *Rynasko v. New York University*, 63 F.4th 186, 197 (2d Cir. 2023) (internal quotation marks and citation omitted). And as Michel's counsel conceded during oral argument, there is "nothing" under New York or Connecticut law "that would indicate a distinction that makes a difference" in our analysis. *See* April 5, 2024 Oral Arg. at 6:11–7:39.

*Rynasko* was published after the district court issued its opinion in this case but before the parties submitted their appeal briefs. *See* Appellant's Br. at 1–2, 15–16, 24–26; Appellee's Br. at 23, 38–40, 47–48. *Goldberg* was published after the parties submitted their briefs, but both parties submitted letters to the Court addressing *Goldberg*, and they were able to discuss the case during oral argument. *See* No. 23-222, Dkts. 102, 105.

university may effectively override the university's other contractual obligations in the event of a *force majeure* event. In *Rynasko*, we considered a broad disclaimer in a course catalog purporting to reserve to NYU the right to:

> "change without notice *at any time* at the sole discretion of the administration" its "policies, requirements, course offerings, schedules, activities, tuition, fees, and calendar . . . including, but not limited to, the elimination of the school, programs, classes, or activities; the relocation of or modification of the content of any of the foregoing; and the cancellation of scheduled classes or other academic activities."

63 F.4th at 190–91 (quoting disclaimer) (emphasis added; omission in original).

This broad disclaimer did not purport to serve as a *force majeure* clause, excusing NYU's performance upon the occurrence of "an event beyond the control of the parties that prevents performance under a contract." *Id.* at 200 (internal quotation marks omitted). Instead, it gave NYU "unfettered rights to shut down on-campus educational activities" at any time for any reason, or no reason at all. *Id.* (internal quotation marks omitted). Thus understood, the disclaimer would contradict NYU's other implied promises and give NYU "an unfair and unreasonable advantage over" its students. *Id.* For these reasons, we determined that a reasonable factfinder could conclude that the implied contract between NYU and its students did not allocate to NYU the authority to close down all in-person campus operations without any consequences under that agreement.

On the other hand, in *Goldberg*, we held that a "more traditional, and enforceable, *force majeure* clause" can preclude students from bringing contract and quasi-contract claims based on a university's decision to transition to online-only instruction at the outset of the COVID-19 pandemic. 88 F.4th at 211. There, a Pace University graduate student sued Pace for, among other things, breach of contract, promissory estoppel, and unjust enrichment based on Pace's refusal to refund tuition after switching to online-only instruction in the Spring 2020 semester. *Id.* at 207–09. The *force majeure* clause at issue in *Goldberg* stated:

> Occasionally, the University is confronted by the need to close because of inclement weather or other reasons beyond the University's control . . . . Although classes are planned to commence and conclude on the dates indicated in the academic calendar, unforeseen circumstances may necessitate adjustment to class schedules and extension of time for completion of class assignments. Examples of such circumstances may include faculty illness, malfunction of University equipment (including computers), unavailability of particular University facilities occasioned by damage to the premises, repairs or other causes, and school closings because of inclement weather. The University shall not be responsible for the refund of any tuition or fees in the event of any such occurrence.

*Id.* at 208.

Unlike the disclaimer in *Rynasko*, the provision in *Goldberg* "did not confer upon Pace 'unfettered' power to 'completely shut down its on-campus, in-person

operations' and to transition to online instruction absent some unforeseen event."
*Id.* at 211 (quoting *Rynasko*, 88 F.4th at 200). Instead, it "allocated the risk of loss to students in the event" of "unforeseen, emergency circumstance[s] . . . outside of . . . Pace's control," *id.* at 211 (internal quotation marks and brackets omitted), including the COVID-19 pandemic, *id.* at 214. The provision accordingly was an enforceable *force majeure* clause that precluded the plaintiff's contract and quasi-contract claims. *See id.* at 214–15.

Here, the Temporary Suspension Provision is an enforceable *force majeure* clause. Like the provision in *Goldberg*, it is only triggered by "public health or other significant safety or security concerns." Supp. App'x at 298–99. In fact, the Provision's reference to a "public health . . . concern[]" aligns this *force majeure* provision even more closely to the COVID-19 pandemic than the "reasons beyond the University's control" language in *Goldberg*. *Id.*; *Goldberg*, 88 F.4th at 208.

### III. Yale's transition to remote instruction in March 2020 falls within the scope of the Temporary Suspension Provision.

The pandemic was a triggering "public health . . . concern" under the Temporary Suspension Provision that allowed Yale to temporarily suspend its operations by closing its campus in March 2020 and switching to online-only instruction for the rest of the semester. Its terms also gave Yale discretion to decide whether to issue tuition refunds.

Michel "does not dispute that [the Temporary] Suspension Provision encompasses pandemics." No. 23-222, Dkt. 105 at 2. Instead, he argues that there is a genuine dispute of material fact about whether Yale "suspend[ed] University programs and operations" by closing its campus and switching to remote instruction. *See* Reply Br. at 16; *see also Michel*, 2023 WL 1350220, at *5. He points to deposition testimony from Yale's president, who said that Yale did not "suspend" its operations—it "modified" them:

> Q With your announcement that we see here . . . on March 10th, 2020, do you believe that Yale College suspended operations?
>
> A No, I do not.
>
> Q Do you agree with the statement that Yale did not suspend operations during the pandemic?
>
> A I believe Yale modified its operations.

Supp. App'x at 545.

Even assuming that the testimony of Yale's president is relevant to interpreting the scope of the Temporary Suspension Provision and its applicability here, the president's general statement that Yale modified its operations and did not suspend them does not create a genuine dispute of material fact as to the applicability of that provision. For starters, when Yale's president made this statement, nobody at the deposition was purporting to talk about the Temporary

Suspension Provision, let alone its scope.[5]   Also, the president immediately clarified that an answer to the question posed "depended on the operation," and that he was referring simply to the fact that, after the March 10 order, remote instruction permitted students to "continue to take the courses and continue to receive credit and continue to matriculate toward a degree."  *Id.* at 545.

Later in his deposition, Yale's president further clarified that the University's *in-person activities* had been suspended, including in-person teaching and room and board services:

> Q Do you remember earlier opposing counsel was asking you some questions about whether the university had suspended operations in the spring of 2020?
>
> A Yes.
>
> Q And do you remember that you answered that, as the whole, the university did not suspend operations in spring of 2020?
>
> A Yes, that is correct.  I think I said we still pursued our mission of education and research.
>
> Q In the spring of 2020 following your [March 10, 2020] announcement . . . , did the university suspend the operation of room and board for undergraduate students at Yale College?  . . .

---

[5] Beyond noting the Temporary Suspension Provision itself, Michel's appellate briefs do not point to any record evidence directly interpreting the provision's terms.

A Yes. We asked them not to return to their rooms after the spring break. And they no longer -- obviously, since they were not returning to campus, they no longer received meals at Yale University.

Q So Yale no longer conducted operations for room and board for the overall majority of Yale undergraduates in the spring of 2020? . . .

[A] That is correct.

Q Did Yale suspend the operation of in-person classroom teaching following your announcement [on March 10]? . . .

[A] By and large, yes.

Q So Yale was no longer conducting the operation of in-person classes in March -- late March 2020, April 2020 and May 2020 for undergraduates. Is that correct? . . .

[A] Yes, that is correct.

Supp. App'x at 546 (cleaned up).

The deposition statements, considered in their entirety, thus show that Yale's president understood that the University's in-person activities, including in-person classes, were suspended.

More to the point, we conclude that the undisputed facts in the summary judgment record support the conclusion that the Temporary Suspension Provision applies to Yale's transition to online classes. Core Yale operations were undisputably suspended once the pandemic forced it to switch to online-only

instruction.  As Michel admits, on March 10, 2020, "Yale closed its campus and stopped in-person instruction."  Appellant's Br. at 6.  And by closing its campus, Yale not only transitioned to online classes, but it also ceased room and board services, prohibiting students from returning to campus.  App'x at 481–82.

To Michel, the Temporary Suspension Provision does not apply to the circumstances here because the provision applied only if Yale "shut down entirely."  Reply Br. at 16.  So under Michel's proposed interpretation, the provision said nothing about Yale's discretion to issue refunds, or not, if it just stopped teaching *in person*; it applied only if Yale stopped *operating altogether*.  But that interpretation would artificially narrow the provision's scope.  *Cf. Salce v. Wolczek*, 314 Conn. 675, 690–91 (2014) ("We will not insert limitations into a contract when the parties did not do so themselves.").  After all, the Temporary Suspension Provision does not say, "In the unlikely event that public health . . . concerns cause the University temporarily to *fully* suspend *all* University programs and operations."  And it makes little sense to interpret the provision as addressing Yale's discretion to issue (or not issue) refunds if Yale *fully* shuts down all programs and operations but not if it takes the *lesser* step of suspending in-person coursework while maintaining remote learning opportunities.  Rather, given the stated purposes of the *force majeure* provision—including responding to

public health concerns—it makes more sense to understand the provision as conferring on Yale the discretion to suspend programs and operations as appropriate in light of the triggering event, and to refund tuition, or not, in such circumstances.

Michel also suggests that the Temporary Suspension Provision does not apply because suspending in-person classes for the rest of the Spring 2020 semester is not a "temporary" suspension since the shutdown lasted longer than a "few days."  Reply Br. at 16, 18.  Again, we disagree.  For one thing, Michel offers no record evidence or other authorities suggesting the word "temporary" should be construed so narrowly.  For another, dictionary definitions indicate the term's commonly understood meaning is broader.  *See, e.g.*, *Temporary*, Oxford English Dictionary,

https://www.oed.com/search/dictionary/?scope=Entries&q=temporary,

[https://perma.cc/N6FZ-8FAF] (last visited Aug. 6, 2024) ("Lasting for a limited time; existing or valid for a time (only); not permanent; transient; made to supply a passing need."); *Temporary*, Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/temporary

[https://perma.cc/FH27-CX93] (last visited Aug. 6, 2024) ("[L]asting for a time only : existing or continuing for a limited time."); *see also Nation-Bailey v. Bailey*, 316

Conn. 182, 193 (2015) ("We often consult dictionaries in interpreting contracts . . . to determine whether the ordinary meanings of the words used therein are plain and unambiguous, or conversely, have varying definitions in common parlance.") (internal quotation marks omitted). Here, given the purpose of the Temporary Suspension Provision, it makes sense to understand "temporary" to track with the duration of the exigency that requires the suspension in the first place.

Finally, we reject Michel's assertion—raised in a single sentence in his reply brief—that the Temporary Suspension Provision "arguably gives students a right to 'appropriate refunds,' giving Yale the power only to determine the correct *amount*." Reply Br. at 16. As set forth below, what matters for purposes of Michel's equitable claim is whether his implied contract with Yale, including the Temporary Suspension Provision, applied to the circumstances underlying his equitable claims. What the provision actually *required* of Yale may be a relevant question in the context of a contract claim, but Michel is pressing equitable, quasi-contract claims. Moreover, we reject Michel's argument on the merits. The provision expressly provides that the refunds will be made "as may in [Yale's]

judgment be warranted." with the "discretion and judgment" to issue "appropriate refunds." Supp. App'x at 298–99.[6]

In sum, considering the summary judgment record as a whole, there is no genuine dispute of material fact that Yale's "programs and operations"—as defined in the Temporary Suspension Provision—were temporarily suspended when Yale responded to the pandemic by closing its campus and instructing students through exclusively electronic means. *See Matsushita Electronic Industry Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation marks omitted).

### IV.    Michel's contract with Yale precludes his equitable claims, so Yale is entitled to summary judgment.

Michel's contractual relationship with Yale, including the Temporary Suspension Provision, limits his ability to raise promissory estoppel and unjust enrichment claims. "As a general matter, when an enforceable contract exists[,] parties cannot assert a claim for promissory estoppel on the basis of alleged promises that contradict the written contract. Put differently, a plaintiff cannot

---

[6] The Temporary Suspension Provision does state that Yale must give refunds "consistent with the principles enunciated in [the Undergraduate] Regulations" and "applicable law and regulations." Supp. App'x at 298–99. But Michel does not argue that Yale's decision to issue no tuition refunds offends any laws or regulations, including the Undergraduate Regulations themselves.

use the theory of promissory estoppel to add terms to a contract that are entirely inconsistent with those expressly stated in it." *Kent Literary Club of Wesleyan University at Middletown v. Wesleyan University*, 338 Conn. 189, 210 (2021) (ellipses and brackets omitted).  And "an express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter." *Meaney v. Connecticut Hospital Association, Inc.*, 250 Conn. 500, 517–18 (1999) (internal quotation marks omitted).  "[A]n implied in law contract is another name for a claim for unjust enrichment." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 574 (2006).  *See also id.* at 570 n.12 (explaining that "proof of an operative contract" is "incompatible with recovery on an unjust enrichment theory") (citing *Meaney*, 250 Conn. at 517).[7]

In other words, Michel's quasi-contract claims fail if the Temporary Suspension Provision's terms cover the same subject matter as those claims.  It does, so they do.

---

[7] We have explained that recovery for unjust enrichment is available under Connecticut law "even where the parties have an express contract *if* (1) the plaintiff cannot recover under the contract because the *plaintiff* is guilty of breach of contract, and (2) the defendant would nevertheless be unjustly enriched by keeping the plaintiff's services or money without some payment." *Fabri v. United Technologies International, Inc.*, 387 F.3d 109, 128 (2d Cir. 2004) (citing *Vines v. Orchard Hills, Inc.*, 181 Conn. 501, 510 (1980)) (second emphasis added).  Nobody argues here that *Michel* breached any contract with Yale.

Michel's promissory estoppel claim is predicated "on the assurance and belief that Yale would provide . . . promised *in-person and on-campus educational services*." App'x at 39–40 (emphasis added). Likewise, he asserts in his unjust enrichment claim that "Yale should be required to" refund "any tuition, fees and related expenses equal to the difference in value between the *in-person education promised* and the online education provided." *Id.* at 38–39 (emphasis added).

Even if Yale promised that in an ordinary semester it would provide in-person classes and services—a question we need not and do not address here—for the reasons set forth above, the Temporary Suspension Provision covers these claims by (1) addressing Yale's entitlement to suspend in-person and on-campus services—including in-person classes—during a *force majeure* event like COVID-19 and (2) addressing Yale's discretion to issue—or not issue—tuition refunds. Yale is accordingly entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Yale is entitled to summary judgment, and the district court's judgment is **AFFIRMED**.